IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION This Document Relates to: *Landers v. Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dvk | MDL Docket No. 2009 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FILED BY MORGAN KEEGAN & COMPANY, INC.,
MORGAN ASSET MANAGEMENT, INC., AND MK HOLDING, INC.**

 Michael L. Dagley
 Matthew M. Curley
 W. Brantley Phillips, Jr.
 BASS BERRY & SIMS PLC
 315 Deaderick Street, Suite 2700
 Nashville, TN 37238
 (615)742-6200

 Shepherd D. Tate
 Michael Brady
 BASS, BERRY & SIMS PLC
 100 Peabody Place, Suite 900
 Memphis, Tennessee   38103-3672
 (901) 543-5900

 *Attorneys for Morgan Keegan & Company, Inc.,
 Morgan Asset Management, Inc.,
 and MK Holding, Inc.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.     Plaintiffs' have failed to meet their burden of demonstrating that demand is futile under Maryland law. ............................................................................................................... 2

     A.     Maryland law is strict and requires near universal-demand ................................... 2

     B.     Maryland law sets a clear standard for pleading demand futility and the Court should reject Plaintiffs' overtures to fashion a new standard. ....................... 5

          1.     There is no gap in Maryland law in considering demand futility. .............. 5

          2.     Plaintiffs' proposed standard for evaluating demand would overturn key principles of Maryland law .......................................................................... 6

     C.     Plaintiffs' substantive allegations regarding the Directors otherwise do not excuse demand under Maryland law ......................................................................... 9

II.     Plaintiffs offer no argument against enforcement of the MAM Advisory Agreement's exculpatory provision ............................................................................................................ 10

     A.     The Advisory Agreement bars breach of contract claims against MAM .............. 10

     B.     Plaintiffs' remaining arguments against application of the Advisory Agreement's exculpatory provision lack any legal basis ........................................ 11

III.     Plaintiffs cannot re-cast their breach of contract claim against Morgan Keegan as a negligence-based claim ............................................................................................... 13

IV.     Plaintiffs present no argument against dismissal of MK Holding ................................... 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

Aronson v. Lewis,
  766 A.2d 805 (Del. 1984) .................................................................................................. 5

Ashcroft v. Iqbal,
  ___ U.S. ___, 129 S. Ct. 1937 (2009) ............................................................................. 12

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ......................................................................................................... 14

Bezuszka v. L.A. Models, Inc.,
  2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 27, 2006) .............................................. 12

Compuspa, Inc. v. Int'l Bus. Machines Corp.,
  228 F. Supp. 2d 613 (D. Md. 2002) ................................................................................ 12

Continuing Creditors' Comm. of Star Telecomm., Inc. v. Edgecomb,
  385 F. Supp. 2d 449 (D. Del. 2004) ................................................................................ 12

Felker v. Anderson,
  2005 WL 602974 (W.D. Mo. Feb. 11, 2005) ................................................................... 4

In re Citigroup Inc. S'holder Deriv. Litig.,
  964 A.2d 106 (Del. Ch. 2009) ........................................................................................... 9

In re CNL Hotels & Resorts, Inc.,
  2005 WL 2219283 (M.D. Fla. Sept. 13, 2005) ................................................................. 4

In re Franklin Mut. Funds Fee Litig.,
  388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................................... 3

In re InfoSonics Corp. Deriv. Litig.,
  2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) ................................................................ 3, 9

In re Mut. Funds Invest. Litig.,
  384 F. Supp. 2d 873 (D. Md. 2005) ......................................................................... 3, 4, 5

Johnson v. Metro. Gov't of Nashville and Davidson County,
  2008 WL 3163531 (M.D. Tenn. Aug. 4, 2008) ................................................................ 1

Kamen v. Kemper Financial Servs., Inc.,
  500 U.S. 90 (1991) ............................................................................................................. 1

McCall v. Scott,
    239 F.3d 808 (6th Cir. 2001) ............................................................................................... 8

NCR Corp. v. AT&T Co.,
    761 F. Supp. 475 (S.D. Ohio 1991) .................................................................................... 3

Richardson v. Graves,
    1983 WL 21109 (Del. Ch. June 17, 1983) ......................................................................... 8

Sanders v. Wang,
    1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999) ......................................................... 12

Scalisi v. Fund Asset Mgmt, L.P.,
    380 F.3d 133 (2d Cir. 2004) ............................................................................................ 4, 6

