IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| IN RE REGIONS MORGAN KEEGAN | ) | MDL Docket No. 2009 |
| SECURITIES, DERIVATIVE and ERISA | ) | |
| LITIGATION | ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| *Landers v. Morgan Asset Management,* | ) | |
| *Inc.*, No. 2:08-cv-02260-SHM-dkv | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF JACK R. BLAIR,
ALBERT C. JOHNSON, JAMES STILLMAN R. MCFADDEN, W. RANDALL
PITTMAN, MARY S. STONE, AND ARCHIE W. WILLIS, III TO DISMISS
PLAINTIFFS' FIRST AMENDED DERIVATIVE COMPLAINT**

Jeffrey B. Maletta
Nicole A. Baker
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006-1600
(202) 778-9000

*Attorneys for Jack R. Blair, Albert C. Johnson,
James Stillman R. McFadden, W. Randall
Pittman, Mary S. Stone, and Archie W. Willis, III*

Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis, III (the "Former Independent Directors") submit this Memorandum of Law in Support of their Motion to Dismiss plaintiffs' First Amended Derivative Complaint (hereinafter, the "Supplemental Complaint" or "Supplemental Compl."). The Former Independent Directors also incorporate by reference the arguments for dismissal raised by the other defendants in this action.

## PRELIMINARY STATEMENT

As a result of events that transpired after the commencement of this action – most notably, the election of a new board of directors and that new board's decision to move to terminate this lawsuit – it is now clearer than ever that plaintiffs lack standing to proceed with this purported shareholder derivative lawsuit.

Although the Court need not reach the issue, the Supplemental Complaint also fails to state a claim against the Former Independent Directors, primarily because it lacks factual allegations plausibly suggesting that the Former Independent Directors engaged in conduct that was intentionally wrongful, in bad faith, reckless or grossly negligent. The fund's articles of incorporation preclude plaintiffs' claims absent such allegations.

## ARGUMENT

**I.   PLAINTIFFS MAY NOT PURSUE A SHAREHOLDER DERIVATIVE ACTION IN THE FACE OF THE NEW BOARD'S DECISION TO HALT THE ACTION**

The Supplemental Complaint asserts fifteen claims, all of which are purported corporate causes of action that arise out of alleged mismanagement and/or breaches of duty imposed by state law and the Investment Company Act of 1940 ("ICA"). These alleged events occurred in or before early 2008 at three mutual funds that are series of the Helios Select Fund, Inc.

(formerly known as Morgan Keegan Select Fund, Inc.) ("Select Fund, Inc."), an investment company organized under Maryland law.  Plaintiffs contend they are entitled to assert these causes of action as shareholder derivative claims.

It is black letter law, however, that for mutual funds, as with other corporations, "[a] shareholder derivative action is an exception to the normal rule that the proper party to bring a suit on behalf of the corporation is the corporation itself, acting through its directors or a majority of its shareholders." Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 542 (1984).

Effective July 29, 2008, a new board of directors elected by the shareholders ("New Board") took office and replaced the Former Independent Directors.  The New Board is not alleged to have had any involvement with the supposed misdeeds alleged in the Supplemental Complaint.  Indeed, none of the members of the New Board has any connection with Morgan Asset Management, Inc. or its affiliates named in the Supplemental Complaint, and all but one of the members of the New Board are not "interested persons" within the meaning of the ICA. Accordingly, the New Board is unquestionably independent for purposes of determining whether the Select Fund, Inc. should proceed with the claims alleged in the Supplemental Complaint.

The New Board has previously asserted control of this litigation, has apprised the Court and plaintiffs that it is continuing its investigation of the claims plaintiffs have asserted, and has taken the position that this action (and other related actions) should be dismissed or stayed.  See Dckt. Nos. 28 (Nominal Defendants' Motion to Dismiss filed at the direction of the New Board and reply brief), 41 (reply brief in support thereof).  The New Board's decision to seek to halt this action is controlling irrespective of such issues as futility of demand on the Former Independent Directors.  As the Delaware Supreme Court has explained:

> When a derivative action is pending, a board comprised of new directors who are
> under no personal conflict with respect to prosecution of a pending derivative

claim may cause the corporation to act in a number of ways with respect to that litigation. For example, the new board can take control of the litigation by becoming realigned as the party plaintiff; move to dismiss the action as not in the corporation's best interest; permit the plaintiff to carry the litigation forward; or appoint a special litigating committee to determine what action to take.[1]

