IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION ) ) ) ) ) | MDL Docket No. 2009 |
| This Document Relates to: ) ) | |
| *Landers v. Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dvk ) ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
FIRST AMENDED DERIVATIVE COMPLAINT FILED BY MORGAN KEEGAN &
COMPANY, INC., MORGAN ASSET MANAGEMENT, INC., AND MK HOLDING, INC.**

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615)742-6200

Shepherd D. Tate
Michael Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee 38103-3672
(901) 543-5900

*Attorneys for Morgan Keegan & Company, Inc.,
Morgan Asset Management, Inc.,
and MK Holding, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

    I.    Plaintiffs' Demand Futility Allegations.................................................2

    II.    Plaintiffs' Demand Allegations............................................................3

STANDARD OF REVIEW .........................................................................................4

ANALYSIS..................................................................................................................4

I.    Plaintiffs have failed to plead that demand was futile at the time of filing suit in accordance with the requirements of Maryland law. ............................................4

    A.    Maryland law requires near-universal demand......................................5

        1.    The pleading standard required to show that demand is excused under Maryland law is exceptionally stringent............................5

        2.    Plaintiffs' argument that demand is "not relevant" to open-end investment companies has been rejected by courts considering the issue under Maryland law ............................................6

    B.    Maryland statutory law controls the issue of director independence with respect to this action............................................................................7

    C.    Plaintiffs' remaining allegations are insufficient to excuse demand as futile under Maryland law.......................................................................8

        1.    Demand futility allegations related to the merits of this action are irrelevant under Maryland law..................................................8

        2.    The mere existence of overlapping directorships and other business relationships does not excuse demand ......................................10

        3.    Purported lack of insurance coverage does not excuse demand under Maryland law ...................................................................11

        4.    The directors' "failure to sue by now" does not establish demand futility...............................................................................11

        5.    Plaintiffs have failed to establish a threat of irreparable harm ..................12

    D.    Demand on the Funds' shareholders was not excused............................12

II.     Plaintiffs' allegations that the New Board refused demand are legally insufficient
        to avoid dismissal of this action .......................................................................................13

        A.      Plaintiffs inappropriately attempt to plead that demand should be excused
                as futile while also arguing that demand was made and improperly refused ........13

        B.      Plaintiffs do not actually allege that demand has been made upon, and
                refused by, the New Board.................................................................................15

III.    The claims against MAM, Morgan Keegan and MK Holding must be dismissed as
        a matter of law ...............................................................................................................18

        A.      The Advisory Agreement between the Funds and MAM bars Plaintiffs'
                claims against MAM..........................................................................................18

        B.      Plaintiffs' claims against MK Holding and Morgan Keegan fail as a matter
                of law ...............................................................................................................21

        C.      Sections 13, 34(b), and 47 of the ICA do not provide a private cause of
                action................................................................................................................22

CONCLUSION.........................................................................................................................23

CERTIFICATE OF SERVICE ..................................................................................................25

Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), and MK Holding, Inc., respectfully submit this memorandum of law in support of their motion to dismiss this derivative action.[1]

## PRELIMINARY STATEMENT

On October 13, 2009, when Defendants' motions to dismiss were pending before this court, and without warning or seeking leave of the Court, Plaintiffs filed a 394-page, 876-paragraph First Amended Derivative Complaint ("FADC"). The FADC relies on the same flawed legal theories that warranted dismissal of the previous Complaint, but also improperly contains over seventy paragraphs of supplemental allegations that relate to conduct post-dating the commencement of this action.

The FADC must be dismissed because Plaintiffs concede that they did not make a demand on the board of directors at the time this action was initiated, and because they plead no facts demonstrating that demand should be excused as futile. Well established Maryland law requires dismissal under these circumstances.

In addition, Plaintiffs include the incongruous assertion that demand has been made and refused by the board. These new "demand refused" allegations fail to meet the applicable pleading requirements necessary to survive a motion to dismiss, but the mere allegation that Plaintiffs have made demand on the board nevertheless places consideration of their claims asserted in this action squarely in the hands of the directors.

Finally, the FADC fails to state a claim on which relief may be granted. Plaintiffs' claims against Morgan Keegan, MAM and MK Holding fall woefully short of the pleading requirements of the Federal Rules of Civil Procedure.

---

[1]   Morgan Keegan, MAM and MK Holding incorporate the arguments in the motions to dismiss filed by the other Defendants in this action to the extent applicable, and likewise incorporate the arguments set forth in Defendants' previously-filed Motion to Strike (Docket Entry No. 49).

## STATEMENT OF FACTS

The background related to the parties and the claims at issue were set forth in Defendants' previously-filed motions to dismiss. (See Docket Entry No. 24-2.)[2] The claims asserted in the FADC[3] and the arguments asserted in this motion are largely the same and include the insufficiency of Plaintiffs' allegations that their failure to make demand on both the directors and shareholders prior to filing this action should be excused as futile. The supplemental allegations in the FADC raise the related and equally dispositive question of whether Plaintiffs may simultaneously advance the theories that demand was futile prior to the filing of this action and that demand was made after the filing of this action and refused. Finally, Plaintiffs may not bring their claims against Morgan Keegan, MAM, or MK Holding, as such claims are barred by contractual exculpatory provisions or are otherwise improper as a matter of law.

### I.    Plaintiffs' Demand Futility Allegations

Plaintiffs' demand futility allegations are set forth at ¶¶ 562-632 of the FADC. In support of their previously-filed motions to dismiss, Defendants demonstrated that the demand futility allegations in the initial Complaint are insufficient under Maryland law. Despite this,

---

[2]    Morgan Keegan, MAM and MK Holding set forth the background of MK Select Fund, Inc. ("MK Select" and presently known as Helios Select Fund, Inc.), and the Funds and provided a description of each of the parties to this action. Defendants also discussed the transition of the investment advisor of the Funds from MAM to Hyperion Brookfield Asset Management, Inc., and the circumstances related to the naming of a new board of directors for MK Select (referred to herein as the "New Board"). (See Docket Entry No. 24-2, at pp. 3-6.) In lieu of repeating that same background here, Defendants incorporate this discussion by reference.

