IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

_____

|  |  |  |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | 2:09-md-2009-SHM |
| This Document Relates to: | ) ) ) |  |
| *Landers* v. *Morgan Asset Management, Inc.*, No. 2:08-cv-02260-SMH-dvk | ) ) ) |  |

_____

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED DERIVATIVE COMPLAINT FILED BY MORGAN KEEGAN & COMPANY, INC., MORGAN ASSET MANAGEMENT, INC., MK HOLDING, INC., AND CERTAIN INDIVIDUAL DEFENDANTS

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200

Shepherd D. Tate
Michael Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN 38103-3672
(901) 543-5900

*Attorneys for Morgan Keegan & Company, Inc., Morgan Asset Management, Inc., and MK Holding, Inc., Allen B. Morgan, Jr., J. Kenneth Alderman, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, James C. Kelsoe, Jr., David H. Tannehill, Michele F. Wood and Brian Sullivan*

S. Lawrence Polk
SUTHERLAND ASBILL &
BRENNAN, LLP
999 Peachtree Street NE
Atlanta, GA 30309
(404) 853-8225

*Attorneys for Allen B. Morgan, Jr., J. Kenneth Alderman, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, James C. Kelsoe, Jr., David H. Tannehill, Michele F. Wood and Brian Sullivan*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT...................................................................................................................3

I.    Plaintiffs have failed to meet their burden of demonstrating that demand is
      excused under Maryland law. ............................................................................3

      A.    Maryland law is strict and requires near-universal demand. ..................3

      B.    Demand is always relevant, and there is no gap in Maryland law
            concerning demand futility. ...................................................................5

      C.    Plaintiffs ignore the controlling statutory provision providing that the
            Funds' directors are independent for purposes of considering a demand...............7

      D.    Plaintiffs may not rely on the alleged merits of their claims as grounds to
            excuse demand as futile. ........................................................................9

            1.    Plaintiffs cannot rely on allegations of "fraudulent," "bad faith" or
                  "*ultra vires*" conduct to demonstrate that demand is excused..................10

            2.    Defendants' purported "duty" to pursue these claims to satisfy a
                  hypothetical judgment in a related class action does not excuse
                  demand as futile. ..................................................................11

      E.    Plaintiffs' allegations regarding the directors do not otherwise demonstrate
            that demand was futile under Maryland law.............................................12

            1.    Plaintiffs may not premise demand futility on the fact that the
                  directors have not filed suit......................................................12

            2.    Plaintiffs cannot manufacture "irreparable harm." ...................13

            3.    The balance of Plaintiffs' arguments regarding demand futility
                  have been rejected under Maryland law. ...................................14

II.   Plaintiffs' allegations that a demand was made on the New Board and refused are
      inadequate as a matter of law..........................................................................16

III.  Plaintiffs fail to state a claim upon which relief can be granted.......................18

CONCLUSION...............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Aeropesca, Ltd.* v. *Butler Aviation Int'l, Inc.*,
　411 A.2d 1055 (Md. 1980) ..........................................................19

*Allison* v. *Gen. Motors Corp.*,
　604 F. Supp. 1106 (D. Del. 1985).................................................17

*Aronson* v. *Lewis*,
　473 A.2d 805 (Del. 1984) .............................................................6

*Bezuszka* v. *L.A. Models, Inc.*,
　2006 U.S. Dist. LEXIS 13620 (S.D.N.Y. Mar. 27, 2006) ....................19

*Calpers* v. *Coulter*,
　2002 Del. Ch. LEXIS 144 (Dec. 18, 2002).....................................11

*Caston v. Hoaglin*,
　2009 WL 3078214 (S.D. Ohio Sept. 23, 2009) ........................5, 9, 14

*CompuSpa, Inc.* v. *IBM Corp.*,
　228 F. Supp. 2d 613 (D. Md. 2002)..............................................19

*Continuing Creditors' Comm. Of Star Telecomm., Inc.* v. *Edgecomb*,
　385 F. Supp. 2d 449 (D. Del. 2004)..............................................19

*Danielewicz* v. *Arnold*,
　769 A.2d 274 (Md. Ct. Spec. App. 2001) ........................................3

*Edge Partners, L.P.* v. *Dockser*,
　944 F. Supp. 438 (D. Md. 1996)....................................................3

*Felker* v. *Anderson*,
　2005 WL 602974 (W.D. Mo. Feb. 11, 2005) ....................................5

*Grill* v. *Hoblitzell*,
　771 F. Supp. 709 (D. Md. 1991).....................................................3

*Grossman* v. *Johnson*,
　89 F.R.D. 656 (D. Mass. 1981), *aff'd* 674 F.2d 115 (1st Cir. 1982).........17

*Hale* v. *China Online, Inc.*,
　2009 WL 2601357 (N.D. Ill. Aug. 21, 2009) ...................................12

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009) ................................................................................15

*In re Eaton Vance Mut. Funds Fee Litig.*,
    380 F. Supp. 2d 222 (S.D.N.Y. 2005) ......................................................................8

*In re Franklin Mut. Funds Fee Litig.*,
    388 F. Supp. 2d 451 (D.N.J. 2005) ....................................................................4, 8, 9

*In re InfoSonics Corp. Deriv. Litig.*,
    2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) .....................................................4, 15

*In re Mut. Funds Invest. Litig.*,
    384 F. Supp. 2d 873 (D. Md. 2005) ....................................................................4, 8

*In re Nuveen Fund Litig.*,
    1996 U.S. Dist. LEXIS 8062 (N.D. Ill. June 5, 1996) ..........................................11

*In re Regions Morgan Keegan Sec., Deriv., & ERISA Litig.* ("*Ryan*"),
    2010 WL 890950 (W.D. Tenn. March 10, 2010) ........................................... *passim*

*In re Sapient Corp. Deriv. Litig.*,
    555 F. Supp. 2d 259 (D. Mass 2008) ....................................................................16

*Kamen* v. *Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991) ................................................................................................9

*Kamen* v. *Kemper Fin. Servs., Inc.*,
    659 F. Supp. 1153 (N.D. Ill. 1987) ..................................................................13, 17

*Landy* v. *FDIC*,
    486 F.2d 139 (3d Cir. 1973) .................................................................................12

*Lessler* v. *Little*,
    857 F.2d 866 (1st Cir. 1988) .................................................................................20

*Mathers Fund, Inc.* v. *Colwell Co.*,
    564 F.2d 780 (7th Cir. 1977) ................................................................................20

*McCall* v. *Scott*,
    239 F.3d 808 (6th Cir. 2001) ................................................................................13

*Mona* v. *Mona Elec. Group, Inc.*,
    934 A.2d 450 (Md. Spec. App. 2007) ................................................................12, 17

*NCR Corp.* v. *AT&T Co.*,
    761 F. Supp. 475 (S.D. Ohio 1991) .......................................................................4

*Parish* v. *Md. & Va. Milk Producers Ass'n*,
    242 A.2d 512 (Md. 1968) ....................................................................3

