```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```

| | |
|---|---|
| IN RE:  REGIONS MORGAN KEEGAN<br>SECURITIES, DERIVATIVE, AND<br>ERISA LITIGATION<br><br>H. AUSTIN LANDERS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MORGAN ASSET MANAGEMENT, INC.,<br>MORGAN KEEGAN & COMPANY, INC.,<br>MK HOLDING, INC., REGIONS<br>FINANCIAL CORPORATION, REGIONS<br>BANK, et al.,<br><br>    Defendants. | Case Nos. MDL 2009<br>        08-2260 |

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS AND STAYING CASE
PENDING THE RESPONSE OF THE FUNDS' BOARD OF DIRECTORS**

Before the Court are Defendants' December 15, 2009 Motions to Dismiss this shareholder derivative action. (See Dkt. Nos. 57-58, 60-61, 64-65.) Plaintiffs filed two consolidated responses in opposition on February 15, 2010. (See Dkt. Nos. 77-78.) Defendants then replied on April 5, 2010 (see Dkt. Nos. 79-83), to which, with the permission of the Court, Plaintiffs filed a Sur-Reply. (See Dkt. No. 87.) Defendants have filed a consolidated Motion to Strike the Sur-Reply. (See Dkt. No. 88.) Although Defendants raise numerous issues in their Motions, the

pivotal issue is the effect of Plaintiffs' having pled that they have made demand on the board of directors. Because Plaintiffs may not simultaneously plead that they made demand on the board and that demand is excused, Plaintiffs' demand futility arguments are MOOT. See Bender v. Schwartz, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007); Bennett v. Damascus Cmty. Bank, No. 267722-V, 2006 Md. Cir. Ct. LEXIS 14, at *7-8 (Md. Cir. Ct. Apr. 6, 2006). This action is STAYED pending the Court's receipt of a response from the board of directors about whether it intends to seek dismissal of the suit.

## I. BACKGROUND

Plaintiffs H. Austin Landers, Jeanette H. Landers, Charles and Diana Crump, James H. Frazier, and James and Peggy Whitaker filed this derivative suit on behalf of Nominal Defendant Morgan Keegan Select Fund, Inc. ("Morgan Keegan Select"). Morgan Keegan Select is an "open-end management investment company" registered under the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq. (Amended Compl. ¶ 10.) It consists of three portfolios (collectively the "Funds"), each with its own investment objectives: Regions Morgan Keegan Select Short Term Bond Fund ("Short Term Fund"), Regions Morgan Keegan Select Intermediate Bond Fund ("Intermediate Fund"), and Regions Morgan Keegan Select High Income Fund ("High Income Fund"). The Intermediate and High Income Funds opened for investment on

2

March 22, 1999.  (Id.)  The Short Term Fund opened on November 4, 2005.  The High Income Fund closed to new investors in December 2002; however, existing shareholders of the High Income Fund could increase their investments by purchasing additional shares.  (Id.)  Collectively, Plaintiffs invested approximately $2.3 million in the Funds.  (See id. ¶¶ 12-15.)

Defendant Morgan Asset Management ("MAM") is a registered investment advisor with its principal place of business in Memphis, Tennessee.  MAM is a wholly-owned subsidiary of MK Holding, Inc.  (Id. ¶ 16.)  Until July 2008, MAM served as the Funds' investment advisor and manager.  (Id. ¶¶ 16, 218.)  In that role, MAM managed the Funds' portfolio of securities, furnished the Funds with office space, and provided the executive personnel necessary to operate the Funds.  (Id. ¶ 16.)  MAM received an annual management fee for those services based on the average daily net assets of the Funds.  The more money invested in the Funds, the higher the fee MAM received.  (Id. ¶ 17.)

Defendant Morgan Keegan & Co. ("Morgan Keegan") is a full service broker/dealer with its principal place of business in Memphis, Tennessee.  (Id. ¶ 20.)  Morgan Keegan provided an employee to serve as the Funds' chief compliance officer and provided portfolio accounting services to the Funds.  It also received an annual fee based on the Funds' average daily net

3

assets for those services. (Id.) Morgan Keegan is a wholly-owned subsidiary of Defendant Regions Financial Corporation ("Regions"), a Delaware corporation with its principal place of business in Birmingham, Alabama. (Id. ¶ 22.) Regions marketed shares of the Funds through two subsidiaries, Morgan Keegan and Regions Bank. (Id. ¶¶ 22, 25.)