Sekuk Global Enters. Profit Sharing Plan v. Kevenides,
    2004 WL 1982508 (Md. Cir. Ct. Baltimore City May 25, 2004) ................................. 9, 10

Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, LP,
    37 Fed. Appx. 677 (4th Cir. 2002) ................................................................................... 13

Washtenaw County Emp. Ret. Sys. v. Wells REIT, Inc.,
    2008 WL 2302679 (N.D. Ga. Mar. 31, 2008) ................................................................. 4, 7

Werbowsky v. Collomb,
    766 A.2d 123 (Md. 2001) .......................................................................................... *passim*

Wolf v. Ford,
    644 A.2d 522 (Md. 1994) ................................................................................................. 11

**Statutes**

15 U.S.C. § 80a-17(i) ............................................................................................................... 11

15 U.S.C. § 80a-2 ....................................................................................................................... 4

Md. Code Ann., Corps. & Ass'ns § 2-405.3(b) .......................................................................... 4

Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), and MK Holding, Inc., respectfully submit this reply memorandum of law in support of their motion to dismiss.[1]

### PRELIMINARY STATEMENT

Plaintiffs' Opposition to Defendants' respective motions to dismiss is significant in two respects.  *First*, Plaintiffs have represented that they have made demand on the new directors of the Helios Select Fund, Inc., (formerly known as MK Select Fund, Inc.) regarding the claims at issue in this lawsuit.  Given this representation, Plaintiffs have placed consideration of the claims at issue in this action squarely in the lap of these directors and the decision of whether to pursue such claims is entrusted to their business judgment.  The import of Plaintiffs' representation is discussed more fully in the directors' pleadings; suffice it to say, however, Plaintiffs are no longer entitled to pursue the claims at issue on behalf of the Nominal Defendant.  See Kamen v. Kemper Financial Servs., Inc., 500 U.S. 90, 103 (1991) ("Once a demand has been made, the decision to block or to terminate the litigation rests solely on the business judgment of the directors.").[2]

*Second*, even if consideration of the claims at issue were not entrusted to the business judgment of the new directors, Plaintiffs concede that they did not make demand on the directors as of the date of the filing of this action and have failed to show why demand should be excused. Rather than evaluate their demand futility allegations under Maryland law, Plaintiffs go to

---

[1] Morgan Keegan, MAM and MK Holding incorporate the arguments in the reply memoranda filed by the other Defendants in this action.

[2] To the extent Plaintiffs' raise issues regarding the new directors' conduct in considering their "demand," they have done so for the first time in their Opposition.  Such an attempt to present new facts at this stage in the proceedings is improper.  See Johnson v. Metro. Gov't of Nashville and Davidson County, 2008 WL 3163531, *6 (M.D. Tenn. Aug. 4, 2008) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted).  (See also Ind. Dirs' Reply at 3.)

extraordinary lengths to avoid its application by suggesting the existence of a "gap" in Maryland law. Plaintiffs then implore this Court to fill the supposed "gap" by fashioning a new standard – supposedly grounded in Delaware law – to determine whether demand should be considered futile.

At bottom, it is not surprising that Plaintiffs seek to avoid application of Maryland law, as it allows for virtually no exceptions with respect to the issue of shareholder demand. Indeed, there has been only one reported case in which a court has found demand to be excused under Maryland law since the Maryland Court of Appeals announced its decision in Werbowsky v. Collomb, 766 A.2d 123 (Md. 2001). When Maryland law is applied to the allegations in Plaintiffs' Complaint, rather than the standard urged by Plaintiffs, there is no basis for excusing Plaintiffs' failure to make demand on the board before initiating this action. This Court should reject Plaintiffs' argument and their invitation to change well-accepted Maryland law.

## ARGUMENT

### I. Plaintiffs' have failed to meet their burden of demonstrating that demand is futile under Maryland law.

#### A. Maryland law is strict and requires near universal-demand.

In Werbowsky, the Maryland Court of Appeals undertook an exhaustive review of demand futility law across the United States, and explained that under Maryland law, the demand futility exception was as follows:

> [A] very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

Werbowsky, 766 A.2d at 144.