Braddock v. Zimmerman, 906 A.2d 776, 785-86 (Del. 2006) (citations, internal quotation marks, and footnotes omitted).[2]

The Supplemental Complaint nonetheless includes two sets of allegations that appear to be aimed at challenging the directors' authority to dismiss the action. Neither has merit:

1. Plaintiffs assert that they made a demand on the New Board and that this demand was refused. See Supplemental Compl. ¶¶ 633-77. Even assuming for the sake of argument that this is correct,[3] a court must "defer[] to the decision of the [New Board] not to pursue litigation unless the stockholders can show either that the [New Board's] investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment." Bender v. Schwartz, 917 A.2d 142, 152 (Md. App. 2007) (citing Werbowsky v.

---

[1]    As this sentence of the Delaware Supreme Court's opinion indicates, the New Board had the option to move to dismiss the action or to appoint a special litigation committee. Plaintiffs appear to have created from thin air their groundless assertion that Maryland law or some unspecified provision of the Select Fund, Inc.'s bylaws somehow *required* the appointment of a special litigation committee. See Supplemental Complaint ¶¶ 623-24.

[2]    Braddock proceeded to hold that "[t]here are good reasons not to go further and require that a derivative plaintiff interrupt litigation, when amending his pleading or otherwise, to make a demand upon such a newly constituted board." Id. at 786. By contrast, although Maryland often regards Delaware corporate case law as persuasive authority, see Shenker v. Laureate Educ., Inc., --- A.2d ---, 2009 WL 3769349 at *6 n.14 (Md. Nov. 12, 2009), Maryland's stronger policy in favor of directorial control of corporate litigation likely *would* require a new demand in such circumstances. Accord Brody v. Chemical Bank, 517 F.2d 932 (2d Cir. 1975). It is unnecessary, however, for the Court to resolve the question in this case. The New Board has not remained passive, but has affirmatively exercised its legal right to seek termination of the action – a determination that is controlling even under Delaware law as articulated in Braddock. As further discussed in the text below, moreover, plaintiffs claim they have actually made demand on the New Board. See Supplemental Compl. ¶¶ 633-77. This obviates any need to inquire whether plaintiffs otherwise would have been obligated to do so.

[3]    But see the arguments in the Morgan Keegan and Regions' Defendants' Motion to Dismiss demonstrating that demand was not properly made, and that the New Board has not made a final determination declining to pursue the claims alleged by plaintiffs.

Collomb, 766 A.2d 123, 144 (Md. 2001) and other authorities).  In conducting this inquiry, the Court simply asks "whether any rational business person could have reached that result, proceeding independently and in good faith with the best interests of the corporation in mind." Bender v. Schwartz, 917 A.2d 142, 152 (Md. App. 2007).  In addition, "[t]he burden is on the party challenging the decision to establish facts rebutting the presumption that the directors acted reasonably and in the best interests of the corporation." Id. at 152-53 (citation and internal quotation marks omitted).

The New Board's decision in this matter easily satisfies this standard.  As reflected in its prior motion to dismiss, the New Board determined that the funds' interests are best served by seeking dismissal or a stay of the action while the New Board completes its investigation of the claims asserted in this case.  This approach is a manifestly appropriate way to conserve the resources of the funds and the Court and it enables the New Board to exercise due deliberation in determining whether and in what forum to assert any claims.  In light of the highly deferential business judgment rule, it is baseless to assert that these actions by the New Board can be second-guessed by plaintiffs.

2.      The Supplemental Complaint also asserts that the New Board has not been validly elected.  Supplemental Complaint ¶¶ 622-32.

Plaintiffs' allegations do not support this conclusion, however.

Some are based on the premise that the Select Fund, Inc. was somehow obliged to appoint a special litigation committee and that the New Board itself is precluded from asserting control over the litigation.  See Supplemental Compl. ¶¶ 623-24.  As already noted, this is patently incorrect.  See pp. 2-3 & n.1 above (an independent new board of directors may appoint a special litigation committee or take control of the litigation itself).

Plaintiffs also attempt to allege misstatements or omissions in the funds' proxy materials. Supplemental Compl. ¶ 626. But these efforts are transparently meritless.