[3]    Plaintiffs assert the following claims against MAM, Morgan Keegan and MK Holding: breach of contract claims against MAM and Morgan Keegan (Counts I and II); a breach of fiduciary duty claim against MAM, Morgan Keegan and MK Holding (Count IV); negligence claims against Morgan Keegan and MAM (Counts V and VI); a negligent misrepresentation claim against MAM, Morgan Keegan and MK Holding (Count IX); a claim for "*ultra vires*" conduct against MAM, Morgan Keegan, and MK Holding (Count XII); claims for violation of §§ 13, 34(b), and 47 of the ICA against MAM, Morgan Keegan, and MK Holding (Count XIII); and claims for violation of §§ 11-301 and 11-703 of the Maryland Securities Act against MAM, Morgan Keegan, and MK Holding (Counts XIV and XV). Plaintiffs also assert a contribution claim against all Defendants (Count VIII).

2

Plaintiffs have included these same demand futility arguments in the FADC. These allegations can be summarized as follows: (i) the Funds allegedly did not have a majority of independent directors capable of making a decision on the question of whether to bring litigation; (ii) the decision of whether to pursue litigation was one in which a majority of the Company's directors allegedly had a personal interest; and (iii) there allegedly was "no choice to be made that was subject to the business judgment presumption" in deciding whether or not to pursue this action.

In apparent response to the arguments in the previously filed motions to dismiss, Plaintiffs now include two additional allegations that were not asserted in their initial Complaint: (i) that demand was excused due to a "threat of irreparable harm" because of the risk that the statute of limitations would run on Plaintiffs' claims (id. ¶¶ 605-609), and (ii) that demand on the shareholders should be excused as futile because there were too many shareholders, and because certain of the Defendants held shares in the Funds (id. ¶¶ 678-687).

Under applicable Maryland law, none of these arguments excuse Plaintiffs' failure to make a demand.

## II.  **Plaintiffs' Demand Allegations**

After Defendants filed their initial motions to dismiss, which largely focused on the issue of demand futility, Plaintiffs argued in opposition to those motions that they had in fact made a demand on the New Board after the filing of this action. These supplemental allegations are now set forth in the FADC at ¶¶ 633-677. The FADC, however, fails to allege that Plaintiffs requested that the New Directors bring suit on behalf of the Funds or that the New Board refused to bring suit. Indeed, Plaintiffs allege that the New Board represented to Plaintiffs that the Board is actively investigating any potential claims the Funds may possess. (Id. ¶ 661.)

3

## STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Fed. R. Civ. P. 12(b)(6) & 12(c). In evaluating the complaint, the court "need not accept as true 'legal conclusions or unwarranted factual inferences.'" See Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003) (quoting Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)). Importantly, a plaintiff must provide more than "labels and conclusions," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must plead facts sufficient "to raise a right to relief above the speculative level." Id.

When a plaintiff in a derivative action alleges demand futility, such allegations must be pleaded "in a *very particular* manner." See Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2001). Rule 23.1 of the Federal Rules of Civil Procedure requires that a plaintiff "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). When a derivative complaint fails to plead demand or demand futility with the requisite particularity, the complaint should be dismissed. See, e.g., In re Ferro Corp. Deriv. Litig., 511 F.3d 611 (6th Cir. 2008) (upholding the dismissal of a complaint for failure to plead demand futility with particularity); Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133 (2d Cir. 2004) (same); In re Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557 (N.D. Ohio Jan. 5, 2007) (same).

## ANALYSIS

I.   **Plaintiffs have failed to plead that demand was futile at the time of filing suit in accordance with the requirements of Maryland law.**

Plaintiffs devote the bulk of their demand allegations to the arguments that: (i) Maryland's strict demand futility standard should not apply to this action; and (ii) the demand

4

requirement should not apply to mutual funds.  The balance of Plaintiffs' demand futility allegations have been rejected by courts considering demand futility under Maryland law.

> ### A.   <u>Maryland law requires near-universal demand.</u>
>
> #### 1.   <u>The pleading standard required to show that demand is excused under Maryland law is exceptionally stringent.</u>

Maryland law governs the substantive analysis of whether a shareholder is permitted to proceed with claims derivatively.  See <u>Kamen v. Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 108-09 (1991).  Under Maryland law, a shareholder "must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile." <u>Bender v. Schwartz</u>, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007); <u>Werbowsky</u>, 766 A.2d at 145.  The Maryland standard is particularly stringent and demand is rarely excused.  See, e.g., <u>In re InfoSonics Corp. Deriv. Litig.</u>, 2007 WL 2572276, *7 (S.D. Cal. Sept. 4, 2007) ("Delaware's requirements for demand futility are more permissive than Maryland's, requiring only that the facts alleged create a 'reasonable doubt' that the directors are disinterested and independent.").

Under Maryland law, to plead demand as futile, a plaintiff must clearly demonstrate either: (i) imminent harm to the corporation in the event of a delay in bringing suit, or (ii) that a majority of the corporation's directors "are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule." <u>Werbowsky</u>, 766 A.2d at 144.  This requirement "focuses the court's attention on the real, limited, issue – the futility of a pre-suit demand – and avoids injecting into a preliminary proceeding issues that go more to the merits of the complaint. . . ." <u>Id.</u>

Demand is both a pleading requirement and a substantive prerequisite to a derivative suit. See <u>In re Franklin Mut. Funds Fee Litig.</u>, 388 F. Supp. 2d 451, 469 (D.N.J. 2005) (citing <u>Kamen</u>, 500 U.S. at 96).  As such, the substantive requirements must be stated with particularity under

Rule 23.1 of the Federal Rules of Civil Procedure. See Kamen, 500 U.S. at 96; see also In re Ferro Corp. Deriv. Litig., 511 F.3d at 617-618 ("Broad, generalized and conditional statements [as to demand futility] do not constitute facts pleaded with particularity." (quotations omitted)). Here, Plaintiffs' allegations do not come close to meeting the requisite level of particularity.

> **2.    Plaintiffs' argument that demand is "not relevant" to open-end investment companies has been rejected by courts considering the issue under Maryland law.**

As in their opposition to Defendants' previously filed motions to dismiss, Plaintiffs again devote multiple pages of the FADC to the argument that an open-end investment company cannot have interests distinct from its shareholders, and therefore, "[t]here was no choice to be made that was subject to the business judgment presumption." (FADC ¶¶ 567(c); 610-612; 619-621.) According to this logic, if the business judgment rule is deemed not to apply, then there is no reason or need for Plaintiffs to make a demand on the board. This argument is without merit.