*Rales* v. *Blasband*,
    634 A.2d 927 (Del. 1993) ...................................................................6

*Richardson* v. *Graves*,
    1983 WL 21109 (Del. Ch. June 17, 1983) ..........................................13

*Scalisi* v. *Fund Asset Mgmt., L.P.*,
    380 F.3d 133 (2d Cir. 2004)...........................................................8, 9

*Sekuk Global Enter. Profit Sharing Plan* v. *Kevenides*,
    2004 WL 1982508 (Md. Cir. Ct. May 25, 2004)...........................14, 16

*Shlensky* v. *Dorsey*,
    574 F.2d 131 (3d Cir. 1978)...............................................................17

*Strougo* v. *Scudder, Stevens & Clark, Inc.*,
    964 F. Supp. 783 (S.D.N.Y. 1997)......................................................8

*Syracuse Television, Inc.* v. *Channel 9, Syracuse, Inc.*,
    273 N.Y.S.2d 16 (N.Y. 1966) .....................................................17, 18

*Taneja* v. *Familymeds Group, Inc.*,
    2009 WL 415454 (Conn. Super. Jan. 16, 2009) .................................11

*Trumball Inv., Ltd.* v. *Wachovia Bank, N.A.*,
    2005 U.S. Dist. LEXIS 7195 (E.D.Va. Apr. 15, 2005)........................19

*Washtenaw County Emp. Ret. Sys.* v. *Wells REIT, Inc.*,
    2008 WL 2302679 (N.D. Ga. March 31, 2008)................................5, 9

*Werbowsky* v. *Collomb*,
    766 A.2d 123 (Md. 2001) ................................................... *passim*

## STATUTES

ICA § 13, 15 U.S.C. § 80a-13..................................................................20

ICA § 34(b), 15 U.S.C. § 80a-33(b) .........................................................20

ICA § 47, 15 U.S.C. § 80a-46..................................................................20

Md. Code Ann., Corps. & Ass'ns § 2-104.................................................20

Md. Code Ann., Corps. & Ass'ns § 2-402.................................................20

Md. Code Ann., Corps. & Ass'ns § 2-405.3...........................................8, 15

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................19

Fed. R. Civ. P. 23.1 ......................................................................................13, 16, 17

**OTHER AUTHORITIES**

5 Bus. & Comm. Litig. in Fed. Cts. (2d ed.) § 62:86....................................................9

Burton M. Leibert, *Fund Governance*, 1056 PLI/Corp. 9 (1998)....................................8

Maryland House Bill 356................................................................................................8

Wright & Miller, *Federal Practice and Procedure* § 1831 ...........................................16

Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), MK Holding, Inc., and the Individual Defendants[1] respectfully submit this reply in support of their motion to dismiss Plaintiffs' First Amended Derivative Complaint ("FADC").

## PRELIMINARY STATEMENT

Plaintiffs all but acknowledge that they have failed to plead demand futility under Maryland's stringent standard.  In a related case, this Court held only last month that failure to plead demand futility (involving the same directors at issue in this action) required dismissal.  *See In re Regions Morgan Keegan Sec., Deriv., & ERISA Litig.* ("*Ryan*"), --- F. Supp. 2d. ---, 2010 WL 890950 (W.D. Tenn. March 10, 2010) (Mays, J.).  The same result should obtain here.

Rather than attempting to meet the relevant standard under Maryland law, Plaintiffs invite this Court to fashion a new standard tailored to and dependent upon the presumed merit of the underlying factual allegations in their FADC.  To justify this new standard, Plaintiffs assert that Maryland law does not "address[] the unique facts and circumstances" alleged in this action (Pls.' Opp'n at 4-5, 23.)  Plaintiffs' argument makes not the slightest sense.

Plaintiffs' position is that demand on the Board of Directors[2] prior to filing this action should be considered irrelevant or futile because Plaintiffs' allegations are so unique and their claims so meritorious that there is "no business purpose to be served by not pursuing" them.

---

[1]    For purposes of this pleading, the Individual Defendants include Allen B. Morgan, Jr., J. Kenneth Alderman, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, James C. Kelsoe, Jr., David H. Tannehill, Michele F. Wood and Brian Sullivan.

[2]    The open-end mutual funds at issue in this action were offered as a series of MK Select Fund, Inc. ("MK Select").  As stated previously, on July 29, 2008, upon shareholder approval, Hyperion Brookfield Asset Management, Inc. became the new investment adviser to the Funds.  *See* Declaration of Matthew M. Curley ("Curley Dec."), Ex. 1 (Helios Select Fund, Inc., Prospectus Supplement at 1 (July 29, 2008) (Docket Nos. 24-3; 24-4).  At various points in time, the parties have referred to the board of directors as the "Old Board," referring to the directors serving prior to the July 29, 2008, approval of Hyperion as the investment adviser, and the "New Board," referring to the entirely new group of directors serving after that time.

(Pls.' Opp'n at 38.)   Not surprisingly, Plaintiffs fail to cite a single case that supports this argument.   Indeed, this argument is based on theories of demand that have been conclusively rejected by the Maryland Court of Appeals and virtually every court applying Maryland law.

Plaintiffs' position that a derivative plaintiff may avoid demand on a corporation's board of directors based upon the so-called "relevance" of demand is likewise wrong.   In *Werbowsky* v. *Collomb*, 766 A.2d 123 (Md. 2001), the Maryland Court of Appeals, Maryland's highest court, ruled that demand may be excused only under a very limited set of circumstances.   No case applying Maryland law remotely suggests that the demand is ever "irrelevant."   To the contrary, cases establish that demand is always important and strictly enforced.

The balance of Plaintiffs' contentions concerning demand futility falls equally short. Regardless of how they are packaged, each of Plaintiffs' demand futility arguments turns on the merits of the underlying allegations of wrongdoing in their FADC.   According to Plaintiffs, the allegations of wrongdoing show that any decision by the Board not to pursue the claims at issue would not be entitled to the protection of the business judgment rule and, therefore, demand should be excused.   But consideration of whether a board's decision comports with the business judgment rule arises only *after* a demand has been made and refused, not before.   Maryland law makes clear that the merits of the proposed claims play no role in determining whether demand is futile.   Finally, this Court already has rejected the conclusory arguments offered by Plaintiffs regarding the alleged lack of independence of the very same directors at issue in this action.   *See Ryan*, 2010 WL 890950 at *7-8.

After making their meritless argument that demand was futile, Plaintiffs also assert that they made a demand on the New Board which was refused.   No demand was ever made, and in any event, the assertion is of no importance because under the Federal Rules of Civil Procedure, demand must be made before suit is filed.   That never occurred here.

Finally, Defendants' initial motion demonstrated that the FADC fails to state a claim upon which relief can be granted, and Plaintiffs' Opposition does nothing to refute this.