Defendants Allen B. Morgan, Jr.; J. Kenneth Alderman; Jack R. Blair; Albert C. Johnson; James Stillman R. McFadden; W. Randall Pittman; Mary S. Stone; and Archie W. Willis, III, were directors of the Funds. (Id. ¶¶ 29-36.) Morgan also served as a director and vice-chairman of Regions, a director of MAM, and chairman and CEO of Morgan Keegan. (Id. ¶ 29.) Alderman served as CEO of MAM and has served as an executive vice president of Regions. (Id. ¶ 30.) Johnson, McFadden, Pittman, and Stone served as members of Morgan Keegan Select's audit committee. (Id. ¶ 38.)

Defendants Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller,[1] Charles D. Maxwell, and Michele F. Wood served as officers of the Funds. (Id. ¶¶ 44-48.) Sullivan was the Funds' president, and Joseph C. and J. Thompson Weller served as treasurer. (Id. ¶¶ 44-46.) Maxwell was the Funds' secretary, and Wood was the chief compliance officer. (Id. ¶¶ 47-48.)

---

[1] J. Thompson Weller is the son of Joseph C. Weller. (Amended Compl. ¶ 46.)

4

Defendant James C. Kelsoe, Jr., a chartered financial analyst, served as the Funds' senior portfolio manager. Kelsoe also was employed by Morgan Keegan and was registered with the Financial Industry Regulatory Authority as a representative of Morgan Keegan. (Id. ¶ 49.) Defendant David H. Tannehill, also a chartered financial analyst, assisted Kelso as a portfolio manager for the Funds. (Id. ¶ 50.) Kelsoe and Tannehill were eligible to receive annual cash bonuses that could equal fifty percent of their base salaries. (Id. ¶ 51.) The performance of the Funds relative to their benchmark index determined part of Kelsoe's and Tannehill's bonuses. (Id.) The remainder of their bonuses was discretionary and depended on factors like their ability to bring in new clients, their service to existing clients, and their support of Morgan Keegan's policies and procedures. (Id.)

Defendant PricewaterhouseCoopers ("PwC") is a limited liability partnership and a national public accounting and auditing firm. (Id. ¶ 60.) PwC served as the Funds' auditor. It reviewed the Funds' annual financial statements, issued reports on the Funds' internal controls, and affirmed that the information the Funds supplied to investors and potential

investors accurately reflected the Funds' financial health.[2] (Id.)

Plaintiffs allege that, in violation of the Funds' published investment strategies and the Investment Company Act, the RMK Defendants[3] caused the Funds to invest in collateralized debt obligations ("CDOs"). (Id. ¶ 78.) CDOs are asset-backed, structured credit products that are constructed from a portfolio of fixed-income assets. In the case of the Funds, those fixed-income assets were mortgages. (Id.) Investment professionals divide CDOs into different tranches before their sale based on their exposure to risk. When the value of the assets backing the CDOs declines because of default, the losses are distributed to the junior tranches first. CDOs do not trade in open-market exchanges, making it difficult to value them frequently. See Ryan v. Morgan Asset Mgmt., 694 F. Supp. 2d 879, 881 (W.D. Tenn. 2010).

According to Plaintiffs' Amended Complaint, Kelsoe became "intoxicat[ed]" with investing in CDOs. (Amended Compl. ¶ 79.) He allegedly caused the Funds to invest heavily in CDOs; although, most other mutual funds invested minimally in CDOs. (Id.) The Funds' prospectuses stated that they would never

---

[2] Plaintiffs have also sued twenty "John Doe" Defendants who were "supervised, or . . . otherwise employed by Morgan Keegan." Those John Doe Defendants allegedly aided Morgan Keegan in performing due diligence in its sale of the Funds' shares. (Amended Compl. ¶ 52.)
[3] The "RMK Defendants" are the Funds' officers and managers, MAM, Morgan Keegan, Regions, and the John Doe Defendants. (Amended Compl. ¶ 53.)