2

Maryland law, as laid out in Werbowsky, imposes a heavy burden that Plaintiffs here have failed to meet. Plaintiffs must "***clearly demonstrate***" demand futility, which is a far stricter standard than the standard imposed by the law in other states, including Delaware. See, e.g., In re InfoSonics Corp. Deriv. Litig., 2007 WL 2572276, *7 (S.D. Cal. Sept. 4, 2007) ("Delaware's requirements for demand futility are more permissive than Maryland's, requiring only that the facts alleged create a 'reasonable doubt' that the directors are disinterested and independent."); In re Mut. Funds Invest. Litig., 384 F. Supp. 2d 873, 878 n.7 (D. Md. 2005) ("The law of Maryland . . . is perhaps even more restrictive than the law of Delaware and Massachusetts.").[3]

In over sixty pages of briefing, Plaintiffs fail to address or distinguish in any meaningful way any of the cases cited by Defendants in support of their motion to dismiss. Rather, Plaintiffs have chosen to argue that Werbowsky (and by implication, at least fifteen other cases applying Maryland law in dismissing derivative actions making similar demand futility allegations) does not apply to this case. This argument has no merit.

Maryland's strict standard results in near-universal demand. See Werbowsky, 766 A.2d at 137 (observing that the legal trend has been "to circumscribe, if not effectively eliminate, the futility exception"). Recently, one United States District Court reviewed post-Werbowsky cases applying Maryland demand futility law, and noted that in fifteen cases – amounting to all but one reported case considering demand under Maryland law – courts have dismissed plaintiffs'

---

[3] This burden is even heavier where, as here, a majority of board members are independent, outside directors. In this situation, there is a heightened presumption that directors act in good faith under Maryland's formulation of the business judgment rule. In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d 451, 470 (D.N.J. 2005); NCR Corp. v. AT&T Co., 761 F. Supp. 475, 490 (S.D. Ohio 1991) (citing, inter alia, Zimmerman v. Bell, 800 F.2d 386, 392 (4th Cir. 1986)).

3

complaints for failure to make a demand.  See Washtenaw County Emp. Ret. Sys. v. Wells REIT, Inc., 2008 WL 2302679, at *14 n.6 (N.D. Ga. Mar. 31, 2008).[4]

Finally, Plaintiffs glaringly fail to address a provision of Maryland law specific to directors of mutual funds, which provides that "[a] director of a corporation who with respect to the corporation is not an interested person, as defined by the [ICA under 15 U.S.C. § 80a-2], ***shall be deemed to be independent and disinterested when making any determination or taking any action as a director.***" Md. Code Ann., Corps. & Ass'ns § 2-405.3(b) (emphasis supplied). This provision controls the Court's determination of whether a director is independent and capable of considering demand in the demand futility context.  See In re Mut. Funds Invest. Litig., 384 F. Supp. 2d at 878-79.

Plaintiffs' demand futility argument, therefore, fails outright.  As Defendants stated previously, at the time Plaintiffs commenced this action, MK Select's board was comprised of six directors, five of whom were outside directors and thus "disinterested" under the ICA.  See Curley Dec., Ex. 2 (Semi-Annual Report (Mar. 2008) at 64-66) (Docket Entry No. 24-3).

---

[4]  Plaintiffs rely extensively on the one case in which a court found demand futile under Maryland law since the issuance of Werbowsky.  See Felker v. Anderson, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005).  Courts properly have afforded Felker little weight, observing that it is "the only post-Werbo[w]sky case reviewing demand futility under Maryland law to find that demand was futile." Washtenaw County, 2008 WL 2302679 at 14.  That district court in Washtenaw County rejected Felker on the grounds that it "appears to ignore Werbowsky's clear admonition that a court should not 'excuse the failure to make a demand simply because a majority of the directors approved or participated in some way in the challenged transaction or decision.'"  Id. (quoting In re CNL Hotels & Resorts, Inc., 2005 WL 2219283, at *5 n.18 (M.D. Fla. Sept. 13, 2005) (rejecting Felker and quoting Werbowsky, 766 A.2d at 143-44)).  As previously noted, Maryland law places a special importance on demand, "'even when a director would be hostile to the action,'" because it affords "'directors – even interested, non-independent directors—***the opportunity to consider, or reconsider,*** the issue in dispute.'"  Id. at *14 (quoting Scalisi v. Fund Asset Mgmt, L.P., 380 F.3d 133, 141 (2d Cir. 2004)). Finally, the district court's decision in Felker is not only inconsistent with every other case applying Maryland demand futility law, it fails to cite any authority for its conclusions and provides no legal analysis whatsoever.