Plaintiffs first quibble with the proxy statement's characterization of the damages request in plaintiffs' prior pleading as "unspecified." Setting aside the trivial nature of the allegation, "unspecified" was an apt adjective for the damages request in plaintiffs' original complaint, which sought, among other amorphous items, "compensatory damages in an amount to be proven at trial" and "prejudgment interest in the manner and at the maximum rate where permitted by law." Shareholders' Derivative Complaint, Dckt. no. 1-3, p. 201.

Plaintiffs next assert that the proxy materials "omitted … material facts." Supplemental Compl. ¶ 626(b)(1)-(8), (10). Some of the ensuing averments merely consist of unfounded insinuations that there may have been some type of "under the table" agreements linking the New Board's nomination to the manner in which it handles this derivative action. These are coupled with a bootstrapping allegation that the proxy materials did not specifically confirm or deny whether such agreements, or discussion about such agreements, occurred.[4] Courts have repeatedly rejected similar pleading efforts. See, e.g., In re Browning-Ferris Shareholders Derivative Litig., 830 F. Supp. 361, 368 (S.D. Tex. 1993) ("Bootstrapping a series of unsupported allegations does not result in a sound basis for this action. A reasonable … shareholder would not consider what remain[s] merely baseless allegations to be material in an election of an unopposed slate of director nominees."), aff'd without opinion by Cohen v. Ruckelshaus, 20 F.3d 465 (5th Cir. 1994); Kahn v. Wien, 842 F. Supp. 667, 678 (E.D.N.Y. 1994) ("the disclosure of unproven allegations is not required in proxy solicitations"). The remaining

---

[4]   See, e.g., Supplemental Compl. ¶ 626(b)(3) (alleging that proxy materials did not disclose "any agreements … regarding this derivative action, or, if there were no such agreements or discussions, a disclosure to that effect") ¶ 626(b)(4) (similar).

"omissions" allegations also are impermissibly speculative, were not required to be disclosed, and/or appear to have little direct bearing on the New Board's election.[5]

Even assuming contrary to the foregoing that the Supplemental Complaint had adduced any reason to doubt the legitimacy of the New Board's election, plaintiffs' belated attempt to raise this issue in their Supplemental Complaint in this purported shareholder derivative action is unavailing.

To begin with, there is no federal private right of action for violation of the proxy rules in this context and, even if there were, any such cause of action would be time barred.[6]  And state law generally requires or at least encourages that challenges to the legitimacy of a board's election be brought directly by summary proceeding rather than collaterally attacked in an action primarily involving other issues.  See generally 2, Fletcher Cyclopedia of the Law of Corporations § 371 (Revised ed. 2009) ("The validity of the election of a corporate officer

---

[5]    Compare General Electric v. Cathcart, 980 F.2d 927, 937 (3d Cir. 1992) (SEC "Schedule 14A is persuasive authority as to the required scope of disclosure in proxy materials" and it "mandates the disclosure, in connection with directors' elections, of litigation involving the individual board members and not of litigation only against the company, because the focus of attention during the directors' elections is on the nominees themselves.").  Even a material defect in the proxy materials would not necessarily require the election of a new board.  See Matter of Seminole Oil & Gas Corp., 150 A.2d 20, 23-24 (Del. Ch. 1959) (court has discretion to determine whether even material misrepresentations in a proxy statement warrant a new election).  Other allegations – such as that the directors comprising the New Board were also directors of other investment companies and that they had no investments in any of the funds, Supplemental Compl. ¶¶ 628, 630 – are simply irrelevant to plaintiffs' contention that the New Board's election was invalid.

[6]    See Halebian v. Berv, 631 F. Supp. 2d 284, 298-300 & nn.10 & 11 (S.D.N.Y. 2007) (no private right of action under § 20(a) of the ICA, which prohibits materially misleading proxy statements); cf. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 97 n.4 (1991) (declining to address whether there is an implied private right of action under § 20(a)).  Plaintiffs delayed seeking redress for more than a year from the time they allegedly learned of the supposed misstatements in the proxy materials.  See Supplemental Compl. Ex. B (June 19, 2008 letter from plaintiffs' counsel to members of New Board alleging misleading proxy statements).  Thus, any arguable federal cause of action is barred by the statute of limitations.  See In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 196-99 (3d Cir. 2007) (plaintiffs must bring action for alleged violation of Securities Exchange Act of 1934 proxy rules within one year of discovery).  As indicated in the next footnote, any equitable relief would also be barred by laches.