The United States Supreme Court in Kamen expressly considered the requirement of demand involving an investment company organized under Maryland law, and held that Maryland law controls the futility standard. See Kamen, 500 U.S. at 98-99, 108-109. Moreover, courts applying Maryland law have expressly rejected arguments that the same demand futility standard does not apply to investment companies. See Scalisi, 380 F.3d at 140 ("Werbowsky sets forth at length Maryland's standards for determining whether demand on a corporation's directors is excused. We see no reason to believe that Maryland would depart from those standards in the case of a registered investment company."); cf. In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d at 463-64 (rejecting the argument that the structure of a mutual fund changes the nature of the analysis of whether a claim is derivative or direct). Maryland's demand requirement applies here.

**B.     Maryland statutory law controls the issue of director independence with respect to this action.**

Maryland law governing investment companies such as MK Select provides that "[a] director of a corporation who with respect to the corporation is not an interested person, as defined by the [ICA, 15 U.S.C. § 80a-2], shall be deemed to be independent and disinterested when making any determination or taking any action as a director." Md. Code Ann., Corps. & Ass'ns § 2-405.3(b). This provision applies in determining whether a director is independent and capable of considering demand in the demand futility context. See Scalisi, 380 F.3d at 140; In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d at 470; see also Bus. & Comm. Litig. in Fed. Cts. § 62:86 ("Futility often turns on whether the directors of [a mutual fund] are independent and [Delaware, Maryland, and Massachusetts] have adopted statutes rendering investment company directors who are not 'interested persons' under the [ICA] independent for purposes of state law as well.").[4]

Plaintiffs cannot meet their burden of showing that demand is futile where it is undisputed that a majority of the directors were independent, and thus "disinterested persons" under the ICA.[5] Even beyond the consideration of this issue in the context of an investment company, Maryland's "business judgment rule creates the presumption that directors act in good

---

[4]      Importantly, even an interested director under the ICA does not automatically fail the test for independence under Maryland law. See Scalisi, 380 F.3d at 140 ("Although § 2-405.3 classifies as 'independent' a director who is not 'interested' under the ICA, this by no means suggests that every person who is 'interested' under the ICA should be found to fail Maryland's test for independence.").

[5]      Compliance with fund governance standards under the ICA requires that at least seventy-five percent (75%) of the directors of an investment company not be "interested persons." See 17 C.F.R. 270.0-1(a)(7)(i). At the time Plaintiffs commenced this action, MK Select's board of directors was comprised of six directors, five of whom were outside directors and thus "disinterested" under the ICA. See Curley Dec., Ex. 2 (Semi-Annual Report (Mar. 2008) at 64-66). Contrary to Plaintiffs' allegations, No defendants have "admitted" that the Defendant Directors are not disinterested. (FADC ¶¶ 581-589.) Plaintiffs' assertion that the Defendant Directors are conflicted merely because they were named as defendants ignores established Maryland law. Defendants are aware of no case law applying Maryland law that holds that a director is incapable of considering a demand merely because he has been named as a defendant in the derivative lawsuit.

faith," a presumption that is heightened, "where, as here, the majority of the Board members are independent outside directors." <u>NCR Corp. v. AT&T Co.</u>, 761 F. Supp. 475, 490 (S.D. Ohio 1991) (citing, <u>inter alia</u>, <u>Zimmerman v. Bell</u>, 800 F.2d 386, 392 (4th Cir. 1986)).

Here, there can be no dispute that five of the six MK Select directors were disinterested and independent under the ICA and Maryland law at the time Plaintiffs commenced this action. This dooms Plaintiffs' demand futility argument from the outset.

### C. Plaintiffs' remaining allegations are insufficient to excuse demand as futile under Maryland law.

In the FADC, Plaintiffs re-plead virtually the same demand futility allegations as were set forth the initial Complaint. In large part, Plaintiffs continue to rely on the misconception that Maryland law allows a plaintiff to premise demand futility on the same alleged misconduct that forms the basis of the underlying claims. The Maryland Court of Appeals and the overwhelming majority of courts applying Maryland law have rejected this argument.[6] The balance of Plaintiffs' allegations are likewise insufficient to excuse demand as futile.

### 1. Demand futility allegations related to the merits of this action are irrelevant under Maryland law.

Plaintiffs allege that demand should be excused because of the directors' potential liability in this action, and because "the mismanagement complained of herein was not an exercise of good faith business judgment by these directors." (FADC ¶¶ 580(e)-(g), 598.) Plaintiffs further allege that because Directors Johnson, McFadden, Pittman and Stone were

---

[6]     Plaintiffs have supplemented the initial Complaint to include allegations regarding conduct that supposedly occurred *after* the filing of the initial Complaint. <u>See</u>, <u>e.g.</u>, FADC ¶ 604 ("Thus, for the above reasons and based on the facts set forth herein, including events that transpired after March 28, 2008," Plaintiffs did not make a demand.). Such allegations are irrelevant to a determination of demand futility. Plaintiffs must plead demand futility as of the time the suit is filed, "not afterward with the benefit of hindsight." <u>Grossman v. Johnson</u>, 674 F.2d 115, 123 (1st Cir. 1982). <u>See also</u> <u>In re Ferro Corp. Deriv. Litig.</u>, 511 F.3d at 621 (rejecting plaintiffs' allegations that "relate to conduct that occurred *after* they filed their original complaints"); <u>In re Coca-Cola Ent., Inc. Deriv. Litig.</u>, 478 F. Supp. 2d 1369, 1375 (N.D. Ga. 2007) ("the proper time to measure demand futility is at the filing of the suit"); <u>In re Oxford Health Plans, Inc.</u>, 192 F.R.D. 111, 114 n.1 (S.D.N.Y. 2000) (same).

members of the Funds' Audit Committee and "held out by the Company/Funds as 'financial experts,'" they will "be held to a standard more rigorous than that applied to their 'non-expert' director colleagues" and suffer from "heightened exposure" to liability in this case. (Id. ¶ 578.)