## ARGUMENT

I. **Plaintiffs have failed to meet their burden of demonstrating that demand is excused under Maryland law.**

In 2001, the Maryland Court of Appeals in *Werbowsky* v. *Collomb* held that, under Maryland law, the demand futility exception is:

> [A] very limited exception, to be applied only when the allegations or evidence clearly demonstrate, in a very particular manner, either that (1) a demand, or a delay in awaiting a response to a demand, would cause irreparable harm to the corporation, or (2) a majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule.

*Werbowsky*, 766 A.2d at 144. This Court ruled last month that *Werbowsky* governs the question of demand. *See Ryan*, 2010 WL 890950 at *5-7. As a result, Plaintiffs' extensive reliance upon Maryland case law pre-dating *Werbowsky* should be disregarded.[3]

A. **Maryland law is strict and requires near-universal demand.**

Plaintiffs seeking to avoid demand under Maryland law face a heavy burden. Plaintiffs must "*clearly demonstrate*" demand futility,[4] which is a far stricter standard than the standard

---

[3]     Plaintiffs repeatedly cite to *Parish* v. *Md. & Va. Milk Producers Ass'n*, 242 A.2d 512 (Md. 1968), and cases relying on *Parish*'s broader interpretation of the demand futility exception. See, *e.g., Grill* v. *Hoblitzell*, 771 F. Supp. 709 (D. Md. 1991) and *Edge Partners, L.P.* v. *Dockser*, 944 F. Supp. 438 (D. Md. 1996). *Parish* pre-dates the Maryland Court of Appeals' decision in *Werbowsky* and, to the extent that *Parish* is inconsistent with *Werbowsky*, it no longer serves as the applicable standard. *See Werbowsky*, 766 A.2d at 137 ("Whatever may have been the perceived trend in 1968, when *Parish* was decided, the trend since then has been to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception."); *see also Danielewicz* v. *Arnold*, 769 A.2d 274, 291 (Md. Ct. Spec. App. 2001) (holding that "any liberal approach to this rule suggested in *Parish* has certainly become more stringent as a result of the Court of Appeals' decision in *Werbowsky*").

imposed by the law of other states, including Delaware.  *See Ryan,* 2010 WL 890950 at *6 (observing that the Maryland Court of Appeals took note of "Delaware's more forgiving futility exception," and "determined that [it] went too far"); *see also In re InfoSonics Corp. Deriv. Litig.*, 2007 WL 2572276, *7 (S.D. Cal. Sept. 4, 2007) ("Delaware's requirements for demand futility are more permissive than Maryland's, requiring only that the facts alleged create a 'reasonable doubt' that the directors are disinterested and independent."); *In re Mut. Funds Invest. Litig.*, 384 F. Supp. 2d 873, 878 n.7 (D. Md. 2005) ("The law of Maryland . . . is perhaps even more restrictive than the law of Delaware and Massachusetts.").[5]

Maryland's strict standard results in a near-universal demand requirement.  *See Werbowsky*, 766 A.2d at 137 (observing that the current legal trend has been "at least to circumscribe, if not effectively eliminate, the futility exception").  Recently, one district court reviewing post-*Werbowsky* cases applying Maryland demand futility law noted that in fifteen cases—amounting to all but one reported case considering demand under Maryland law—courts have dismissed plaintiffs' complaints for failure to make a demand.  *See Washtenaw County Emp. Ret. Sys.* v. *Wells REIT, Inc.*, 2008 WL 2302679, at *14 n.6 (N.D. Ga. March 31, 2008).[6]

---

[4]     Plaintiffs bear the burden of pleading facts demonstrating demand futility, despite their attempt to shift the burden onto Defendants.  (*See* Pls.' Opp'n at  38.)

[5]     This burden is even heavier where, as here, a majority of board members are independent, outside directors.  In this situation, there is a heightened presumption that directors act in good faith under Maryland's formulation of the business judgment rule.  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 470 (D.N.J. 2005); *NCR Corp.* v. *AT&T Co.*, 761 F. Supp. 475, 490 (S.D. Ohio 1991) (citing, *inter alia*, *Zimmerman* v. *Bell*, 800 F.2d 386, 392 (4th Cir. 1986)).

[6]     Plaintiffs rely on *Felker* v. *Anderson*, 2005 WL 602974 (W.D. Mo. Feb. 11, 2005), the one case applying Maryland law to find futility.  Courts properly have afforded *Felker* little weight, however, observing that it is "the only post-*Werbo[w]sky* case reviewing demand futility under Maryland law to find that demand was futile."  *Washtenaw County*, 2008 WL 2302679 at 14 (rejecting *Felker* on the grounds that it "appears to ignore *Werbowsky's* clear admonition that a court should not 'excuse the failure to make a demand simply because a majority of the

4

**B.    Demand is always relevant, and there is no gap in Maryland law concerning demand futility.**

Tellingly, in their seventy-five page Opposition, Plaintiffs fail to address or distinguish in any meaningful way the extensive caselaw cited by Defendants in support of their motion to dismiss.  Rather, Plaintiffs have chosen to argue that *Werbowsky* does not apply to this action because (1) the concept of demand is "irrelevant" to this action, or (2) alternatively, *Werbowsky* did not address the exact same set of facts as those here, and therefore, the Court instead should fashion a new analysis based on Delaware law.  Both arguments are without merit.

Plaintiffs cite no authority supporting their argument that demand can be considered "irrelevant."  To the contrary, Plaintiffs ignore *Werbowsky*'s admonition that demand is always "important," and can only be excused on the basis of a limited and circumscribed futility exception. *See Werbowsky*, 766 A.2d at 143-144.  Plaintiffs' various arguments as to why demand is "irrelevant" are all premised on their view that their claims have merit—that the members of the Board of Directors must conclude that they should bring suit.  Plaintiffs make the explicit assertion that "there absolutely was no . . . choice" but to sue.  (Pls.' Opp'n at 13.)[7] This is a *non sequitur*; that choice is for the Board, not a set of lawyers for plaintiffs.  The

---

directors approved or participated in some way in the challenged transaction or decision'" (quoting *In re CNL Hotels & Resorts, Inc.*, 2005 WL 2219283, *5 n.18 (M.D. Fla. Sept. 13, 2005)); *Caston* v. *Hoaglin*, 2009 WL 3078214, *6-7 (S.D. Ohio Sept. 23, 2009) ("*Felker* . . . may conflict with the most recent decisions by the Maryland Court of Appeals and other courts interpreting Maryland law," and "to the extent that *Felker* may conflict with . . . *Werbowsky*, this Court, like the other courts that have considered *Werbowsky*, finds it to be unpersuasive."); *see also Ryan*, 2010 WL 890950 at *7 (citing *Washtenaw County* and *Felker*).

[7]    Plaintiffs' assertion that their claims are obviously meritorious is presumptuous.  A motion to dismiss is currently pending in *In re Regions Morgan Keegan Open-End Mut. Funds Litig.*, No. 2:07-cv-02784-SHM-dkv, and the allegations in that action are substantially identical to the allegations being made by Plaintiffs here.  Moreover, one district court has recently dismissed a putative class action making nearly identical allegations regarding mutual funds that suffered substantially similar losses.  *See Yu* v. *State St. Corp.*, --- F. Supp. 2d ---, 2010 WL 668645 (S.D.N.Y. Feb. 25, 2010).

alleged merits of the underlying action do not determine whether demand should be excused nor do they change Maryland's exacting standard.[8]  *See Werbowsky*, 766 A.2d at 145.