invest more than 15% of their total assets in illiquid investments – investments where the market is small because of the small number of potential purchasers. (Id. ¶¶ 113-14.) Nonetheless, Kelso allegedly violated that restriction in managing all three Funds. (Id. ¶ 121.) For example, the Short Term Fund, meant to have the most conservative investment strategy of the three Funds, invested 31.5% of its total assets in illiquid CDOs – more than twice the maximum amount allowed. (Id. ¶ 115.) The Funds also had a "fundamental investment restriction" that prevented them from having more than 25% of their total assets in "the securities of companies whose principal business activities are in the same industry." (Id. ¶ 199.) Because that restriction was fundamental, only an affirmative vote of the Funds' shareholders could waive it. (Id. ¶ 200.) The RMK Defendants allegedly ignored the restriction and caused the High Income Fund to invest 52.32% of its assets in mortgage-backed securities. The Intermediate Fund held 54.71% of its assets in mortgage-backed securities, and the supposedly conservative Short Term Fund held 54.11% of its assets in similar investments. (Id. ¶ 202.)

When the market began to question the underlying value of mortgage-backed CDOs in 2007, the Funds found themselves holding assets quickly declining in value that they could not readily sell because of the limited market for such investments. From

7

December 31, 2006, to December 31, 2007, the per-share value of the assets held by the High Income Fund, Intermediate Fund, and Short Term Fund dropped respectively by 66%, 54.7%, and 16.4%. (Id. ¶¶ 68-70.) "Of 426 other short-term bond funds, 439 other intermediate-term bond funds, and 253 other high-yield bond funds, none suffered losses of this magnitude during the same period." (Id. ¶ 71.) In July 2008, Hyperion Brookfield Asset Management, Inc., a New York-based investment adviser, assumed management of the Funds. (Id. ¶ 218.) New directors took office at that time (the "New Board"), and the Funds collectively became known as the Helios Select Fund, Inc. ("Helios Select"). (Id. ¶ 625.) Helios Select, as successor to Morgan Keegan Select, is a Nominal Defendant in Plaintiffs' suit because any recovery Plaintiffs obtain in this derivative action would be payable to the Funds. On recommendation of the New Board, the shareholders voted to liquidate the Funds on May 29, 2009. The liquidation did not cancel the outstanding shares of the Funds, leaving Plaintiffs' standing to pursue this derivative action unaffected. (Id. ¶ 11.)

Plaintiffs filed suit in the Chancery Court for Shelby County, Tennessee, on March 28, 2008. (See Dkt. No. 1-3.) Defendants removed Plaintiffs' suit to this Court on April 29, 2008. (Notice of Removal, Dkt. No. 1.) On October 13, 2009, Plaintiffs, without seeking leave of the Court, filed an Amended

Complaint. (See Dkt. No. 46.) This Court denied Defendants' Motion to Strike Plaintiffs' Amended Complaint by Order dated January 4, 2010. (See Dkt. No. 72.) Plaintiffs allege causes of action for breach of contract, breach of fiduciary duties, negligence, contribution, negligent misrepresentation, <u>ultra vires</u> conduct, violation of the Investment Company Act of 1940, and violation of the Maryland Securities Act, Md. Code Ann., Corps. & Ass'ns §§ 11-101, <u>et seq.</u> Defendants filed the present Motions to test the adequacy of Plaintiffs' Complaint.

**II.   JURISDICTION, STANDARD OF REVIEW, AND CHOICE OF LAW**

This Court has federal question jurisdiction over Plaintiffs' suit. 28 U.S.C. § 1331; <u>see also</u> <u>Landers v. Morgan Asset Mgmt.</u>, No. 08-2260, 2009 U.S. Dist. LEXIS 30891, at *38 (W.D. Tenn. Mar. 31, 2009) (denying Plaintiffs' Motion to Remand). The supplemental jurisdiction provided by 28 U.S.C. § 1367(a) permits this Court to hear Plaintiffs' related state-law claims.

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. <u>League of United Latin Am. Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the

9

complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.)

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." Id. at 1950.