Plaintiffs have pleaded no facts establishing otherwise in either their Complaint or Opposition to Defendants' motion to dismiss.[5]

### B. Maryland law sets a clear standard for pleading demand futility and the Court should reject Plaintiffs' overtures to fashion a new standard.

Notwithstanding Plaintiffs' assertion to the contrary, there is no gap in Maryland law with respect to the evaluation of Plaintiffs' demand futility allegations. Without question, the standard articulated by the Maryland Court of Appeals in Werbowsky applies in determining whether Plaintiffs' failure to make demand on the directors at the time of filing suit should be excused. Plaintiffs' argument that "the Werbowsky test addresses an affirmative decision by the board, not, as here, board inaction in the face of actionable knowledge" ignores the express language and reasoning set forth in Werbowsky.

#### 1. There is no gap in Maryland law in considering demand futility.

Plaintiffs ask this Court to ascribe an exceptionally narrow meaning to Werbowsky, and equate the standard announced in that case with the Delaware standard of demand futility as set forth in Aronson v. Lewis, 766 A.2d 805, 814 (Del. 1984). This ignores the fact that the Maryland Court of Appeals expressly rejected Delaware law when formulating the Maryland standard. See Werbowsky, 766 A.2d at 143 (stating that "[n]or are we disposed . . . to adopt in full the Delaware approach" to demand futility and noting that "few, if any, States have abandoned their existing law in favor of that approach"). Moreover, unlike the analysis announced by the Delaware court in Aronson, the standard articulated by the Maryland Court of

---

[5] Plaintiffs likewise have pleaded no facts in their Complaint showing that the Funds would suffer "irreparable harm" if Plaintiffs waited for the Board to consider a demand. The allegations in Plaintiffs' Opposition rely on events occurring *after* the filing of the Complaint, which is improper. Moreover, the fact that Plaintiffs waited until the last possible minute to file suit cannot support their argument that demand is futile because an applicable statute of limitations would have run. Plaintiffs cannot manufacture demand futility by waiting until the last possible moment to file suit. Finally, regardless of the arguments raised by Plaintiffs' in their Opposition, the Complaint contains no allegations regarding the futility of demand on the shareholders of the Funds. (See also Ind. Dirs' Reply at 8.)

Appeals in Werbowsky provides the test for evaluating demand futility regardless of the nature of the substantive allegations before the Court.

Under the standard announced in Werbowsky, a court considering demand futility is directed to look to "whether a majority of the directors are so personally and directly conflicted *or* committed to the decision in dispute." Werbowsky, 766 A.2d at 144 (emphasis supplied). If the Court determines that there is no applicable "decision in dispute," then the Court should examine "whether a majority of the directors are so personally and directly conflicted . . . that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." Id. There is no need for this Court to fashion a new standard.

### 2. Plaintiffs' proposed standard for evaluating demand futility would overturn key principles of Maryland law.

Under Maryland law, the issue of whether directors are *capable* of making a disinterested decision must be determined independently of the substantive merits of the proposed derivative claims. Plaintiffs' proposed standard for evaluating demand futility would turn Werbowsky on its head. Plaintiffs argue that because mutual funds are unique entities, and because Plaintiffs assert that their claims have merit, no option is available to the directors that would comport with the business judgment rule other than for the directors to bring suit. Such an analysis runs afoul of Maryland law for a number of reasons.

As an initial matter, the fundamental premise of Plaintiffs' argument – that the law governing demand on the board of a mutual fund somehow differs from the law governing demand on the board of any other corporation – has been rejected by courts applying Maryland law. See Scalisi, 380 F.3d at 140 ("Werbowsky sets forth at length Maryland's standards for determining whether demand on a corporation's directors is excused. We see no reason to believe that Maryland would depart from those standards in the case of a registered investment company."). Plaintiffs cite no contrary authority.

Plaintiffs' argument also impermissibly contemplates that the substantive allegations should be considered and assumed by the Court to have merit. Plaintiffs essentially would have the Court undertake a "demand refused" analysis despite the fact that no demand was made prior to the initiation of this action. In this regard, Plaintiffs state, in conclusory fashion, that this Court should determine demand to be futile because "there is no choice to be made between the interests of the Funds in pursuing these claims and the interests of anyone else that could be protected by the business judgment presumption." (Pls.' Opp. at 39-40.)  In other words, Plaintiffs would have this Court examine whether a decision by the board to refuse a demand could be upheld under the business judgment rule given the allegations made in the Complaint.