cannot be questioned in a collateral proceeding for the reason that if the officer is not an officer

de jure, he or she is at least a de facto officer, and remedies have been provided so that the right

of a person claiming to have been elected to office may be ascertained."). Cf. In re Masterwear

Corp., 233 B.R. 266, 272-73 (Bankr. S.D.N.Y. 1999) ("A person cannot deprive a director of his

*de jure* status simply by saying 'I contest your election.'   The dispute must be *bona fide* and

properly raised before the appropriate forum." Id. at 273).[7]

In any event, even if plaintiffs otherwise ***could*** have challenged the New Board's

legitimacy in the context of this action, they have plainly forfeited that opportunity by

contending that they actually made demand on the New Board. See Supplemental Complaint ¶¶

633-77.   "[A] shareholder who makes demand may not later assert that a demand was in fact

excused as futile….   Once a demand has been made, the decision to block or terminate the

litigation rests solely on the business judgment of the directors." Kamen v. Kemper Fin. Servs.,

Inc., 500 U.S. 90, 104 (1991) (shareholder derivative action alleging misleading proxy

statements in violation of ICA § 20(a) (citation omitted). See also Bender v. Schwartz, 917 A.2d

142, 152 (Md. App. 2007) ("By making a demand, the shareholders are deemed to have waived

any claim they might otherwise have had that the board cannot act independently on the

demand." (Citing Scattered Corp. v. Chicago Stock Exch., Inc., 701 A.2d 70, 74 (Del. 1997),

---

[7]     Although such summary remedies may not be invariably exclusive, plaintiffs' torpor (including their failure to utilize available expedited proceedings) is good reason to deny them the use of the "equitable device" of a shareholder derivative action, Daily Income, 464 U.S. at 530, to belatedly challenge the New Board's election. Cf. O'Gara v. New York Cent. R. Co., 260 F. 742, 746 (7th Cir. 1919) (right of shareholder to challenge certain consequences of board's decision at a "late date" would not be recognized where shareholder had means of "ready redress" yet had not challenged directors' election "in any of the ways open to him").   Even indulging in the erroneous assumption that the New Board was not validly elected, the appropriate remedy would seem to be a new election rather than a transfer of corporate powers to the shareholder-plaintiffs in this case.

internal quotation marks and emphasis omitted.); <u>Mona v. Mona Elec. Group</u>, 934 A.2d 450, 466

(Md. App. 2007) (same).

## II.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE FORMER INDEPENDENT DIRECTORS

The Supplemental Complaint appears to assert six claims against the Former Independent

Directors.  All are meritless.

The contribution claim (Count VIII, Supplemental Compl. ¶¶ 792-94) has not ripened,

and may never ripen.  <u>Cf.</u> <u>Asdar Group v. Pillsbury, Madison and Sutro</u>, 99 F.3d 289, 295 (9th

Cir. 1996) ("a defendant's right to contribution in a 10b-5 action does not arise until a defendant

has paid more than her share of the judgment").

The claims under Maryland Securities Act §§ 11-301, 11-703 (Count XIV, Supplemental

Compl. ¶¶ 855-60 and Count XV, Supplemental Compl. ¶¶ 861-70) are direct claims that were

previously dismissed by the Court and are not properly included in this purported shareholder

derivative action.[8]   In addition, the Supplemental Complaint fails to explain how these

provisions, which generally impose civil liability upon persons who provide investment advice

and those who "offer[] to purchase," "purchase[]," "[o]ffer[] or sell[]" a security in violation of

the statute, Maryland Securities Act § 11-703, can reasonably be read as applying to the Former

Independent Directors.

The claim for "Violation of Investment Company Act §§ 13, 34(b), 47" (Count XIII,

Supplemental Compl. ¶¶ 848-54) also fails.  There is no private right of action for violations of

§§ 13 and 34(b).  <u>See generally</u> <u>Bellikoff v. Eaton Vance Corp.</u>, 481 F.3d 110, 116-17 (2d Cir.