Such allegations violate a central tenet of Maryland law; namely, that the issue of demand futility is discrete and does not go to the merits of the underlying complaint, "i.e., whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the challenged decision or transaction." Washtenaw County Emp. Ret. Sys. v. Wells REIT, Inc., 2008 WL 2302679, *14 (N.D. Ga. Mar. 31, 2008) (citing Werbowsky, 766 A.2d at 144).[7]  Indeed, allegations of wrongdoing that form "a component of the challenged action that is the subject of this lawsuit, cannot be considered as a factor in determining whether demand was futile." Id.  Likewise, demand is not futile merely because the proposed litigation might expose directors to liability. See In re CNL Hotels & Resorts, Inc. Sec. Litig., 2005 WL 2219283, *4-5 n.18 (M.D. Fla. Sept. 13, 2005) (rejecting similar arguments under Maryland law as excusing demand); In re InfoSonics Corp., 2007 WL 2572276, at *7 (rejecting a nearly identical set of allegations as excusing demand under Maryland law, stating that "[i]f 'likelihood of liability' is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility").[8]

---

[7]      Most of Plaintiffs' demand arguments are premised on the flawed assumption that the substantive allegations in this matter are relevant to a futility analysis. For example, Plaintiffs' argument that demand is "irrelevant" because the alleged conduct complained of was *ultra vires* is based on an assumption that Plaintiffs' allegations are meritorious, (FADC ¶¶ 613-615), as is Plaintiffs' assertion that the New Board is somehow "obligated" to pursue these claims because they represent an "asset" of the Funds (id. ¶¶ 616-621).

[8]      In any event, Plaintiffs' argument that certain directors face a "heightened exposure" to liability due to their alleged financial expertise is incorrect. See In re Citigroup Inc. S'holder Deriv. Litig., 964 A.2d 106,128 n.63 (Del. Ch. 2009) ("Directors with special expertise are not held to a higher standard of care in the oversight context simply because of their status as an expert."); see also Canadian Comm. Workers Indus. Pension Plan v. Alden, 2006 WL 456786, at *7 n.54 (Del. Ch. Ct. Feb. 22, 2006) (same).

2.    **The mere existence of overlapping directorships and other business relationships does not excuse demand.**

Plaintiffs allege that Director McFadden "had a significant banking and business relationship with Regions, which, *prima facie*, precludes him from being viewed as independent or disinterested." (FADC ¶ 575(a).)  The existence of such business relationships between a director and a parent corporation of an investment company, standing alone, does not constitute a basis to excuse demand on a director. Werbowsky, 766 A.2d at 145-46 (rejecting argument that directors are conflicted "because of the business that other companies of which they are directors do"). In fact, "[e]vidence of personal and/or business relationships [is not] sufficient to excuse a demand even under the more permissive Delaware standard" of demand futility. Sekuk Global Enters. Profit Sharing Plan v. Kevenides, 2004 WL 1982508, *5 (Md. Cir. Ct. Baltimore City May 25, 2004) (quotations omitted).

Nor does a director's service on the boards of related investment companies, the receipt of compensation for such service, or the interrelated nature of various funds' management excuse demand. (FADC ¶¶ 571-573; 580(a)-(d).) See, e.g., In re Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d at 470 ("allegations that the directors were chosen by the investment advisers, sat on multiple boards and received substantial compensation are, by themselves, *insufficient to demonstrate that the directors are interested*") (emphasis supplied) (citing Werbowsky, 766 A.2d at 145-46); see also Scalisi, 380 F.3d at 140 (rejecting the argument that the demand on directors was futile because the "directors were appointed by [the parent corporation]," and "they had a powerful self-interest not to authorize a suit by [the Fund] against a [parent-controlled entity] for fear they would lose their highly remunerative positions" on the board of 49 funds managed by the parent).[9]

---

[9]    Plaintiffs' allegations likewise fail to meet Rule 23.1's particularity requirement, where they have inconsistently argued that the directors were, in fact, conflicted because Directors had little to no personal

### 3.   Purported lack of insurance coverage does not excuse demand under Maryland law.

Plaintiffs allege that demand is also excused because any demand would have sought to have the directors sue themselves for an amount in excess of that for which they were insured, an argument based in part on the alleged presence of an "insured-versus-insured" exclusion in the Company/Funds' directors' and officers' liability coverage.   (See, e.g., FADC ¶ 580(e), (h).) Courts have rejected the theory that a lack of insurance coverage supports a finding of demand futility under Maryland law.   See In re InfoSonics Corp., 2007 WL 2572276, at *7 n.1 (quoting Sekuk, 2004 WL 1082508, at *9) ("[T]his Court concludes that when it does directly address the issue, the [Maryland] Court of Appeals will most likely follow the lead of other courts which have held that an insured-versus-insured provision does not excuse a pre-suit demand."); see also Werbowsky, 766 A.2d at 130, 144 (declining to review the trial court's rejection of "the notion, drawn from Edge Partners, L.P. v. Dockser, 944 F. Supp. 438 (D. Md. 1996), that a lack of insurance coverage for named directors can excuse a demand").

### 4.   The directors' "failure to sue by now" does not establish demand futility.

Plaintiffs further allege demand futility based on "[t]he Defendant directors' failure to act to protect, preserve, and pursue the claims asserted herein."   (FADC ¶ 601; see generally id. ¶¶ 590, 599-602.)   In addition to the impropriety of relying on post-Complaint conduct (see p. 8 n.6, supra) to attempt to plead demand futility, courts have consistently rejected the assertion that demand is futile because the directors have not brought suit themselves by a particular date.   See, e.g., Richardson v. Graves, 1983 WL 21109, *3 (Del. Ch. June 17, 1983) (holding that the theory of "'if [the directors] were inclined to sue, they would have done so before now'" has "no basis

---

holdings at stake in the Funds, notwithstanding their prior assertions that these same Directors were conflicted due to their positions with and holdings in other RMK funds. (FADC ¶¶ 572-573.)   Such alternative, "shotgun" styles of pleading do not satisfy the demand futility requirement.

in fact and in law," and rejecting the proposition that "failure to sue" is "equivalent to the board authorizing, acquiescing in or ratifying the illegal conduct"); McCall v. Scott, 239 F.3d 808, 824 (6th Cir. 2001) ("Inaction by the board will not excuse the failure to make a demand because it would deprive the Board of the opportunity to be 'prodded' into action, which is a fundamental goal of the demand requirement."). See also Kamen v. Kemper Fin. Servs., Inc., 659 F. Supp. 1153, 1163 (N.D. Ill. 1987) (rejecting the argument that "demand should be excused because the Fund has moved to dismiss the complaint on substantive grounds," and holding that plaintiff "cannot use the fact that the Fund defended itself in this lawsuit to justify her own failure to comply with Rule 23.1 in the first place").