Plaintiffs next argue that *Werbowsky* should be interpreted in accordance with the more permissive Delaware standard set forth in *Aronson* v. *Lewis*, 473 A.2d 805 (Del. 1984), and *Rales* v. *Blasband*, 634 A.2d 927 (Del. 1993).  (*See* Pls.' Opp'n at 40.)  *Werbowsky* expressly rejected this argument.  *See Werbowsky*, 766 A.2d at 143 ("Nor are we disposed . . . to adopt in full the Delaware approach" to demand futility); *see also Ryan*, 2010 WL 890950 at *6.

Under the *Werbowsky* standard, a court considering demand futility is directed to look to "whether a majority of the directors are so personally and directly conflicted *or* committed to the decision in dispute. . . ."  *Werbowsky*, 766 A.2d at 144 (emphasis supplied).  If the Court determines that there is no specific "decision in dispute," then the Court should examine whether "a majority of the directors are so personally and directly conflicted . . . that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule."  *Id.*  There is no need for this Court to fashion a new standard.

Finally, the Court's demand futility analysis is limited to the allegations contained in Plaintiffs' Complaint regarding the directors' ability to consider demand at the time suit was filed.  Plaintiffs are incorrect in their assertion that on a motion to dismiss, "there is nothing in *Werbowsky* that precludes evidence beyond the facts alleged to determine whether demand is excused." (Pls.' Opp'n at 26 n.27.)  *Werbowsky* expressly holds that, "if the complaint fails to allege sufficient facts, which, if true, would demonstrate the futility of a demand, it is entirely

---

[8]      Demand is always relevant under Maryland law.  *See Werbowsky*, 766 A.2d at 143-145. Plaintiffs' arguments as to why demand should be excused therefore must be analyzed within the *Werbowsky* demand futility framework.  If a plaintiff disagrees with the board's decision not to bring suit, Maryland law provides plaintiff with a way to challenge that decision under the business judgment rule.  *Id.* at 144.

appropriate to terminate the action on a motion to dismiss."  *Werbowsky*, 766 A.2d at 145.[9]

Moreover, allegations regarding the directors' conduct after the suit was filed in March 2008 –

including any purported misrepresentations and omissions in a proxy statement – are irrelevant

and should be disregarded.  *See Ryan*, 2010 WL 890950 at *5 ("[A] court looks to the time

plaintiff filed her complaint to determine whether demand was proper.").

### C.  Plaintiffs ignore the controlling statutory provision providing that the Funds' directors are independent for purposes of considering a demand.

Plaintiffs glaringly fail to address a provision of Maryland law specific to directors of

mutual funds, which provides that "[a] director of a corporation who with respect to the

corporation is not an interested person, as defined by the Investment Company Act of 1940

[("ICA")], shall be deemed to be independent and disinterested when making any determination

or taking any action as a director."  Md. Code Ann., Corps. & Ass'ns § 2-405.3(b).[10]   This

---

[9]       While *Werbowsky* did state that "if [the complaint] survives a motion to dismiss, [the issue of demand futility] is a perfect candidate for resolution pursuant to Maryland Rule 2-502," – a Maryland procedural mechanism that allows a court to hold an evidentiary hearing to decide discrete issues – the *Werbowsky* trial court had already determined that the complaint sufficiently pleaded demand futility, but revisited the issue on summary judgment and therefore could consider findings of fact.  *Werbowsky*, 766 A.2d at 145-146.  In any event, bald allegations "learned by plaintiff that are relevant to demand" (Pls.' Opp'n at 26) are not "evidence," but simply additional assertions that do not appear in the FADC and may not be considered on a motion to dismiss.

[10]      Plaintiffs attempt to sidestep the issue by quoting language from the Second Circuit's opinion in *Scalisi* v. *Fund Asset Mgmt., L.P.*, 380 F.3d 133 (2d Cir. 2004), and implying that the interestedness of a director under the ICA does not control a demand futility analysis under any circumstances.  (*See* Pls.' Opp'n at 48-49 n.56.)  Plaintiffs, however, misconstrue the Second Circuit's holding, which actually provides that a plaintiff does not automatically establish demand futility by pleading the *inverse*—that any director who was *not* disinterested under the ICA is automatically incapable of considering a demand.  *See Scalisi*, 380 F.3d at 139-40 (holding that § 2-405.3 "by no means suggests that every person who is 'interested' under the ICA should be found to fail Maryland's test for independence").  Moreover, the *Scalisi* court's comment that § 2-405.3 is "not directed specifically to derivative actions" is incorrect.  *See Scalisi*, 380 F.3d at 139 n.10.  While § 2-405.3 is not directed *exclusively* to derivative actions, the relevant statutory history and subsequent interpretation demonstrates that it was intended to apply in the derivative context.  *Contra Ryan*, 2010 WL 890950 at *8 n.4 (declining to reach the

provision creates a special rule for directors of investment companies that is fully consistent with *Werbowsky*'s strong emphasis on demand.[11]

The statute was enacted in response to a district court decision, *Strougo* v. *Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 783 (S.D.N.Y. 1997) (noted on Westlaw as "superseded by statute"), which the Maryland legislature believed took an overly broad interpretation of demand futility.  *See* Burton M. Leibert, *Fund Governance*, 1056 PLI/Corp. 9 (1998) (appending copy of Maryland House Bill 356, proposing § 2-405.3).  Courts since have applied the provision in the context of demand futility.  *See*, *e.g.*, *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 470; *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 878-79; *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 239 (S.D.N.Y. 2005) (applying identical provision of Massachusetts law); *see also* 5 Bus. & Comm. Litig. in Fed. Cts. § 62:86 (2d ed.) ("Futility often turns on whether the directors of [a mutual fund] are independent and [Delaware, Maryland, and Massachusetts] have adopted statutes rendering investment company directors who are not 'interested' persons under the [ICA] independent for purposes of state law as well.").[12]

---

[11] issue because "[e]ven absent a presumption of independence, Plaintiff's Complaint fails to plead facts sufficient to waive demand on the board," *i.e.* the very same board of directors as here).

[11] The language of Md. Code Ann., Corps. & Ass'ns §  2-405.3, providing that every fund director who is disinterested for purposes of the ICA is capable of considering a demand, is not inconsistent with *Werbowsky*, which stands for the proposition that  "demand *is* important," and which recognizes a modern trend "to enforce more strictly the requirement of pre-suit demand and at least to circumscribe, if not effectively eliminate, the futility exception."  *Werbowsky*, 766 A.2d at 137, 144 (emphasis in original). *Werbowsky* did not address this provision because the corporation in question in that action was not an investment company.