10

When a plaintiff brings a derivative suit, Federal Rule of Civil Procedure 23.1 heightens these notice-pleading requirements. See McCall v. Scott, 239 F.3d 808, 815 (6th Cir. 2001). The complaint must "state with particularity" all efforts undertaken by the plaintiff to make demand on the board of directors or the reasons the plaintiff has failed to make demand. Fed. R. Civ. P. 23.1(b)(1)(3). "Merely alleging futility will not suffice" under Rule 23.1. Auletta v. Ortino (In re Ferro Corp. Derivative Litig.), 511 F.3d 611, 618 (6th Cir. 2008). Rather, "the plaintiff must point to facts which show that the presumed ability of the directors to make unbiased, independent business judgments about whether it would be in the corporation's best interests to file the action does not exist in this case." Id. (quoting Davis v. DCB Fin. Corp., 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003) (emphasis in original)). Where the complaint does not meet this heightened pleading standard, a court will dismiss it. See id. at 623.

State law determines the contours of the demand requirement and the futility exception. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991). Because the Funds are Maryland corporations, Maryland law determines the substantive components of the demand requirement. Id. Rule 23.1 governs the specificity with which Plaintiffs must plead facts sufficient to meet Maryland's substantive standard. See Fed. R. Civ. P.

11

23.1(b)(1)(3); In re Ferro Corp. Derivative Litig., 511 F.3d at 618.

### III. ANALYSIS

Defendants Morgan Keegan, MAM, MK Holding, and PwC argue that the Court should dismiss Plaintiffs' claims because 1) they did not make demand on the board before filing suit, and 2) they have not pled sufficient facts to excuse demand under Maryland law. (See Defendants Morgan Keegan, et al. Memorandum in Support of Motion to Dismiss, Dkt. No. 69, at 12-17; Defendant PwC's Memorandum in Support of Its Motion to Dismiss, Dkt. No. 61-1, at 4-12.) However, Defendants Blair, Johnson, McFadden, Pittman, Stone, and Willis collectively argue that Plaintiffs' decision to plead in their Amended Complaint that they have made demand on the New Board moots the issue of demand futility and places all decisions about the propriety of this suit with the Funds' current board of directors. (Former Independent Directors' Reply Memorandum in Support of Their Motion to Dismiss, Dkt. No. 83, at 3-5.) The New Board agrees and states that it is currently investigating Plaintiffs' allegations. (Nominal Defendant Helios Select Fund, Inc.'s Memorandum in Support of Its Motion to Dismiss, at 3.) ("New Board Memo.") It requests that the Court stay this action pending the completion of its investigation or dismiss this action without prejudice to its right to file suit on its own. (Id.)

12

The Former Independent Directors and the New Board are correct that Plaintiffs have sought to plead alternatively that they made demand on the New Board and that demand is excused as to the board of directors in place when they filed suit originally.  Compare Amended Compl. ¶¶ 562-609 (explaining that demand should be excused because the prior board was conflicted and making demand would have subjected the Funds to irreparable harm), with Amended Compl. ¶¶ 633-77 (asserting that Plaintiffs made demand on the New Board and describing the actions they requested the New Board take).  Specifically, Plaintiffs' Amended Complaint states:  "If it is determined that, notwithstanding the allegations above regarding the false and misleading proxy statement used to elect the New Directors, the New Directors are the validly elected directors of the Company/Funds, Plaintiffs made the requisite demand on the New Directors to pursue this action."  (Id. ¶ 635 (emphasis added).)  The Amended Complaint then recites in great detail Plaintiffs' communications with the New Board, including their providing the New Board a copy of both the original and the Amended Complaints.  (Id. ¶¶ 633-77.)

Maryland law follows Delaware law and prohibits a party from simultaneously pleading that demand was made and that it is excused.  See Bender, 917 A.2d at 152.  "Before bringing a derivative suit in Maryland or Delaware, the shareholder[s] must

13

either make a demand on the board of directors that the corporation bring the suit, <u>or</u> show that demand is excused as futile." <u>Id.</u> (emphasis added; citations omitted). <u>Accord</u> <u>Shenker v. Laureate Educ., Inc.</u>, 983 A.2d 408, 423 (Md. 2009). Demand is thus an either/or proposition, and a derivative plaintiff may not "stand neutral . . . by simultaneously making a demand . . . <u>and</u> continuing to argue that demand is excused." <u>Spiegel v. Buntrock</u>, 571 A.2d 767, 775 (Del. 1990) (emphasis in original).