The foregoing analysis, of course, turns on an evaluation of whether Plaintiffs' claims have merit – a proposition that disregards clearly established Maryland law. Under Maryland law, the issue of futility is discrete and does not go to the merits of the underlying complaint, "i.e., whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the challenged decision or transaction." Washtenaw County, 2008 WL 2302679 at *14 (citing Werbowsky 766 A.2d at 144); see also id. (holding that allegations of wrongdoing which form "a component of the challenged action that is the subject of this lawsuit, cannot be considered as a factor in determining whether demand was futile"). [6]

Not only would this Court be burdened with a miniature trial on the merits in determining the futility of demand, such a consideration would rob the directors of the "***opportunity*** to exercise their reasonable business judgment and [to] 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such a right.'"

---

[6]   Plaintiffs' assertion that Werbowsky's stringent test only applies to "frivolous" claims is likewise inconsistent with the Court of Appeals' insistence that the merits of a plaintiff's proposed derivative claims play no role in a court's determination of demand futility, as well as Maryland's stated goal of limiting the applicability of the demand futility exception. The notion that courts should determine whether proposed derivative claims are "frivolous" before requiring a demand would certainly not further these aims.

7

Werbowsky, 766 A.2d at 134. Plaintiffs disregard the fact that Maryland law explicitly affords directors the right to an *opportunity* to make an initial determination; Plaintiffs themselves only have the right to challenge the directors' decision after demand is made, should Plaintiffs disagree. See id. at 144 ("If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard.").

The premise underlying Plaintiffs' Opposition is the repeatedly rejected notion that a court could find demand to be futile because the directors have not yet brought suit themselves. (See, e.g., Pls.' Opp. at 4 (alleging that demand is futile as "evidenced by their lack of response to matters brought to their attention by Plaintiffs' counsel"); & 29 (further alleging that "the Defendant directors . . . hav[e] already failed to *take corrective action* in the face of actionable knowledge of the Funds' mismanagement," never "considered what effect [a transfer of management] might have on the *Funds' claims* or that they did anything to ensure these claims would be *preserved and pursued,*" and "never considered whether they should . . . bring an action against the MK Defendants, including themselves")). Courts have repeatedly rejected such arguments, even under the more liberal standard set forth in Delaware law.[7]

Tellingly, Plaintiffs offer no caselaw to justify the radical departures from Maryland law that they advocate. This Court should decline to proceed along such an uncharted path.

---

[7] See, e.g., Richardson v. Graves, 1983 WL 21109, *3 (Del. Ch. June 17, 1983) (rejecting the theory of "'if they were inclined to sue, they would have done so before now'" as having "no basis in fact and in law," and observing that "failure to sue" is not "equivalent to the board authorizing, acquiescing in or ratifying the illegal conduct"); see also McCall v. Scott, 239 F.3d 808, 824 (6th Cir. 2001) ("Inaction by the board will not excuse the failure to make a demand because it would deprive the Board of the opportunity to be 'prodded' into action, which is a fundamental goal of the demand requirement.").

8

**C.     Plaintiffs' substantive allegations regarding the Directors otherwise do not excuse demand under Maryland law.**

Plaintiffs have offered no rebuttal to the case law cited by Defendants demonstrating that each of the grounds otherwise urged by Plaintiffs as excusing demand has been rejected under applicable Maryland law:

- merely naming a director as a defendant does not render that director incapable of considering demand (Pls. Opp. at 33), see In re Infosonics Corp. Deriv. Litig., 2007 WL 2572276 at *8 ("The futility exception would eviscerate the demand requirement if demand were deemed futile anytime a derivative suit alleged breach of fiduciary duty.");

- the likelihood of any liability stemming from Plaintiffs' claims is irrelevant to the issue of demand futility (Pls.' Opp. at 33-34), see, e.g., id. at *7 ("[T]he Court does not believe that the 'likelihood of liability' is a proper reason for finding demand on the Board to be futile.  If 'likelihood of liability' is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility.");

- a director's status as a professional is irrelevant to the issue of potential liability, to the extent it impacts demand futility (Pls.' Opp. at 38), see In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106, 128 n.63 (Del. Ch. 2009) (rejecting the argument that directors with "special expertise" are "held to a higher standard of care in the oversight context"); and

- existing business or professional relationships between defendants and particular directors do not render those directors conflicted under Maryland law, see Werbowsky, 766 A.2d at 145-46; Sekuk Global Enters. Profit Sharing Plan v. Kevenides, 2004 WL 1982508, *5 (Md. Cir. Ct. Baltimore City May 25, 2004)

9

>   ("[E]vidence of personal and/or business relationships [is not] sufficient to excuse a demand even under the more permissive Delaware standard [of demand futility].") (quotations omitted).