2007).  Further, a claim under § 34(b) does not appear to be a corporate (as opposed to a

---

[8]      The claims were included in plaintiffs' Complaint as Counts IV and V in <u>Atkinson v. Morgan Asset Mgmt., Inc.</u>, No. 2:08-cv-02694-SHM-dkv, and dismissed as precluded by SLUSA in this Court's order in that action dated Sept. 23, 2009.

shareholder) claim, and the Supplemental Complaint lacks factual allegations that would support holding the Former Independent Directors personally liable for an alleged violation of § 13. Section 47(b) affords a limited right of rescission as to contracts that involve a violation of the ICA, but does not authorize any remedy against the Former Independent Directors.

The duplicative and overlapping claims for Breach of Fiduciary Duty (Count III, Supplemental Compl. ¶¶ 717-32) and Ultra Vires Conduct (Count XII, Supplemental Compl. ¶¶ 837-47) also must be dismissed.

Section 11.1 of the funds' articles of incorporation provides that:

> To the maximum extent permitted by applicable law (including Maryland law and the 1940 Act) as currently in effect or as it may hereafter be amended, no director or officer of the Corporation shall be liable to the Corporation or its stockholders for money damages.

(Compl. ¶ 385.)

Maryland law expressly permits Maryland corporations like Select Fund, Inc. to limit the liability of their officers and directors, see Md. Code Ann. §§ 2-405.2; 5-418, and the ICA also allows such limitations, at least as long as the limitation does not absolve directors or officers from liability for "willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of [their] office[s]." 15 U.S.C. § 80a-17(h).[9]

The Supplemental Complaint does not allege self-dealing, and plaintiffs fail to allege facts (as opposed to boilerplate assertions) demonstrating that the Former Independent Directors' conduct amounts to "willful misfeasance, bad faith, gross negligence or reckless disregard."

---

[9] Because the provision contained in the funds' articles of incorporation is narrowly tailored to comply with Maryland law and § 17(h) of the ICA, it is enforceable notwithstanding plaintiffs' conclusory assertion to the contrary. (See Supplemental Compl. ¶ 726.)

Plaintiffs' conclusory allegations to the effect that the Former Independent Directors acted "intentionally and knowingly, in bad faith, with gross negligence or reckless disregard of their duties and of the information either known, or readily available to them," Supplemental Compl. ¶ 730, do not satisfy the requirement in Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937 (2009), that a plaintiff plead sufficient *facts* to plausibly support such a claim – particularly one that turns on an individual's knowledge or state of mind. Id. at 1950-51.

Indeed, while plaintiffs' claims plainly fail even under Fed. R. Civ. P. 8(a), their bald insinuations that the Former Independent Directors acted intentionally trigger Fed. R. Civ. P. 9(b). See generally Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004); Morse v. McWhorter, 200 F. Supp. 2d 853, 865-66 (M.D. Tenn. 2000). The Supplemental Complaint falls far short of meeting this heightened pleading standard.

Plaintiffs' failure to plead conduct that is actionable in light of the fund's articles of incorporation requires dismissal of all of plaintiffs' claims against the Former Independent Directors.

## <u>CONCLUSION</u>

For the foregoing reasons, the Former Independent Directors request that the Supplemental Complaint be dismissed.

DATED this 15th day of December 2009.

Respectfully submitted,

/s/ Nicole A. Baker
Jeffrey B. Maletta (DC Bar No. 294009)
Nicole A. Baker (DC Bar No. 484147)
K&L GATES LLP
1601 K Street, NW
Washington, DC  20006-1600
(202) 778-9000
jeffrey.maletta@klgates.com
nicole.baker@klgates.com

*Attorneys for Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis, III*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 15, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or serve the following via U.S. Mail:

**APPERSON, CRUMP & MAXWELL, PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
600 Poplar Avenue, Suite 400
Memphis, TN 38119-3972

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
200 East Randolph Drive
Chicago, IL 60601

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN 55402-2422

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN 38103

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

**BASS BERRY & SIMS PLC**
MICHAEL L. DAGLEY
MATTHEW M. CURLEY
W. BRANTLEY PHILLIPS, JR.
325 Deaderick Street, Suite 2700
Nashville, TN  37238

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
99 Peachtree Street, NE
Atlanta, GA  30309

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
24 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York,  NY 10004

**BASS BERRY & SIMS PLC**
SHEPHERD D. TATE
MICHAEL A. BRADY
100 Peabody Place, Suite 900
Memphis, TN  38103

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**
KEVIN C. LOGUE
ASA R. DANES
75 East 55th Street
New York, NY  10022


/s/ Nicole A. Baker

13