### 5.    Plaintiffs have failed to establish a threat of irreparable harm.

Plaintiffs have pleaded no facts demonstrating that the Funds would suffer "irreparable harm" if Plaintiffs waited for the board to consider a demand. Plaintiffs' assertion that following the requirement of Maryland law (i.e., making a demand) would risk irreparable harm because it "would jeopardize claims in the face of a short statute of limitations" (FADC ¶¶ 605-609) would permit Plaintiffs to manufacture demand futility at will. The fact that Plaintiffs perhaps waited until the last possible minute to file suit without previously making demand is entirely of their own doing and does not excuse their failure to make a demand. Moreover, this allegation is based on an argument advanced by certain of the Defendants in support of their motions to dismiss the initial Complaint, not on Plaintiffs' knowledge at the time the initial Complaint was filed, as required by law. (See FADC ¶¶ 605, 609.)

### D.    Demand on the Funds' shareholders was not excused.

Plaintiffs also have failed to make demand on the shareholders at large as required under Maryland law. See Parish v. Md. & Va. Milk Producers Ass'n, 242 A.2d 512, 544 (Md. 1968) (citing Eisler v. Eastern States Corp., 35 A.2d 118, 119 (Md. 1943)); see also Edge Partners, L.P.

12

v. Dockser, 944 F. Supp. 438, 442 (D. Md. 1996) (noting requirement of pre-suit demand on shareholders under Maryland law); Grill v. Hoblitzell, 771 F. Supp. 709, 712 n.5 (D. Md. 1991) (same); Zimmerman v. Bell, 585 F. Supp. 512, 515-516 (D. Md. 1984)(same).  This failure constitutes a separate ground for dismissal.

Plaintiffs allege that demand on the shareholders should be excused because: (1) Plaintiffs have no information regarding the exact number of shareholders (FADC ¶¶ 678-679); and (2) Regions Bank and its affiliates allegedly are the Funds largest shareholders, and therefore, demand should be considered futile (id. ¶¶ 680-687).  Neither of these allegations excuses Plaintiffs' failure to make demand.  First, Plaintiffs have never requested the names of the Funds' shareholders.  Again, Plaintiffs cannot "manufacture" demand futility by waiting until *after* they have filed two complaints before "demand[ing] that such information be produced forthwith." (Id. ¶¶ 679, 681.)  Second, Plaintiffs' futility allegations relate to the ownership of the Funds' shares as of April and May 2009.  Under Maryland law, futility is determined as of the time a demand should have been made (*i.e.*, as of the time the initial Complaint was filed).  Plaintiffs have pleaded no allegations regarding the ownership of the Funds' shares at the time of the filing of the initial Complaint in March 2008, nor did they request such information from MK Select at that time.

II.    **Plaintiffs' allegations that the New Board refused demand are legally insufficient to avoid dismissal of this action.**

A.    **Plaintiffs inappropriately attempt to plead that demand should be excused as futile while also arguing that demand was made and improperly refused.**

Notwithstanding their allegations that demand on the board was futile, Plaintiffs make the inconsistent assertions that they "made the requisite demand on the new directors to pursue this

action," and that "Plaintiffs have received no response that the demand is refused or that the litigation will be pursued." (FADC ¶¶ 635-36; see, generally, FADC ¶¶ 633-677.) [10]

Plaintiffs cannot argue that a demand was made on the New Board and essentially refused, while simultaneously advancing the position that demand on the previous board members should be excused as futile. By purporting to have made a demand on the New Board, Plaintiffs have placed this action in the hands of the New Board, which is entitled to exercise its business judgment.[11]

The United States Supreme Court has recognized that a shareholder's obligation to make a demand and the "right to withhold demand" where futile are mutually exclusive. "[A] shareholder who makes demand may not later assert that demand was in fact excused as futile. Once a demand has been made, the decision to block or to terminate the litigation rests solely on the business judgment of the directors." Kamen, 500 U.S. at 103  (applying Maryland law) (citing Spiegel v. Buntrock, 571 A.2d 767, 775 (Del. 1990) (holding that a shareholder who makes a demand moots his original contention that demand is excused, and "[t]he effect of making a demand is to place control of the derivative litigation in the hands of the board of directors")).

Thus, Plaintiffs' claims now must rise or fall exclusively on the adequacy of their allegations that demand was made and refused. See Quantum Tech. Partners II, L.P. v. Altman

---

[10]     Plaintiffs' allegation that they made a demand on the New Board waives any argument that the New Board was incapable of considering a demand. (FADC ¶¶ 622-632.) In any event, Plaintiffs' argument that the New Board was not validly constituted is incorrect. Plaintiffs have taken no action to invalidate the New Board's election—they cannot do so here in a collateral proceeding—and in any event such an action would be time-barred, notwithstanding the fact that it would most certainly fail on the merits. These arguments are set forth in greater detail in the Memorandum submitted by the Former Independent Directors, which Defendants incorporate herein by reference. (See Former Ind. Dir. Mem. at 5-8.)

[11]     As discussed in the Memoranda filed by the Former Independent Directors and the New Directors, the indisputably independent New Board *has* exercised its business judgment and elected to move to dismiss this action in order to pursue its own investigation. Plaintiffs have pleaded no facts demonstrating that this was not a valid exercise of the New Boards' business judgment.

Browning & Co., 2008 WL 4525769, *10 (D. Or. Oct. 2, 2008) (holding that because plaintiff "asserted it made a Demand," it therefore "must state with particularity" that the Board wrongfully refused its demand).