[12] The fact that the Maryland legislature adopted this provision specific to mutual funds also guts Plaintiffs' unsupported argument that demand is irrelevant when the corporation in question is a mutual fund.  (*See* Pls.' Opp'n at 12-14; 35-38.)  This Court, and others, have addressed the issue of demand futility in the context of a mutual fund under Maryland law by applying the same analysis used with respect to any other corporation.  *See Ryan*, 2010 WL 890950; *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-109 (1991); *Scalisi*, 380 F.3d at 139-40; *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d at 470.

As Defendants have shown, at the time Plaintiffs commenced this action, MK Select's board was comprised of six directors, five of whom were outside directors and thus "disinterested" under the ICA.  *See* Curley Dec., Ex. 2 (Semi-Annual Report (Mar. 2008) at 64-66) (Docket Entry Nos. 24-3; 24-5).  Plaintiffs have pleaded no facts establishing otherwise. The demand futility argument thus fails.

> **D.     Plaintiffs may not rely on the alleged merits of their claims as grounds to excuse demand as futile.**

Under *Werbowsky*, the issue of futility is discrete and does not go to the merits of the underlying complaint, "*i.e.*, whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the challenged decision or transaction."  *Washtenaw County*, 2008 WL 2302679 at *14 (citing *Werbowsky* 766 A.2d at 144); *see also id.* (holding that allegations of wrongdoing which form "a component of the challenged action that is the subject of this lawsuit, cannot be considered as a factor in determining whether demand was futile"); *Caston*, 2009 WL 3078214 at *9 (holding that "Plaintiffs' general allegations that [defendant director] has breached his fiduciary duties are precluded by *Werbowsky*," which the court cites for the proposition that "the demand-futility analysis is not decided on the merits of the case"); *Ryan*, 2010 WL 890950 at *7 (same).[13]

Plaintiffs state, in conclusory fashion, that this Court should determine demand to be futile because "there is no choice to be made between the interests of the Funds in pursuing these claims and the interests of anyone else that could be protected by the business judgment presumption."  (Pls.' Opp'n at 35-36.)  Consideration of the conduct of the board under the

---

[13]     Plaintiffs' assertion that *Werbowsky*'s stringent test *only* applies to "frivolous" claims (Pls.' Opp'n at 24) is wrong.  The Maryland Court of Appeals has decided that the merits of a plaintiff's proposed derivative claims play no role in a court's determination of demand futility. *Werbowsky*, 766 A.2d at 144-45.  Plaintiffs' argument is, in effect, a plea that courts ignore Maryland law by rejecting its applicability whenever they so choose.  This has no support.

business judgment rule, however, only comes into play upon the board's refusal of demand. *See Werbowsky*, 766 A.2d at 144 ("If a demand is made and refused, that decision, and the basis for it, can be reviewed by a court under the business judgment rule standard."); *see also id.* (holding that Maryland's demand futility analysis "does not preclude . . . appropriate judicial review, under the business judgment rule, of the response (or non-response) to a demand").

> ### 1.   Plaintiffs cannot rely on allegations of "fraudulent," "bad faith" or "*ultra vires*" conduct to demonstrate that demand is excused.

Plaintiffs argue that demand is excused because "the FADC is replete with allegations of fraud (including material omissions), bad faith and incompetence" on the part of the Old Board. (Pls.' Opp'n at 27 (citation omitted); *see also id.* at 7 ("Plaintiffs allege that, having failed to fulfill their fiduciary duties of loyalty and good faith in allowing the complained of waste and mismanagement to occur, the Old Board could not and would not in good faith have considered a demand to commence this action.").)  In *Ryan*, this Court held that such allegations as to these same directors do not excuse demand under Maryland law.  *See Ryan*, 2010 WL 890950 at *8 ("[T]he allegation that the Directors participated in, ratified, or approved some of the alleged wrongful conduct cannot excuse demand.  This, too, would make the demand requirement a chimera.").  Plaintiffs also claim that because this same alleged conduct was *ultra vires*, demand should be excused because a decision not to pursue an action could not be protected by the business judgment rule.  (*See* Pls.' Opp'n at 27-30.)  This is simply an argument that the Board of Directors must pursue Plaintiffs' action merely because Plaintiffs contend that it is meritorious.  Maryland law is directly to the contrary.  *See Werbowsky*, 766 A.2d at 144-145.[14]

---

[14]     The cases cited by Plaintiffs do not apply Maryland law, but rely on the more permissive standard under Delaware law, which *Werbowsky* expressly rejected.  *See, e.g., In re Nuveen Fund Litig.*, 1996 U.S. Dist. LEXIS 8062 (N.D. Ill. June 5, 1996) (federal court applying Minnesota law by looking to Delaware law); *Calpers* v. *Coulter*, 2002 Del. Ch. LEXIS 144 (Dec. 18, 2002) (applying Delaware law).  The other cases cited by Plaintiffs are inapposite, as those

      2.      **Defendants' purported "duty" to pursue these claims to satisfy a hypothetical judgment in a related class action does not excuse demand as futile.**

Plaintiffs likewise attempt to rely on the alleged merits of a related class action, filed by some of these same Plaintiffs and their counsel, to excuse demand. *See In re Regions Morgan Keegan Open-End Mut. Funds Litig.*, No. 2:07-cv-02784-SHM-dkv. According to Plaintiffs, demand should be excused because the Funds' directors would have had no choice but to pursue the derivative claims so as to recover sufficient funds to satisfy a hypothetical judgment in this companion action. (Pls.' Opp'n at 35.) This argument is entirely without merit and Plaintiffs cite no law in the context of a derivative action supporting this argument.

Plaintiffs somehow extrapolate this argument from the general proposition that the board of an "insolvent" or dissolved corporation owes a fiduciary duty to the company's "judgment creditors" – here, supposedly the same Plaintiffs in the class action. (Pls.' Opp'n at 30-35.) But even accepting this proposition for the sake of argument, the fact that a corporation is insolvent or defunct does not automatically excuse demand. *See Taneja* v. *FamilyMeds Group, Inc.*, 2009 WL 415454, *4-5 (Conn. Super. Jan. 16, 2009); *Hale* v. *China Online, Inc.*, 2009 WL 2601357, *3 (N.D. Ill. Aug. 21, 2009) (holding that "even if the plaintiffs had standing to bring a derivative action . . . based on a directors' fiduciary obligations to former shareholders after dissolution, they have failed to make the requisite demand . . . before instituting suit and also failed to plead demand futility") (citation omitted); *Landy* v. *FDIC*, 486 F.2d 139, 147 (3d Cir. 1973) (holding that even when a corporation is in receivership, "any demand to bring suit in its behalf must be made upon the receiver . . . ."). In the context of determining whether a demand is excused under Maryland law, Plaintiffs' argument is even more misplaced, as it would require

_____

cases do not address demand futility but rather a court's application of the business judgment rule with respect to conduct by a board of directors. (*See*, *e.g.*, Pls.' Opp'n at 27-28.)

the Court to make a preliminary ruling not only on the merits of the claims asserted in the FADC, but also with respect to the claims asserted in the class action.[15]   This proposition directly contradicts *Werbowsky*.   766 A.2d at 144 (holding that overly broad exceptions to demand often result in "preliminary determinations regarding director culpability that, after trial on the merits, turn out to be unsupportable").