When plaintiffs simultaneously argue that they have made demand on the board and that demand is excused, the plaintiffs' arguments that demand would be futile are mooted. <u>Id.</u>; <u>Bennett</u>, 2006 Md. Cir. Ct. LEXIS 14, at *7-8 (finding that the rule elucidated in <u>Spiegel</u> also applies under Maryland law); <u>see</u> <u>also</u> <u>Spiegel</u>, 571 A.2d at 775 ("A shareholder who makes a demand can no longer argue that demand is excused." (citation omitted)). Plaintiffs who plead demand thereby concede that the board on which they have made demand is independent, and they waive any claim they might have had that the board cannot validly consider the demand. <u>Bender</u>, 917 A.2d at 152; <u>Spiegel</u>, 571 A.2d at 775 ("By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility." (citation omitted)).

Here, the board on which Plaintiffs made demand is not the board that was in office when Plaintiffs originally filed suit. This Court has concluded that Maryland would follow Delaware law and, in most cases, would not require derivative plaintiffs to make a demand on a new board that takes office after they have filed suit. Ryan, 694 F. Supp. 2d at 884. It, therefore, is questionable whether Maryland law would have required Plaintiffs to make demand on the New Board after their filing of the Amended Complaint. See id. (finding that a new demand is required only when a plaintiff files an amended complaint and that complaint includes additional claims unrelated to claims already "validly in litigation") (citing Braddock v. Zimmerman, 906 A.2d 776, 785 (Del. 2006)).

Plaintiffs' decision to make demand on the New Board moots the question of whether Maryland law would have required them to make a new demand. A board on behalf of which a party brings a derivative action "cannot stand neutral." Spiegel, 571 A.2d at 775. Maryland corporate law requires the New Board to affirmatively state its position on Plaintiffs' suit, after an investigation, regardless of whether Plaintiffs made demand on it. Id.; cf. Bender, 917 A.2d at 152 (requiring a board to investigate charges of wrongdoing contained in a derivative action). By affirmatively choosing to make demand on the New Board, Plaintiffs have admitted that the New Board is qualified

15

to exercise its business judgment about whether their suit should go forward. Bender, 917 A.2d at 152 ("By making a demand, the shareholder(s) are deemed to have waived any claim they might otherwise have had that the board cannot independently act on the demand." (internal quotation marks and citations omitted)); Bennett, 2006 Md. Cir. Ct. LEXIS 14, at *8. All that remains is for the New Board to complete its investigation and declare its intention about this suit.

In Bender, the Maryland Court of Special Appeals approved the state trial court's decision to stay the suit pending the receipt of the board's response to the plaintiff's demand. 917 A.2d at 150. This Court will follow Bender and STAY this action pending the response of the New Board. Because the New Board has had time to investigate many of the allegations, the stay will necessarily be brief. (See New Board Memo. at 2 (stating that the board is "currently conducting an internal investigation" of Plaintiffs' claims).) If the New Board moves to dismiss Plaintiffs' suit as not in the interest of the Funds or refuses to respond to Plaintiffs' demand within the time set by the Court, Plaintiffs may seek this Court's review of the board's action or non-action under the business judgment rule. See Werbowsky v. Collomb, 766 A.2d 123, 144 (Md. 2007). Arguments about whether Plaintiffs' demand includes all allegations in their Amended Complaint are best decided after

16

the board acts.  See Bender, 917 A.2d at 154-56 (reviewing the adequacy of the plaintiff's demand after the court received the board's response).

**IV.     CONCLUSION**

Because Plaintiffs have made demand on the New Board, their demand futility arguments are MOOT.  This case is STAYED pending receipt of the New Board's response to Plaintiffs' demand or the expiration of the time allowed for response.  The New Board shall file a status report in this case, including any results of its investigation, not later than October 25, 2010.  In the alternative, the New Board may file a Motion to Dismiss by that date.  Defendants' Motions to Dismiss are DENIED and their Motion to Strike Plaintiffs' Sur-Reply is DENIED AS MOOT.

So ordered this 24th day of September, 2010.


                              s/ Samuel H. Mays, Jr.
                              SAMUEL H. MAYS, JR.
                              UNITED STATES DISTRICT JUDGE

17