As such, the "facts" alleged by Plaintiffs as establishing demand futility are without merit.

### II.  Plaintiffs offer no argument against enforcement of the MAM Advisory Agreement's exculpatory provision.

The Advisory Agreement between MAM and MK Select contains a clear exculpatory provision limiting MAM's liability to those instances where MAM is guilty of "willful malfeasance, bad faith, gross negligence, or reckless disregard of obligations and duties" contained in the Advisory Agreement.  See Curley Dec. Ex. 5 (MAM Advisory Agreement).  In an effort to circumvent this provision, Plaintiffs essentially advance three theories: (1) that the provision does not bar breach of contract claims; (2) that the exculpatory provision violates public policy and the ICA; and (3) that dismissal of claims based on exculpatory provisions is not proper at the motion to dismiss stage.  Each of these arguments is without merit.

#### A.  The Advisory Agreement bars breach of contract claims against MAM.

In their Opposition, Plaintiffs offer no argument to support their position that the exculpatory provision in the Advisory Agreement does not bar breach of contract claims; Plaintiffs merely offer the conclusory statement to such effect.  Plaintiffs argue that because the exculpatory provision does not specifically "carve out" liability for breach of contract claims, then the exculpatory provision cannot apply to such claims.

Plaintiffs' interpretation of the exculpatory provision in the Advisory Agreement reflects a fundamental misreading of the provision itself.  The provision generally states that MAM shall not be liable for losses sustained by MK Select "in the absence of" specific acts and omissions on the part of MAM.  See Curley Dec. Ex. 5 (MAM Advisory Agreement).  If a particular act or

10

omission is not listed after the "in the absence of" provision, then the provision mandates that MAM will not be liable. Breach of contract is not included in the list of actions for which MAM may be liable, and therefore, the provision bars any actions against MAM for breach of contract.

### B. Plaintiffs' remaining arguments against application of the Advisory Agreement's exculpatory provision lack any legal basis.

Plaintiffs' remaining arguments against enforcement of the exculpatory provision contained in the Advisory Agreement, while novel, are erroneous. For example, Plaintiffs argue that the exculpatory provision violates public policy and the ICA. In support of this argument, Plaintiffs cite Wolf v. Ford, 644 A.2d 522 (Md. 1994), for the proposition that exculpatory clauses are "patently offensive" in the context of contracts that are vitally important to the public good. (See Pls.' Opp. at 57.)

While Plaintiffs' recitation of the law involving contracts that are vitally important to the public good is accurate, Plaintiffs' implication that the present case involves such a contract is unquestionably without merit. To the contrary, courts routinely enforce exculpatory provisions between parties in the context of investment advisement. In fact, the court in Wolf expressly found that an exculpatory provision between an investment firm and its client absolving the firm from liability stemming from negligence did *not* implicate the public good such that it should be disregarded. Wolf, 644 A.2d at 536-537 ("[A] stockbroker-client relationship is not one that so affects the public interest that we should disturb the parties' ability to contractually exempt a party from liability for negligence."). Even more importantly, the ICA explicitly allows such exculpatory provisions in agreements between investment companies and their advisors. See 15 U.S.C. § 80a-17(i). Given the ICA's express allowance of such provisions, the provision at issue here does not violate public policy and/or the ICA.

Plaintiffs next attempt to circumvent the exculpatory provision in the Advisory Agreement by arguing that it is an affirmative defense and therefore not proper for dismissal on

11

Rule 12(b)(6) grounds.  (See Pls.' Opp. at 54.)  In support of this argument, Plaintiffs rely on a Delaware Chancery Court case, Sanders v. Wang, 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999).  A procedural ruling by a state chancery court, however, is entitled to no weight here.