**B.    Plaintiffs do not actually allege that demand has been made upon, and refused by, the New Board.**

Plaintiffs' supposed demand allegations are woefully deficient.  First, Rule 23.1 requires that a plaintiff make a proper demand *before* filing suit.  "Rule 23.1 is clear and unequivocal that in derivative actions . . . a shareholder demand must be made of appropriate corporate authorities *before* bringing suit, absent extraordinary circumstances that justify a failure to do so.  A post-suit demand simply does not meet the Rule's prerequisite." In re Sapient Corp. Deriv. Litig., 555 F. Supp. 2d 259, 263 (D. Mass. 2008) (quoting Grossman v. Johnson, 89 F.R.D. 656, 660-661 (D. Mass. 1981), *aff'd*, 674 F.2d 115 (1st Cir. 1982) (emphasis in original)); see also Shlensky v. Dorsey, 574 F.2d 131, 142 (3d Cir. 1978) ("To hold that demands to satisfy Rule 23.1 may be made on the directors after a derivative suit has been initiated would be to reduce the demand requirement of the rule to a meaningless formality."); Wright & Miller, Federal Practice and Procedure § 1831 ("A demand made after filing suit ... does not satisfy Rule 23.1").

Moreover, Plaintiffs fail to allege either that they made a proper demand, or more importantly, that such a demand was refused.  The FADC does not contain a single allegation that Plaintiffs ever requested that the New Board pursue litigation on behalf of the Funds at any time.  Merely pointing to the pendency of a complaint "'cannot be regarded as a demand to sue, for by starting the action [plaintiff has] . . . usurped the field.'" Kamen, 659 F. Supp. at 1163 (quoting Wright, Miller & Kane, Federal Practice & Procedure § 1831)).

A proper demand requires that a plaintiff, at a bare minimum, "describe the factual basis of the putatively wrongful acts and the harm caused to the corporation, identify the alleged wrongdoers, and request remedial relief." Moore's Federal Practice – Civil § 23.1.08.  Without

15

the requisite formalities, "mere letters to the board have been held not to equal a formal demand." Wright & Miller, <u>Federal Practice Procedure</u>, § 1831; <u>see also</u> <u>Schlensky</u>, 574 F.2d at 141 (holding that a group of letters to the board did not constitute a demand where they failed to "literally communicate[]" the existence of specific claims against specific defendants).

Plaintiffs' communications with the New Board were limited to efforts to convince the New Board to amend various proxy statements issued on behalf of the Funds, all of which dealt with the proxy's allegedly deficient description of Plaintiffs' pending derivative action. (<u>See</u>, <u>e.g.</u>, FADC ¶ 637.) Moreover, Plaintiffs' efforts focused not on encouraging the board to take over the litigation on behalf of the Funds, but rather on preserving Plaintiffs' ability to pursue and manage the litigation while generating information that Plaintiffs could use in the prosecution of their lawsuit. (<u>See</u> <u>id.</u> ¶¶ 646-47, 666.) In several instances, Plaintiffs' purported "demand letters" read more like discovery requests. (<u>See</u>, <u>e.g.</u>, FADC, Exhibit B (seeking 14 different categories of information "[i]n order to advise the <u>Landers</u> plaintiffs in connection with the proposed transfer of the Funds' advisory agreements to HBAM and the election of new directors").)

Moreover, Plaintiffs admit that the New Board has communicated to them that the New Board is "'investigating the claims asserted in the derivative and related matters,'" and "'may be in touch with [Plaintiffs' counsel] to obtain information related to the claims . . . asserted'" in the derivative action. (<u>Id.</u> ¶ 661.)[12] Rather than allege that the New Board has rejected their "demand," Plaintiffs assert that the New Board has "inexplicably" taken too long to investigate –

---

[12]    After the New Board communicated to Plaintiffs' counsel that they were conducting an investigation, Plaintiffs' counsel allegedly offered to represent the Funds in prospective litigation. (Although the heavily redacted letter indicated by Plaintiffs contains no such offer. (<u>See</u> FADC, Ex. O.)) Even if such an offer were made, communications such as these cannot constitute a "demand" on behalf of a shareholder.  <u>See</u> <u>Smachlo v. Birkelo</u>, 576 F. Supp. 1439, 1444 (D. Del. 1983) (finding a formal demand letter inadequate where it came from plaintiff's counsel and did not state that it was on behalf of a specifically named plaintiff); <u>Potter v. Hughes</u>, 546 F.3d 1051, 1057 (9th Cir. 2008) (same).

a claim belied by the fact that Plaintiffs' evidently believe this case is sufficiently complicated to warrant a 400-page complaint – 200 pages of which were added as a result of Plaintiffs' own alleged "investigation" – and have stressed the complexity of this matter in a recent filing with this Court offered to justify the need for their phone book-sized FADC. (Id. ¶ 671; Derivative Pls.' Mem. in Opp. to Defs.' Mot. to Strike at 9-13 (Docket Entry No. 51).)   Furthermore, Plaintiffs' assertions that adequate discovery is unavailable to the New Board are conclusory and contradicted by the New Board's ongoing investigation.

Finally, and contrary to Plaintiffs' assertions, Defendants have never "admitted" that Plaintiffs have adequately pleaded demand. (See Notice of Filing FADC at 2 (Docket Entry No. 47); FADC ¶ 668.)   This assertion deliberately misconstrues Defendants' arguments.   In their reply memoranda in support of their motions to dismiss, Defendants merely pointed out that "[g]iven this representation [that Plaintiffs have made a demand], Plaintiffs have placed consideration of the claims at issue in this action squarely in the lap of these directors and the decision of whether to pursue such claims is entrusted to their business judgment." (Defs.' Reply Mem. in Support of Mot. to Dismiss at 1 (Docket Entry No. 40).)   In other words, by representing in their opposition that demand was made, Plaintiffs conceded that the New Board was independent for purposes of considering a demand and rendered their demand futility arguments moot.[13]   See Bender, 917 A.2d at 152 ("By making a demand, the shareholders are deemed to have waived any claim they might otherwise have had that the board *cannot independently act* on the demand." (citing Scattered Corp. v. Chicago Stock Exch., Inc., 701 A.2d 70, 74 (Del. 1997) (internal quotations omitted)).

---

[13]     In any event, Defendants could not "admit" or "concede" that Plaintiffs made a demand, because the only allegations contained in the initial Complaint referred to demand futility.  As set forth in Defendants' previously filed motions to dismiss, Plaintiffs may not amend their Complaint in an opposition brief.