### E.   Plaintiffs' allegations regarding the directors do not otherwise demonstrate that demand was futile under Maryland law.

#### 1.   Plaintiffs may not premise demand futility on the fact that the directors have not filed suit.

Plaintiffs repeatedly attempt to premise demand futility on the conclusory assertion that the Board could not consider a demand in good faith, as evidenced by the fact that they have not yet brought suit themselves.   (*See*, *e.g.*, Pls.' Opp'n at 7 ("Notwithstanding their knowledge [of the alleged mismanagement], the Old Board did nothing to either require MAM and the Funds' officers to take corrective action . . . or to bring an action when the Funds suffered catastrophic losses in fall 2007."); *id.* at 20 (directors did not "do anything to preserve and pursue these claims"); *id.* at 39 (the directors "never considered whether they should . . . bring an action against the RMK Defendants, including themselves").)   This assertion does not excuse Plaintiffs' failure to make demand.   Indeed, even courts applying the more permissive Delaware standard

---

[15]      Helios Select has not been dissolved and Plaintiffs' contention that Helios Select is "insolvent" turns on Plaintiffs' success on the merits in the class action, which is far from certain.   Plaintiffs' claims are currently subject to a pending motion to dismiss.   *See supra* note 7. Moreover, even if one were to assume that the class action claims are meritorious – a point which Defendants certainly do not concede – Plaintiffs' position nevertheless would be improper under Maryland law, as it necessarily assumes that the derivative claims also have merit.   The directors of a corporation have a right to determine in the first instance whether proposed litigation is meritorious or pursuit of such litigation otherwise is in the best interest of the corporation.   *See Mona* v. *Mona Elec. Group, Inc.*, 934 A.2d 450, 464-465 (Md. Spec. App. 2007) (holding that "the directors make business decisions, including deciding whether the company should pursue litigation"); *see also Werbowsky*, 766 A.2d at 144.

have rejected this theory.[16]   *See*, *e.g.*, *Richardson* v. *Graves*, 1983 WL 21109, *3 (Del. Ch. June 17, 1983) (rejecting the theory of "'if they were inclined to sue, they would have done so before now'" as having "no basis in fact and in law," and declining to adopt the reasoning that "failure to sue" is "equivalent to the board authorizing, acquiescing in or ratifying the illegal conduct"); *see also McCall* v. *Scott*, 239 F.3d 808, 824 (6th Cir. 2001) ("Inaction by the board will not excuse the failure to make a demand because it would deprive the Board of the opportunity to be 'prodded' into action, which is a fundamental goal of the demand requirement.").

### 2.    Plaintiffs cannot manufacture "irreparable harm."

Plaintiffs likewise have pleaded no facts in the FADC showing that the Funds would suffer "irreparable harm" if Plaintiffs waited for the Board to consider demand.  Plaintiffs stake their entire argument on their allegation that "inaction by the Old Board and the New Board would have allowed th[e] statute of limitations to run" on the claims allegedly held by the Funds. (Pls.' Opp'n at 51.)

But Plaintiffs state in their Opposition that the "initial [class] action seeking recovery for the Funds' losses was brought by a plaintiff represented by counsel herein in December 2007," and a First Amended Complaint was filed in that action in February 2008, both before the filing of this action on March 28, 2008.  (*See* Pls.' Opp'n at 6.)  Plaintiffs and their counsel concede they knew of their claims *at least* four months prior to bringing this action, but chose to file two complaints in another action rather than make a demand on the Board.  Maryland courts consistently have held that Plaintiffs "may not create their own irreparable harm."  *Sekuk Global*

---

[16]    Similarly, "[t]he fact that a corporation resists the suit or demands that the requirements of Rule 23.1 be met is insufficient to establish that the board would reject a demand if the plaintiff-shareholder had requested it to act. . . .  [Plaintiff] cannot use the fact that the Fund defended itself in this lawsuit to justify her own failure to comply with Rule 23.1 in the first place."  *Kamen* v. *Kemper Fin. Servs., Inc.*, 659 F. Supp. 1153, 1163 (N.D. Ill. 1987).

*Enter. Profit Sharing Plan* v. *Kevenides*, 2004 WL 1982508, *3-4 (Md. Cir. Ct. May 25, 2004) (holding that plaintiffs "effectively conceded that there was no irreparable harm" where they delayed filing suit by five weeks, "and over four weeks after another . . . shareholder brought virtually the same derivative suit"); *see also Caston*, 2009 WL 3078214 at *5 ("Plaintiff cannot meet the first prong of the demand-futility test by listing harms that occurred during the delay he caused by waiting four months to file his amended complaint.").

3.   **The balance of Plaintiffs' arguments regarding demand futility have been rejected under Maryland law.**

Each of the grounds otherwise urged by Plaintiffs as excusing demand has been rejected by courts applying Maryland law or more permissive Delaware law, and many were rejected by this Court when applying Maryland law in *Ryan*:

- The theory that "directors will not sue themselves, even when asked" (Pls.' Opp'n at 47-48) has been conclusively rejected by this Court and others, and merely naming a director as a defendant does not render that director incapable of considering demand.   (*Id.* at 43-44); *Ryan*, 2010 WL 890950 at *8 ("Courts routinely find that allegations that directors might have to sue themselves or other directors do not waive demand.").

- The likelihood of any liability stemming from Plaintiffs' claims, including from lack of insurance coverage or potential liability in other actions (Pls.' Opp'n at 18 n.20, 44-48), is irrelevant to the issue of demand futility.   *See Ryan*, 2010 WL 890950 at *7-8 (citing cases); *see also In re InfoSonics*, 2007 WL 2572276 at *7 ("[T]he Court does not believe that the 'likelihood of liability' is a proper reason for finding demand on the Board to be futile.  If 'likelihood of liability' is based on the allegations of the Complaint, all well-pled complaints would be able to establish demand futility.").

14

- Directors' service on the boards of multiple mutual funds does not render them incapable of considering a demand, and Plaintiffs' argument that the directors "were motivated by self-interest to devote a greater amount of their attention to the affairs of those funds in which they had substantially greater investments" (Pls.' Opp'n at 48) is nonsensical and unsupported by fact or law. *See Ryan*, 2010 WL 890950 at *7 (rejecting "'generalized or speculative allegations that [directors] are conflicted or controlled by other conflicted persons'") (quoting *Werbowsky*, 766 A.2d at 143 (alteration in original)).  This Court also has rejected the argument that directors automatically are conflicted where a fund's parent company organized or appointed the board.  *Id.*  Moreover, Plaintiffs' argument is contrary to Md. Code Ann., Corps. & Assn's § 2-405.3(b).