Contrary to Plaintiffs' argument and their misplaced reliance on Sanders, *federal* courts routinely have held that exculpatory provisions may be grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Bezuszka v. L.A. Models, Inc., 2006 U.S. Dist. LEXIS 13620, *29 (S.D.N.Y. Mar. 27, 2006) (holding that plaintiffs' breach of contract claims should be dismissed due to enforceable limitation of liability clause); Continuing Creditors' Comm. of Star Telecomm., Inc. v. Edgecomb, 385 F. Supp. 2d 449, 464 (D. Del. 2004) (holding that plaintiffs' claims fail "as a matter of law because the exculpation clause protects [the defendants] against any claim for a breach of the duty of care"); Compuspa, Inc. v. Int'l Bus. Machines Corp., 228 F. Supp. 2d 613, 626 (D. Md. 2002) (holding that plaintiffs' breach of contract and breach of implied covenant of good faith claims were barred by limitation of liability clause).

Finally, dismissal of a plaintiff's claims based on an evaluation of the pleadings in light of the existence of an exculpatory clause is particularly appropriate given the United States Supreme Court's recent articulation of the pleading standard at the motion to dismiss stage in Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiffs here are obligated to point to factual allegations in their Complaint that demonstrate that application of the exculpatory provision is not warranted.  Given the absence of such factual allegations in the Complaint, Plaintiffs' failure to do so is not surprising and dismissal of their claims is required.

12

### III. Plaintiffs cannot re-cast their breach of contract claim against Morgan Keegan as a negligence-based claim.

Plaintiffs bring both negligence claims and breach of contract claims against Morgan Keegan. In the face of the clear exculpatory provision in the Underwriting Agreement, Plaintiffs attempt to "clarify" in their response that their negligence claim against Morgan Keegan is based on the Fund Accounting Service Agreement, not the Underwriting Agreement. In doing so, however, Plaintiffs attempt to bring a negligence claim for precisely the same set of facts and circumstances as their breach of contract claim against Morgan Keegan. Plaintiffs even admit that their "negligence" action is based on a provision of the Fund Accounting Service Agreement, which states that Morgan Keegan would be "held to the exercise of reasonable care in carrying out the provisions of this Agreement." (Pls.' Opp. at 60.)

Plaintiffs cannot re-cast their breach of contract claim against Morgan Keegan as a negligence claim in order to create two separate causes of action. There is no separate duty imposed by law on Morgan Keegan for the benefit of MK Select outside of that stated in the Fund Accounting Services Agreement. Indeed, the Agreement specifically includes the "exercise of reasonable care" as a *contractual* duty. Because there is no violation of a duty imposed by law independent of a contractual obligation, Plaintiffs' negligence claim against Morgan Keegan should be dismissed. See Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, LP, 37 Fed. Appx. 677, 680 (4th Cir. 2002) ("[M]ere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action in tort.") (quoting Heckrotte v. Riddle, 168 A.2d 879, 882 (Md. 1961)).

### IV. Plaintiffs present no argument against dismissal of MK Holding.

Finally, Plaintiffs cannot maintain a negligent misrepresentation claim against MK Holding without factual allegations as to the misrepresentations supposedly made by MK Holding. Likewise, Plaintiffs cannot maintain a breach of fiduciary duty claim against MK

13

Holding in the absence of any allegation that MK Holding was a fiduciary.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In response to MK Holding's arguments that Plaintiffs' negligent misrepresentation and breach of fiduciary duty claims against it should be dismissed, Plaintiffs state only that MK Holding was "a part" of cross-marketing and cross-branding "MK and Regions brands." (Pls.' Opp. at 60.)  Plaintiffs' Response falls woefully short of identifying allegations in their Complaint that would satisfy the pleading standard set forth in Twombly and Iqbal and therefore, the claims must be dismissed.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that this action be dismissed.

DATED this 18th day of September 2009.

Respectfully submitted,


/s/ Matthew M. Curley
Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238
(615)742-6200
mdagley@bassberry.com
mcurley@bassberry.com
bphillips@bassberry.com

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN   38103-3672
(901) 543-5900
state@bassberry.com
mbrady@bassberry.com

*Attorneys for Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., and MK Holding, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**APPERSON, CRUMP & MAXWELL, PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
600 Poplar Avenue, Suite 400
Memphis, TN 38119-3972

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL 60654

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN 55402-2422

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN 38103

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

**K&L GATES LLP**
JEFFREY B. MALETTA, ESQ.
NICOLE A. BAKER, ESQ.
1601 K Street, NW
Washington, D.C. 20006-1600

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA 30309

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York 1004

**PAUL HASTINGS JANOFSKY & WALKER LLP**
Kevin C. Logue
Asa R. Danes
Park Avenue Tower
75 E. 55th Street
First Floor
New York, NY 10022

/s/ Matthew M. Curley