Whether Plaintiffs' assertion that they made a demand moots the question of demand futility is distinct from whether Plaintiffs have adequately pleaded demand and demand refusal in accordance with Fed. R. Civ. P. 23.1. See In re Sapient Corp. Deriv. Litig., 555 F. Supp. 2d at 263 (holding that "Plaintiffs' mid-suit demand moots any claims of demand futility," even though the same mid-suit demand fails to satisfy Rule 23.1). As discussed, Plaintiffs have failed to plead that they requested the directors to bring suit on the Funds' behalf prior to filing suit and that their demand was refused, as required under the applicable law.

III.   **The claims against MAM, Morgan Keegan and MK Holding must be dismissed as a matter of law.**

   A.   **The Advisory Agreement between the Funds and MAM bars Plaintiffs' claims against MAM.**

In addition to failing to show why demand should be excused, Plaintiffs have failed to demonstrate as a matter of law that MAM can be held liable for its alleged conduct. The Advisory Agreement between MK Select and MAM contains a provision limiting MAM's liability, which precludes Plaintiffs' claims against MAM for negligence, breach of fiduciary duty and breach of contract:

> [I]n the absence of willful misfeasance, bad faith, gross negligence, or reckless disregard of obligations or duties hereunder on the part of the Adviser, the Adviser shall not be subject to liability to the Fund or to any shareholder of the Fund or its Portfolios for any act or omission in the course of, or connected with, rendering services hereunder or for any losses that may be sustained in the purchase, holding or sale of any security or the making of any investment for or on behalf of the Fund.

(See Declaration of Matthew M. Curley ("Curley Dec.") Ex. 5 (MAM Advisory Agreement § 7(A)) (Docket Entry Nos. 24-3, 24-8).)

Such provisions are well accepted and enforceable under Maryland law and the ICA. Under Maryland law, exculpatory provisions are *unenforceable* only where: (1) the agreement attempts to excuse "liability for intentional harms or for the more extreme forms of negligence,

18

i.e., reckless, wanton, or gross"; (2) where the contract in question is "the product of grossly unequal bargaining power"; or (3) the transaction in question affects the public interest. <u>Wolf v. Ford</u>, 644 A.2d 522, 526 (Md. 1994); <u>see also id.</u> at 528 (upholding the validity of the exculpatory clause at issue and explaining that "[b]ecause of the volatile nature of financial markets, what may appear to be negligence in the purchase of securities one year may eventually turn out to be a stroke of genius in following years, and vice versa. Thus, the allocation of risk of negligence between parties to a private contract is not patently offensive; rather, it is part and parcel of the freedom to contract in private matters."). Section 17(i) of the ICA also expressly permits such provisions and voids only those provisions in contracts with investment advisers that purport to exculpate "willful misfeasance, bad faith, or gross negligence, in the performance of [the adviser's] duties, or by reason of his reckless disregard of his obligations and duties under such contract or agreement." 15 U.S.C. § 80a-17(i).

To state a viable claim for relief, Plaintiffs thus must allege that MAM engaged in conduct outside the scope of the provision at issue in discharging MAM's obligations under the Advisory Agreement. Otherwise, dismissal of claims based on conduct expressly protected by a contractual provision is warranted under Rule 12(b)(6). See <u>Trumball Inv., Ltd. v. Wachovia Bank, N.A.</u>, 2005 U.S. Dist. LEXIS 7195, *13 (E.D. Va. Apr. 15, 2005) (holding that claims for breach of contract were barred by an exculpatory clause); <u>CompuSpa, Inc. v. I.B.M. Corp.</u>, 228 F. Supp. 2d 613, 626-27 (D. Md. 2002) (holding that a "limitation of liability clause" bars liability for breach of contract); <u>Champion Home Builders Co. v. ADT Sec. Servs., Inc.</u>, 179 F. Supp. 2d 16, 23 (N.D.N.Y. 2001) (same).

Here, Plaintiffs advance at least eight claims against MAM barred by the exculpation provision: Count I for breach of contract; Court IV for breach of fiduciary duty; Count VI for negligence; Count IX for negligent misrepresentation; Count XII for "*ultra vires*" conduct;

Count XIII for violation of §§ 13, 34(b), and 47 of the Investment Company Act; and Counts XIV and XV for violation of §§ 11-301 and 11-703 of the Maryland Securities Act.[14]

With regard to Plaintiffs' claim for breach of contract, Plaintiffs offer only the conclusory assertions that the exculpatory provision does not apply to such claims, and if it does, it is void. (FADC ¶¶ 703-704.)   Both assertions are wrong.   The plain language of the exculpatory provision at issue certainly applies to claims for breach of contract.   Moreover, § 17(i) of the ICA expressly permits such provisions, 15 U.S.C. § 80a-17(i), and such provisions do not violate the Company/Funds' Articles of Incorporation merely because Plaintiffs assert that they are not "reasonable and fair and not inconsistent with" the Articles of Incorporation. (FADC ¶ 697.)

Likewise, Plaintiffs' claims for both *negligence* and *negligent misrepresentation* are barred by the express terms of the exculpatory provision.  Once again, Plaintiffs' only argument concerning the applicability of the exculpatory provision is the conclusory assertion that it is "void."  (Id. ¶¶ 763.)

Finally, with respect to the balance of the counts asserted by Plaintiffs against MAM, they either incorporate previous allegations of breach of contract and negligence or rely on conclusory "alternative" pleadings of scienter.  (See, e.g., id. ¶ 744 (generically alleging that the "Corporate Defendants" acted "intentionally and knowingly, in bad faith, with gross negligence or reckless disregard of their duties"); ¶¶ 804-805 ("Morgan Management and Morgan Keegan negligently, knowingly, or in reckless disregard of the truth, approved or directly assisted in the preparation of the false and misleading" public filings).)  Without any supporting facts, these

---

[14]    This Court has already dismissed Plaintiffs' claims under the Maryland Securities Act with prejudice.  These claims, which are direct rather than derivative in nature, were included in Plaintiffs' Complaint as Counts IV and V in Atkinson v. Morgan Asset Mgmt., Inc., No. 2:08-cv-02694-SHM-tmp, and dismissed as precluded by SLUSA in this Court's order in that action dated Sept. 23, 2009. As such, these claims are inappropriately included in this action and should be dismissed.  Finally, Count VIII for contribution (FADC ¶¶ 792-794) is not (and may never be) ripe, as the Funds have yet to be held liable and pay more than their share of a judgment.