- A director's status as a professional (Pls.' Opp'n at 50-51) is irrelevant to the issue of potential liability, to the extent it impacts demand futility, *see In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 128 n.63 (Del. Ch. 2009) (rejecting the argument that directors with "special expertise" are "held to a higher standard of care in the oversight context"), and Plaintiffs' vague, unsupported assertion that "PWC is a significant benefactor of the University of Alabama Accounting School" (Pls.' Opp'n at 50) does not suffice to state a conflict with regard to Director Stone (*see* PWC Reply at 6-7).

- Existing business or professional relationships between Defendants and particular directors (Pls.' Opp'n at 49) do not render those directors conflicted under Maryland law.  *See Werbowsky*, 766 A.2d at 145-46; *Sekuk Global Enters. Profit Sharing Plan*, 2004 WL 1982508 at *5 ("[E]vidence of personal and/or business

15

relationships [is not] sufficient to excuse a demand even under the more permissive Delaware standard [of demand futility]." (quotations omitted)).

## II. Plaintiffs' allegations that a demand was made on the New Board and refused are inadequate as a matter of law.

Plaintiffs' argument "in the alternative" that demand was made on the New Board and refused is procedurally improper because "[a] post-suit demand simply does not meet [Federal Rule of Civil Procedure 23.1's] procedural prerequisite." *In re Sapient Corp. Deriv. Litig.*, 555 F. Supp. 2d 259, 263 (D. Mass 2008) (quotation omitted); Wright & Miller, *Federal Practice and Procedure* § 1831 (same); (Defs.' Mem. at 15).

Once Plaintiffs have chosen to sue without making demand, Rule 23.1 limits them to arguing that the failure to make demand should be excused. *See In re Sapient Corp. Deriv. Litig.*, 555 F. Supp. 2d at 263. Plaintiffs cannot argue "alternatively" that demand was made and refused.[17] *See id*. The purpose of Maryland's stringent demand rule, as well as Rule 23.1, is to *avoid* needless litigation of preliminary issues. *See Werbowsky*, 766 A.2d at 144. Permitting Plaintiffs to file a complaint alleging that demand should be excused as futile and then allowing them to make a demand after the suit was filed in order to hedge against the Court's rejection of their demand futility arguments would eviscerate the purpose of the demand requirement. *See Grossman* v. *Johnson*, 89 F.R.D. 656, 660-61 (D. Mass. 1981) ("[S]uch an approach would effectively cripple the spirit and intent of the rule, which is to give corporate authorities an opportunity to deal with shareholder grievances prior to a derivative action being brought."),

---

[17]     Plaintiffs' assertion that a demand was made renders their demand futility argument moot. *In re Sapient Corp. Deriv. Litig.*, 555 F. Supp. 2d at 263. Whether or not the alleged subsequent demand was made on the Old Board or the New Board is immaterial – what is relevant is that Plaintiffs (presumably) believe that they have placed this action in the hands of a disinterested and independent board, so their futility arguments are now irrelevant.

*aff'd* 674 F.2d 115 (1st Cir. 1982); *Shlensky* v. *Dorsey*, 574 F.2d 131, 142 (3d Cir. 1978) (This approach would "reduce the demand requirement of [Rule 23.1] to a meaningless formality.").

In any event, Plaintiffs have not pleaded facts demonstrating that they made a demand (even a tardy one) on the New Board. By their own admission, "'a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief.'" (Pls.' Opp'n at 53 (citations omitted).) The demand requirement is not satisfied by the fact that a derivative complaint is pending, or by vague, nonspecific letters to the Board (or the proposed Board) regarding *Plaintiffs'* ability to pursue the lawsuit. *See Mona*, 934 A.2d at 462-63; *Kamen*, 659 F. Supp. at 1163 (quoting Wright & Miller § 1831). The cases cited by Plaintiff are not to the contrary. *See*, *e.g.*, *Allison* v. *Gen. Motors Corp.*, 604 F. Supp. 1106, 1117 (D. Del. 1985) (demand was made by a formal demand letter); *Syracuse Television, Inc.* v. *Channel 9, Syracuse, Inc.*, 273 N.Y.S.2d 16, 24-25 (N.Y. 1966) (demand was made by formal submission of a memorandum to the board and a motion to take action, which was rejected).

The allegations referenced by Plaintiffs in their Opposition do not demonstrate that they made a demand on the New Board but rather refer to communications addressing the content of a proposed proxy statement and prospectus supplement (FADC ¶¶ 609, 637, 653), and communications between Plaintiffs and the SEC (*id.* ¶¶ 646, 647). Plaintiffs do not adequately plead that a demand was made simply by characterizing these communications as demands to sue, where the actual communications say no such thing. (Pls.' Opp'n at 15-16.)[18] Because the

---

[18]    In their Opposition, Plaintiffs assert that "in a letter addressed to the New Board, Plaintiffs asked for 'assurances' that 'you would pursue the claims in the *Landers* derivative action.'" (Pls.' Opp'n at 52 n.62 (citing FADC ¶ Ex. B.).) The actual letter, however, *was sent prior to the New Board actually taking office*, and sought information regarding a proposed proxy statement, "[i]n order to advise the *Landers* plaintiffs in connection with the proposed transfer of the Funds' advisory agreements . . . ." Read in full, the relevant language was one of

FADC does not plead that demand was either excused as futile or made and refused by the New Board, this action must be dismissed.[19]

## III.    Plaintiffs fail to state a claim upon which relief can be granted.

In addition to failing to plead demand futility, Plaintiffs' claims fail as a matter of law.  In the interest of not burdening the Court with an unnecessarily long reply brief, Defendants largely stand on the arguments made in their moving brief at pages 18-23, which Plaintiffs' Opposition does nothing to refute.  Plaintiffs' contention that this Court's Order Denying Plaintiffs' Motion to Remand (Doc. 21) and Order Denying Defendant's Motion to Strike and Granting Plaintiffs' Alternative Motion to File a Supplemental Complaint (Doc. 72) somehow amounted to rulings that Plaintiffs' claims for negligence and breach of fiduciary duty were sufficient to survive a motion to dismiss under Rule 12(b)(6) (Pls.' Opp'n at 63) is meritless and illogical.[20]

---

fourteen requests for information, which read:  "Describe any assurances that the Funds' current directors or [MAM] requested, or that you provided to the Funds' current directors or [MAM], that you would pursue the claims asserted in the *Landers* derivative action."  Plaintiffs grossly mischaracterize this communication, which is not a demand.

This is not the first time Plaintiffs have mischaracterized their communications with counsel for the New Board.  In paragraph 666 of the FADC, Plaintiffs allege that their counsel "[o]ffered to represent the Funds in this litigation."  Defendants pointed out that no communication, including the one referenced by Plaintiffs, contained any such offer.  (Def. Mem. at 16 n.12.)  Plaintiffs failed to respond and continue to reference this allegation in the FADC as evidence of a "demand" having been made.  (Pls.' Opp'n at 52 n.62.)