20

bare legal conclusions do not "raise a right to relief above the speculative level." See Twombly, 550 U.S. at 555. See also Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949, 1954 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and rejecting conclusory allegations of a defendant's state of mind).[15]

As a result, Counts I, IV, VI, IX, XII-XV, as well as any other possible negligence-based or breach of contract claims asserted against MAM, must be dismissed.

**B.    Plaintiffs' claims against MK Holding and Morgan Keegan fail as a matter of law.**

Plaintiffs' negligence-based claims (Counts V and IX) and their claims for breach of fiduciary duty (Count IV) against Morgan Keegan and MK Holding must be dismissed. Because Counts XII-XV expressly incorporate these same allegations of misconduct, these claims also must be dismissed.

With respect to MK Holding, Plaintiffs fail to allege any misrepresentations attributable to MK Holding or that MK Holding is a fiduciary with respect to MK Select or the Funds. Plaintiffs merely plead conclusory allegations against MK Holding as part of a group of "Corporate Defendants." (FADC ¶ 733.) Such allegations are insufficient to state a claim. See Twombly, 550 U.S. at 555. As such, Plaintiffs' claims for negligent misrepresentation (Count IX) and breach of fiduciary duty (Count IV) against MK Holding fail as a matter of law, as well as Counts XII-XV, which merely parrot these deficient allegations.

---

[15]    As set forth herein, conclusory allegations of intent or state of mind do not satisfy the requirements of Federal Rule of Civil Procedure 8(a), as applied by the U.S. Supreme Court. However, here Plaintiffs have made allegations that all Defendants acted intentionally, thus bringing upon themselves the heightened burden of Rule 9(b), which requires that such allegations be pleaded with particularity—a standard certainly not met here. See, e.g., In re Goodyear Tire & Rubber Co. Deriv. Litig., 2007 WL 43557 at *10 (holding that rule 9(b) applies to a derivative action alleging fraudulent misconduct).

Plaintiffs' negligence-based claims against Morgan Keegan are nothing more than a repackaging of Plaintiffs' claim for breach of contract against Morgan Keegan (Count II) and, therefore, are barred as a matter of law. See, e.g., Sun-Lite Glazing Contractors, Inc. v. J.E. Berkowitz, LP, 37 Fed. Appx. 677, 2002 WL 1343235, 680, *3 (4th Cir. June 20, 2002) ("[T]he mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action in tort." (quoting Heckrotte v. Riddle, 168 A.2d 879, 882 (Md. 1961)); Thomas & Assocs., Inc. v. Metropolitan Gov. of Nashville, 2003 WL 21302974, *6 (Tenn. Ct. App. June 6, 2003) ("[I]t is not a tort for one of the contracting parties to breach the contract. Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility.").

Finally, Plaintiffs' breach of fiduciary duty claims against Morgan Keegan fail as a matter of law. As with MK Holding, the Complaint is entirely devoid of any facts demonstrating that Morgan Keegan is a fiduciary with respect to the Funds or MK Select. Plaintiffs merely make a series of conclusory allegations that Morgan Keegan and MAM "effectively controlled the Company/Funds" and "usurped or were delegated the Board's functions and performed the functions of the Board through their agents the nominal directors." (FADC ¶¶ 736-738.) Plaintiffs also allege, without support, that Regions' trust subsidiary delegated its fiduciary responsibilities to Morgan Keegan and MAM. (Id. ¶ 739.) The failure to include meaningful substantive allegations in this regard mandates dismissal. See Twombly, 550 U.S. at 555.

C.    **Sections 13, 34(b), and 47 of the ICA do not provide a private cause of action.**

Count XIII purports to assert claims under §§ 13, 34(b), and 47 of the ICA. Courts routinely have held that no private right of action exists under § 34(b). See Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 116-17 (2d Cir. 2007); In re Merrill Lynch Inv. Mgmt. Funds Sec.

22

Litig., 434 F. Supp. 2d 233, 239-240 (S.D.N.Y. 2006); In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig., 2006 WL 1008138, *11 (S.D.N.Y. Apr. 18, 2006) (collecting caselaw holding that "there is no implied private right of action under provisions of the [ICA] containing no express private right of action, such as §§ 34(b) and 48(a). Likewise, § 13 of the ICA contains no express private right of action and this Court should decline to imply such a right based on the allegations included in the FADC.

Finally, § 47 is purely remedial in nature, and does not give rise to a separate cause of action. See Stegall v. Ladner, 394 F. Supp. 2d 358, 378 (D. Mass. 2005); Mutchka v. Harris, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005). Without an underlying violation of a section of the ICA that *does* provide a private right of action, the claim under § 47(b) must be dismissed. See, e.g., Stegall, 394 F. Supp. 2d at 378 (noting that one plaintiff conceded that § 47(b) is not "a distinct cause of action or basis of liability").

## CONCLUSION

Plaintiffs have failed to satisfy the demand requirements under Maryland law. As a result, the FADC should be dismissed. Furthermore, Plaintiffs' claims against MAM, Morgan Keegan and MK Holding are insufficient as a matter of law and also should be dismissed for the reasons set forth herein.

DATED this 18th day of December 2009.

Respectfully submitted,

/s/ Matthew M. Curley
Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615)742-6200
mdagley@bassberry.com
mcurley@bassberry.com
bphillips@bassberry.com

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN  38103-3672
(901) 543-5900
state@bassberry.com
mbrady@bassberry.com

*Attorneys for Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., and MK Holding, Inc.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**APPERSON, CRUMP & MAXWELL, PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
600 Poplar Avenue, Suite 400
Memphis, TN 38119-3972

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN 55402-2422

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN 55402

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

**PAUL HASTINGS JANOFSKY & WALKER LLP**
Kevin C. Logue
Asa R. Danes
Park Avenue Tower
75 E. 55th Street
New York, NY 10022

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL 60654

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN 38103

**K&L GATES LLP**
JEFFREY B. MALETTA, ESQ.
NICOLE A. BAKER, ESQ.
1601 K Street, NW
Washington, D.C.  20006-1600

**SUTHERLAND ASBILL & BRENNAN, LLP**
S. LAWRENCE POLK
999 Peachtree Street NE
Atlanta, GA 30309

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York 1004

/s/ Matthew M. Curley

25