[19]    The New Board never "represented that the derivative claims would be pursued."  (Pls.' Opp'n at 32-33.)  The language quoted from the proxy statement (Pls.' Opp'n at 32 n.38) is self-evident, and no reasonable person would interpret this language as a representation that the New Board would pursue Plaintiffs' claims, especially where Plaintiffs made no demand.

[20]    No Defendant has conceded, admitted, or "inferentially confirmed" the truth or adequacy of Plaintiffs' allegations.  (*See*, *e.g.*, Pls.' Opp'n at 22-23, 41 n.47, 53 n.64.)  While Defendants have noted that Plaintiffs *made* numerous conclusory allegations that are inconsistent with or fatal to their other arguments, no Defendant admits or concedes that Plaintiffs have pleaded sufficient facts in support of their allegations to survive a motion to dismiss.

Moreover, Plaintiffs continue to pursue their baseless contentions that the exculpatory provisions in the Funds' Advisory Agreement with MAM and the Funds' Articles of Incorporation are void or otherwise inapplicable.  The exculpatory provision in the Advisory Agreement is expansive and tailored to the ICA's limits on such provisions.  Contrary to Plaintiffs' assertions, these provisions bar their claims for both negligence **and** breach of contract.[21]  *See, e.g., Trumball Inv., Ltd.* v. *Wachovia Bank, N.A.*, 2005 U.S. Dist. LEXIS 7195, *10-13 (E.D. Va. Apr. 15, 2005) (holding that "[p]laintiffs can not recover [on their claim for breach of contract] because the Discretionary Account Agreements contain exculpatory clauses"); *Aeropesca, Ltd.* v. *Butler Aviation Int'l, Inc.*, 411 A.2d 1055, 1066 (Md. 1980) (holding that "Limitation of Liability" clause operates as "an effective release of [defendant's] liability for breach of contract").

Plaintiffs argue that the exculpatory provision contained in the Funds' Articles of Incorporation is likewise void because it "was adopted by a single person," (presumably Defendant Charles Maxwell, the initial director) and therefore was "not the product of any negotiation, arm's-length or otherwise." (Pls.' Opp'n at 68.)  This conclusory argument ignores relevant Maryland law, which provides that a corporation need only have a single director, and expressly permits the inclusion of an appropriate exculpatory provision in the Articles of Incorporation.  *See* Md. Code Ann., Corps. & Ass'n §§ 2-104(b)(8), 2-402(a).

Finally, Plaintiffs offer no response to Defendants' arguments that the ICA does not provide for a private right of action under §§ 13 and 34(b), (*see* Defs.' Mem. at 22-23; Pls.'

---

[21]     Federal courts routinely have held that exculpatory provisions may be grounds for dismissal under Rule 12(b)(6).  *See, e.g.*, *Bezuszka* v. *L.A. Models, Inc.*, 2006 U.S. Dist. LEXIS 13620, *29 (S.D.N.Y. Mar. 27, 2006); *Continuing Creditors' Comm. Of Star Telecomm., Inc.* v. *Edgecomb*, 385 F. Supp. 2d 449, 464 (D. Del. 2004); *CompuSpa, Inc.* v. *IBM Corp.*, 228 F. Supp. 2d 613, 626 (D. Md. 2002).

Opp'n at 73-75), nor do they offer any meaningful response to the considerable authority holding that § 47 is a purely remedial statute that does not provide a separate cause of action, and requires Plaintiffs to establish a separate violation of a provision of the ICA that provides for a private right of action (*see* Defs.' Mem. at 23; Pls.' Opp'n at 73-75).  The two cases cited by Plaintiffs are inapposite, as neither case reached the issue before this Court.  *See Lessler* v. *Little*, 857 F.2d 866 (1st Cir. 1988); *Mathers Fund, Inc.* v. *Colwell Co.*, 564 F.2d 780 (7th Cir. 1977). Plaintiffs cannot bootstrap a private right of action under the ICA by bringing a claim for rescission under § 47, based on allegations that Defendants violated provisions under which Plaintiffs are otherwise not permitted to sue.

## <u>CONCLUSION</u>

For the reasons set forth herein and in Defendants' initial Memorandum, Defendants respectfully request that the Court dismiss Plaintiffs' FADC.

DATED this 5th day of April, 2010.

Respectfully submitted,

BASS, BERRY & SIMS PLC

By:   /s/ Matthew M. Curley
        Michael L. Dagley
        W. Brantley Phillips, Jr.
        Matthew M. Curley
        150 Third Avenue South, Suite 2800
        Nashville, TN  37201
        (615) 742-6200
        mdagley@bassberry.com
        bphillips@bassberry.com
        mcurley@bassberry.com

*Attorneys for Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., MK Holding, Inc., Allen B. Morgan, Jr., J. Kenneth Alderman, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, James C. Kelsoe, Jr., David H. Tannehill, Michele F. Wood and Brian Sullivan*

SUTHERLAND ASBILL & BRENNAN, LLP

By:   /s/ S. Lawrence Polk
        S. Lawrence Polk
        999 Peachtree Street NE
        Atlanta, GA  30309
        (404) 853-8225
        larry.polk@sutherland.com

*Attorneys for Allen B. Morgan, Jr., J. Kenneth Alderman, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, James C. Kelsoe, Jr., David H. Tannehill, Michele F. Wood and Brian Sullivan*

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

**APPERSON CRUMP, PLC**
CHARLES D. REAVES
JEROME A. BROADHURST
6070 Poplar Avenue, 6th Floor
Memphis, TN  38119-3954

**KIRKLAND & ELLIS, LLP**
TIMOTHY DUFFY, ESQ.
EMILY NICKLIN, ESQ.
KRISTOPHER RITTER, ESQ.
300 North LaSalle
Chicago, IL  60654

**HEAD, SEIFERT & VANDER WEIDE, P.A.**
VERNON J. VANDER WEIDE
THOMAS V. SEIFERT
333 South Seventh St., Suite 1140
Minneapolis, MN  55402-2422

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
LEO BEARMAN, ESQ.
EUGENE PODESTA, ESQ.
165 Madison Avenue
First Tennessee Building
Memphis, TN  38103

**LOCKRIDGE GRINDAL NAUEN PLLP**
RICHARD A. LOCKRIDGE
GREGG M. FISHBEIN
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401

**K&L GATES LLP**
JEFFREY B. MALETTA, ESQ.
NICOLE A. BAKER, ESQ.
1601 K Street, NW
Washington, D.C.  20006-1600

**ZIMMERMAN REED, P.L.L.P.**
CAROLYN G. ANDERSON
TIMOTHY J. BECKER
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402

**SULLIVAN & CROMWELL LLP**
DAVID B. TULCHIN
DAVID E. SWARTS
125 Broad Street
New York, New York  10004

**MAYNARD COOPER & GALE PC**
PETER S. FRUIN
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL  35203

**PAUL HASTINGS JANOFSKY & WALKER LLP**
Kevin C. Logue
Asa R. Danes
Park Avenue Tower
75 E. 55th Street
New York, NY  10022

/s/ Matthew M. Curley