# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## AT MEMPHIS

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION <br><br> This Document Relates to: LANDERS, ET AL. V. MORGAN ASSET MANAGEMENT, INC., ET AL., No. 2:08-cv-02260-SHM-dkv | MDL Docket No. 2009 <br><br> Judge Samuel H. Mays, Jr. <br><br> Magistrate Judge Diane K. Vescovo |

## DERIVATIVE PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT FOR PRELIMINARY APPROVAL OF PROPOSED DERIVATIVE SETTLEMENT

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

**APPERSON CRUMP, PLC**
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3972
(901) 756-6300

**ZIMMERMAN REED, P.L.L.P.**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 341-0400

*Attorneys for Derivative Plaintiffs*

## PRELIMINARY STATEMENT

Pursuant to Rule 23.1(c) of the Federal Rules of Civil Procedure, Derivative Plaintiffs H. Austin Landers, Jeanette H. Landers, the Estates of Charles M. Crump and Diana W. Crump, James H. Frazier, James P. Whitaker, and Peggy C. Whitaker ("Derivative Plaintiffs") respectfully submit this unopposed motion and memorandum of law in support for preliminary approval of the proposed settlement of this action ("Derivative Settlement").[1]

This is a shareholder derivative action brought almost seven years ago by Derivative Plaintiffs on behalf of and for the benefit of nominal defendants, the Funds[2], against Defendants[3] for alleged breaches of fiduciary duty and other state statutory and common law claims in connection with the alleged mismanagement of the Funds and their assets. ("Derivative Action Lawsuit") The Derivative Settlement is the result of counsel's extensive investigation, prosecution, discovery, and arm's-length negotiations, with the substantial assistance of former

---

[1]    Unless specifically defined herein, capitalized terms have the same meaning as defined in the Derivative Settlement Agreement attached as Exhibit 1 to the Declaration of Gregg M. Fishbein dated January 22, 2015 ("Fishbein Decl.").

[2]    Helios Select Fund, Inc. ("Company"), and its three portfolios, Helios Select Short Term Bond Fund ("Short Term Fund"), Helios Select Intermediate Bond Fund ("Intermediate Fund") and Helios Select High Income Fund ("High Income Fund") (together, "the Funds"). Helios Select Fund, Inc. and its three portfolios were formerly known, respectively, as Morgan Keegan Select Fund, Inc., Regions Morgan Keegan Select Short Term Bond Fund, Regions Morgan Keegan Select Intermediate Bond Fund, and Regions Morgan Keegan Select High Income Fund.

[3]    In addition to the Funds as nominal defendants, Defendants herein include Morgan Asset Management, Inc. ("MAM"), the Funds' former investment advisor; MK Holding, Inc., MAM's parent; Morgan Keegan & Company, Inc. ("MK"), the Funds' former distributor and administrator; Regions Financial Corporation, a bank holding company and MK Holding's and MK's parent (together "RMK Defendants"); PricewaterhouseCoopers ("PwC"), the Funds' auditor; the Funds' directors: Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis III; and the Funds' officers: Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, David H. Tannehill,.

United States District Court Judge Layn R. Phillips as mediator, which resulted in an excellent result for the Funds and their current and former shareholders.

The Derivative Settlement, as set forth in the Derivative Settlement Agreement, provides for the payment of Fifteen Million Dollars in cash ($15,000,000) ("Funds Settlement Amount") for the benefit of the Funds.  The Funds Settlement Amount is part of a One Hundred Twenty Five Million Dollar ($125,000,000) cash settlement ("Settlement Amount") of this Derivative Action Lawsuit and the companion Class Action Lawsuit, in which the Funds were named defendants.[4] Derivative Plaintiffs and the Funds, along with their respective counsel, believe the Derivative Settlement represents an excellent result for the Funds and should be approved by the Court as fair, reasonable, and adequate.  As a result of this global resolution of the Lawsuits, the Funds will receive a full release of claims asserted against them by Lead Plaintiffs in the Class Action Lawsuit and will receive financial benefits to compensate them for the damages that they incurred as a result of the wrongdoing alleged in this Action, which recovery (net of attorneys' fees and expenses approved by the Court) will inure to the benefit of investors who were harmed by their investments in the Funds.[5]

---

[4]     The "Class Action Lawsuit," *In Re Regions Morgan Keegan Open-End Mutual Fund Litigation*, No. 2:07-cv-02784, was settled by a Stipulation and Agreement of Class Action Settlement between and among Lead Plaintiffs (the Estate of Kathryn S. Cashdollar, Dajalis Ltd., Jeanette H. Landers, H. Austin Landers, and Frank D. Tutor), Defendants, the Funds, and certain additional persons not defendants herein (together with Plaintiffs, the "Parties").  The Class Settlement provides for the payment of One Hundred Ten Million Dollars in cash ($110,000,000.00) ("Class Settlement Amount") for the benefit of the Settlement Class, the Unopposed Motion for Preliminary Approval of which is being submitted separately.   The allocation of the Settlement Amount between the Class Settlement and the Derivative Settlement was negotiated by Lead and Derivative Plaintiffs and the Funds. The Class Action Lawsuit and the Derivative Action Lawsuit are hereinafter referred to as the "Lawsuits."

[5]     The Funds are no longer operating registered investment companies, have deregistered, and are being liquidated.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Derivative Settlement is within a range of what might be found to be fair, reasonable, and adequate, such that notice of the proposed Derivative Settlement should be provided to the Funds Shareholders and a hearing be scheduled for final approval of the settlement. As discussed herein, the Derivative Settlement satisfies this standard and, therefore, Derivative Plaintiffs and the Funds respectfully request that this Court enter the proposed Order Preliminarily Approving Derivative Settlement and Providing for Notice (the "Derivative Preliminary Approval Order"), attached as Exhibit 1 to the Derivative Settlement Agreement and submitted separately herewith.

The Derivative Preliminary Approval Order, among other things: (i) preliminarily approves the Derivative Settlement as within a range of reasonableness; (ii) schedules a hearing (the "Derivative Settlement Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Derivative Settlement, the distribution of the Net Funds Settlement Fund to the Funds Shareholders ("Funds' Distribution"), and Derivative Plaintiffs' counsel's application for an award of attorneys' fees and expenses; and (iii) approves the forms and methods of disseminating pre-hearing notice to the Funds Shareholders, and directs that such notice be issued.

If the Court grants preliminary approval to the Derivative Settlement, Derivative Plaintiffs and the Funds propose the following timetable for finalizing the Derivative Settlement:

- **Notice Date**: Mailing of individual Notice of Pendency and Proposed Settlement of Class Action and Derivative Action and Motion for Attorneys' Fees and Expenses ("Notice") within ninety (90) calendar days after entry of the Derivative Preliminary Approval Order (the "Notice Date").

- **Publication Notice**: Publication of Summary Notice of Pendency and Proposed Settlement of Class and Derivative Actions and Motion for Attorneys' Fees and Expenses ("Summary Notice") in *Investor's Business Daily* and on the *PRNewswire* within fourteen (14) calendar days after the Notice Date.

- **Comment Period**: Derivative Plaintiffs and the Funds request that the final day for Fund Shareholders to comment on, or object to, the Derivative Settlement be twenty-one (21) calendar days before the Derivative Settlement Hearing.

- **Final Approval Papers Due**: Derivative Plaintiffs and the Funds request that the deadline for filing with the Court their submissions in support of final approval of the Derivative Settlement, Funds' Distribution, and Derivative Plaintiffs' counsel's application for an award of attorneys' fees and expenses, be thirty-five (35) calendar days before the Derivative Settlement Hearing.

- **Reply Deadline**: Derivative Plaintiffs and the Funds request that the deadline for filing with the Court any reply papers in support of the Derivative Settlement and Funds' Distribution (including any replies to those commenting on or objecting to the Derivative Settlement, Derivative Plaintiffs' counsel's request for attorneys' fees and expenses, and Funds' Distribution) be ten (10) days prior to the Derivative Settlement Hearing.

- **Final Approval Hearing**: Derivative Plaintiffs and the Funds request that the Final Approval Hearing be held at the Court's convenience, but in any event no earlier than 150 days after the entry of the Preliminary Approval Order, and that the Derivative Settlement Hearing be scheduled at the same date and time as the final settlement hearing in the Class Action Lawsuit.  The Derivative Settlement Hearing date can be inserted by the Court in the Derivative Preliminary Approval Order.

This schedule provides due process to the Fund Shareholders with respect to their rights concerning the Settlement.

## I.       PROCEDURAL AND FACTUAL BACKGROUND

### A.       Summary of Allegations and Claims

As the allegations and claims in this action are familiar to this Court, Derivative Plaintiffs provide only a brief overview.  *See* Verified Shareholders' First Amended Derivative Complaint ("FADC") ¶¶ 67-876 (ECF No. 46).

This Derivative Action Lawsuit arose from the 2007-2008 collapse of three Regions Morgan Keegan mutual funds that invested in bonds and other fixed income securities. The three Funds were managed by MAM and MK, along with their officers and directors. This litigation also involves a Class Action Lawsuit that sought to recover damages suffered by the shareholders in the Funds in the course of the Funds' collapse, the settlement of which is addressed in a separate motion.

Derivative Plaintiffs alleged, *inter alia*, that the Funds' investment adviser, officers and directors, the administrator/distributor of the Funds and their shares, and controlling persons of the Funds' investment adviser and administrator/distributor engaged in conduct that constituted breach of contract, negligence, negligent misrepresentation, breach of fiduciary duty and waste and mismanagement of the Funds' assets, violations of applicable statutes, and *ultra vires* conduct. Derivative Plaintiffs alleged that the extent to which the Funds invested their assets in low-ranking tranches of asset-backed and mortgage-backed securities violated the Funds' disclosed investment objectives, policies and restrictions and substantially exceeded the proportion of such investments and risks as compared with their respective peer funds and the benchmarks by which their performances were compared.  It was further alleged that the risks taken on by the Funds as a result

of their mismanagement going back to at least July 2006 materialized from July 2007 through early 2008 to cause the Funds' losses. During that period, the total net assets of the three Funds dropped from $2.2 billion at December 31, 2006, to $372.5 million at December 31, 2007. Plaintiffs also alleged that the Funds were managed in such a manner that they incurred substantial liquidity, valuation, concentration, and credit risk that was inconsistent with their disclosed investment objectives, policies, and restrictions and employed leverage notwithstanding prohibitions against the use of leverage.

Derivative Plaintiffs further alleged that the Funds and their management and underwriter represented that certain benchmarks were appropriate yardsticks by which to measure their respective performances when, in fact, the composition of those benchmarks was materially different than the composition of the Funds' portfolios, and these differences were not disclosed, thus misleading investors as to the unique risks of an investment in the Funds. Derivative Plaintiffs alleged that the Funds' auditor failed to properly audit the Funds' financial statements to ensure that required financial statement disclosures were made and that the Funds' board was properly informed of the Funds' violative management. Plaintiffs alleged that the risks arising from the Funds' mismanagement materialized from July 2007 through early 2008 when the markets for the securities in which the Funds had heavily invested disappeared, causing the Funds far greater losses than most of their peers.

**B.    Procedural History**

A derivative action commenced by Derivative Plaintiffs in Chancery Court in Shelby County, Tennessee, on March 28, 2008, was removed to federal court by Defendants on April 29, 2008 under the style *Landers, et al. v. Morgan Asset Management, Inc., et al.*, No. 08-cv-2260-SHM-dkv (W.D. Tenn.) (the "Derivative Action") (ECF No. 1-4). Derivative Plaintiffs filed their

Verified Shareholders' First Amended Derivative Complaint ("FADC") in this Court on October 13, 2009 (ECF No. 46).

All Defendants, including the Funds, as nominal defendants, moved to dismiss the FADC on December 15, 2009.  On September 24, 2010, the Court denied all motions to dismiss the FADC, determined that Derivative Plaintiffs had made a demand on the Funds' board of directors to pursue the Funds' claims asserted in the FADC, and stayed the case pending the response of the Funds to Derivative Plaintiffs' demand.  The Court required the Funds to file a report indicating the status of its investigation or a motion to dismiss the FADC by October 25, 2010.  The Funds requested an extension of the stay until November 30, 2010 to allow them to complete their investigation.  On November 30, 2010, the Funds filed a status report notifying the Court that they had reached an agreement with Derivative Plaintiffs and Lead Plaintiffs in the Class Action Lawsuit (Derivative Plaintiffs and Lead Plaintiffs in the Class Action Lawsuit collectively herein, "Plaintiffs"), reflected in a Memorandum of Understanding ("MOU"), which was subsequently amended, the Amended Memorandum of Understanding ("AMOU").  The AMOU contemplated the entry of judgment against the Funds on the Section 11 claim (as well as the Section 10(b) claim in the event that claim should be allowed by the Court) against them in the Class Action Lawsuit, the realignment of certain parties in the Derivative Action Lawsuit with the Funds replacing Derivative Plaintiffs to become the sole plaintiffs, and the Derivative Plaintiffs' counsel assuming the representation of the Funds in pursuing their claims against the remaining Defendants, with certain potential exceptions discussed below.

On December 6, 2010, the Court entered an order preliminarily approving the agreement outlined in the MOU.  On March 14, 2011, Plaintiffs and the Funds filed their joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the Memorandum of

Understanding (ECF No. 103) in the Derivative Action and their Joint Motion for Preliminary Approval of Partial Settlement and Notice to Settlement Class Members (ECF No. 309) in the Class Action ("Partial Settlement").   On June 24, 2011, Plaintiffs and the Funds filed their Joint Report … and Amendment to (1) Joint Motion for Preliminary Approval of Partial Settlement and (2) Joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the AMOU (ECF No. 126 in the Derivative Action; ECF No. 337 in the Class Action).   On March 28, 2012, this Court entered an Order (ECF No. 160 in the Derivative Action; ECF No. 384 in the Class Action) approving Plaintiffs' and Funds' previous joint motions seeking to amend their motion for preliminary approval of the Partial Settlement and for final approval of the AMOU. All Defendants except the Funds opposed the motions for approval of the Partial Settlement and for approval of the AMOU.  The Court has not ruled on the Partial Settlement and AMOU motions; however the motions have now been withdrawn (ECF No. 173 in the Derivative Action; ECF No. 414 in the Class Action) as a result of the proposed Derivative Settlement, as well as the Class Action Settlement, addressed herein.

In connection with the proposed Partial Settlement, the Funds provided 510,000 pages of documents to Plaintiffs, including 236,000 pages of PwC documents and work papers that PwC had provided to the Funds.

### C.    Settlement Negotiations

In the summer of 2013, the Parties retained United States District Court Judge Layn Phillips (Ret.), an experienced mediator in complex class actions, to assist them in exploring a potential negotiated resolution of the claims asserted in the Lawsuits.   On July 18, 2013, Defendants provided Plaintiffs' Counsel with more than 6.7 million pages of confidential documents and other confidential information pursuant to an agreement in advance of the mediation.  On December 17

and 18, 2013, the Parties met with Judge Phillips in Chicago for two days of intensive settlement negotiations. The mediation sessions were preceded by an exchange of comprehensive mediation statements and supporting evidence, including information from expert reports and consultations with experts.  These discussions narrowed the Parties' differences and clarified the merits and value of the Parties' claims and defenses, but no agreement was reached.

Following the Chicago mediation session, the Parties continued to negotiate through Judge Phillips, until those negotiations reached an impasse.  On February 19, 2014, the Parties resumed settlement negotiations with Judge Phillips in New York City and reached an agreement-in-principle.  The Parties signed a "Proposed Term Sheet for Settlement of RMK Open-End Funds Litigation" consistent with the terms and conditions set forth herein.  The agreement-in-principle provided for certain Defendants other than the Funds to pay $125 million into a settlement fund for the benefit of the Class and the Funds in settlement of both the Class and Derivative Action Lawsuits.

These settlements were achieved in the negotiations between Lead/Derivative Plaintiffs (in consultation with the Funds) and the RMK Defendants and PwC.  The allocation of the $125 million between the Class and the Funds was negotiated by Lead/Derivative Plaintiffs and the Funds. The Defendants who are paying the $125 million settlement did not participate in the negotiation between Lead/Derivative Plaintiffs and the Funds concerning the allocation of the Settlement Amount between the Class and the Funds.

### D.    Settlement Consideration

The Settlement provides that all Released Defendant Parties will be released in exchange for payment by certain Defendants of $125 million in cash into an interest bearing escrow account within ten (10) days after the Court enters the Derivative Preliminary Approval Order. Of this $125

million, $15 million will be allocated to the Funds Settlement Fund for the benefit of the Funds. This Derivative Settlement consideration and any accrued interest, after the deduction of attorney's fees and expenses awarded by the Court, notice and administration expenses, and taxes and related expenses (the "Net Funds Settlement Fund"), will be allocated by the Funds' board of directors among the three Funds in accordance with their respective losses during the period following June 30, 2007 through May 29, 2009.

The Derivative Settlement additionally provides that, following the allocation of the Net Funds Settlement Fund, each Fund will distribute its share thereof to the Funds Shareholders of that Fund ("Funds' Distribution"). The Derivative Settlement Agreement further provides that the *pro rata* share of the Net Class Settlement Fund to be paid to those Settlement Class Members who are also Funds Shareholders will be reduced by their share of the Funds' Distribution. Based on available information, Derivative Plaintiffs believe that, except for those Funds Shareholders who are excluded from either the Settlement Class or from sharing in the Funds' Distribution by the terms of the Class and Derivative Settlement Agreements, all of the Funds Shareholders are also Settlement Class Members so that all but approximately 11% of the Net Funds Settlement Fund will inure to the benefit of the Settlement Class because amounts from the Funds' Distribution paid to Settlement Class Members will be set-off against amounts that such Class Members receive from the Class Settlement. This set-off of the Funds' Distribution against what the Funds Shareholders receive from the Net Class Settlement Fund ensures that all Class Members who incurred losses on their investments in the Funds during the Holders/Sellers Loss Period (July 3, 2006 through May 29, 2009) will be treated on equal terms in the Settlement.

## ARGUMENT

## I.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED DERIVATIVE SETTLEMENT

### A.   Legal Standard

Courts strongly favor the resolution of complex litigation through settlement.  *See*, *e.g.*, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlements of disputes without litigation."); *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) (approving a settlement in the case of "long and protracted litigation" and noting that "there is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve").  "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *accord Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) ("Settlements are welcome in [shareholder derivative] cases such as this because litigation is notoriously difficult and unpredictable.") (internal citations and quotation marks omitted).

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders."   The Sixth Circuit has outlined a three-part procedure for courts to follow for approval.  *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).  This procedure is as follows:

> (1) the court must preliminarily approve the proposed settlement, i.e., the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) the members of the class must be given notice of the

proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable.

*Grier*, 262 F.3d at 565-66.  The standards for approval of class actions and derivative actions are the same. *See, e.g.*, *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 377-78 (9th Cir. 1995); *see also Manual for Complex Litigation (Fourth)* § 13.14 (2004) (setting forth the approval procedure for settlement of a shareholder derivative action).

Preliminary approval is the first step in this process.  Preliminary approval should be granted if "the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies." *See also Int'l Union v. Ford Motor Corp.*, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).   In making this assessment, the Court should base preliminary approval of the proposed settlement "upon its familiarity with the issues and evidence of the case as well as the arm's-length nature of the negotiations prior to the settlement." *Kizer v. Summit Partners*, *L.P.*, 2012 WL 1598066, at * 7 (E.D. Tenn. May 7, 2012).   The following factors should guide the Court in determining whether preliminary approval is warranted:

> (1) the plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by class members; and (7) the public interest.

*Id.*, *at* *8.

At the preliminary approval stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in an analysis as rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prod. Liab. Litig.*, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012).

Preliminary approval does not require the trial court to answer the ultimate question – whether a proposed settlement is fair, reasonable, and adequate. *See Manual for Complex Litigation (Fourth)* § 13.14 (2004) ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). That determination is made only after notice of the settlement has been given to shareholders and after they have been given the opportunity to comment on the settlement. *See* 5 James Wm. Moore, Moore's Federal Practice § 23.83[1], at 23-336.2 to 23-339 (3d ed. 2002). Under this approach, the Derivative Settlement warrants preliminary approval.

**B.    The Proposed Derivative Settlement Was Produced through Good Faith, Arm's Length Negotiations among Experienced Counsel Facilitated by a Respected Private Mediator, Will be Distributed Fairly, and Lacks Obvious Deficiencies**

Courts accord considerable weight to the opinion of experienced and informed counsel who put time and expertise into negotiating a settlement. *See Sheick v. Automotive Component Carrier, LLC,* 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."); *In re Rio Hair Naturalizer Products Liab. Litig.,* 1996 WL 780512, at *14 (E.D. Mich. Dec. 20, 1996) ("Courts respect the integrity of and presume good faith in the absence of fraud or collusion in settlement negotiations unless someone offers evidence to the contrary.") (citing 2 Newberg on Class Actions 3d § 1151.  This is especially true in shareholder derivative lawsuits.  *See Granada Investments, Inc.,* 962 F.2d at 1205 ("Absent evidence of fraud or collusion, such settlements are not to be trifled with.").

This Derivative Settlement is the product of extensive, arm's-length negotiations resulting from lengthy litigation, including sessions with a highly experienced mediator in complex

litigation, former United States District Court Judge Layn Phillips.  The negotiations were well-informed by the exchange of comprehensive mediation statements and supporting evidence, including information and analyses from experts, as well as the provision of more than seven million pages of confidential documents and other confidential information to Derivative Plaintiffs by Defendants. On December 17 and 18, 2013, the Parties met with Judge Phillips in Chicago for two days of intensive settlement negotiations, which narrowed the Parties' differences and clarified the merits and value of the Parties' claims and defenses, but did not result in an agreement.  The mediation continued thereafter, as Judge Phillips sought to further narrow the differences between Plaintiffs and certain of the Defendants regarding the settlement amount.  On February 19, 2014, the Parties resumed settlement negotiations with Judge Phillips in New York City, which, after further negotiation, ultimately resulted in an agreement-in-principle to pay $125 million to settle the Class and Derivative Action Lawsuits and a signed "Proposed Term Sheet for Settlement of RMK Open-End Funds Litigation."  *See* Fishbein Decl., Ex. 2 at 3.  Defendants paying the $125 million did not participate in the negotiations of the allocation thereof between the Class Settlement Amount and the Funds Settlement Amount; this allocation was negotiated by the Funds and Derivative and Lead Plaintiffs, through their respective counsel.   Those negotiations also were demonstrably at arm's length and free of fraud or collusion.

The two mediation sessions and the interim negotiations over which Judge Phillips presided were indispensable in airing the issues and obstacles to a resolution. Judge Phillips' close involvement in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's length and without collusion. *See*, *e.g*., *In re Southeastern Milk Antitrust Litig*., 2012 WL 2236692, at *4 n.6 (E.D. Tenn. June 15, 2012) (noting that the participation of a "well respected" mediator helps support the court's conclusion that settlement negotiations were made

at arm's length); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by "one of the most prominent and highly skilled mediators of complex actions," Judge Phillips, and characterizing the settlement there as "outstanding work," the excellent outcome of which was "in great part a measure of his prodigious efforts and skill").

Derivative Plaintiffs (along with Lead Plaintiffs), through their counsel, have conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Derivative Action Lawsuit. This process included reviewing and analyzing: (i) over seven million pages of nonpublic e-mails, valuation-related materials, and other pertinent documents produced by the Funds, PwC, and the RMK Defendants (including over 236,000 pages of audit workpapers produced by PwC); (ii) publicly available orders, reports and other information concerning the administrative enforcement proceedings brought by the SEC, multiple state securities regulators, and the Financial Industry Regulatory Authority ("FINRA") against certain Defendants related to some of the conduct at issue in the Lawsuits; (iii) documents filed publicly by the Funds and certain Defendants with the SEC; (iv) other publicly available information and data concerning the Funds and the claims asserted in the Complaint, including press releases, news articles, and other public statements issued by or concerning the Defendants; (v) research reports issued by financial analysts concerning the Funds and securities held in the Funds' portfolios; (vi) prospectuses and other offering documents related to the mortgage- and asset-backed securities in which the Funds invested; and (viii) the applicable law governing the claims and potential defenses. Plaintiffs' counsel also reviewed the deposition transcripts of certain employees of Defendants taken in the regulatory enforcement actions and of FINRA arbitration proceedings that were based

on some of the allegations in the Lawsuits. Plaintiffs' counsel also consulted with qualified experts on damages and causation, accounting and auditing, and investment company issues.

Counsel for all Parties have significant experience prosecuting or defending derivative actions and were well informed about the strengths and weaknesses of the Parties' claims and defenses. The Settlement is the product of intensive, informed arm's length negotiations between experienced counsel for Plaintiffs and Defendants, is not the product of collusion, and, accordingly, deserves preliminary approval.

Finally, the "Settlement Agreement should be preliminarily approved if it . . . does not disclose grounds to doubt its fairness or other obvious deficiencies…" *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624 (E.D. Mich. May 20, 2013).   Here, as discussed above, the $15 million recovery constitutes a significant and certain benefit for the Funds and the investors therein who were harmed by their investments. *See supra* at 10.

### C.   The Proposed Settlement Falls Well Within a Range of Reasonableness and Warrants Notice and a Hearing on Final Approval

This Court should approve the proposed Derivative Settlement if it is "within the range of fairness and reasonableness." *Brent v. Midland Funding, LLC*, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011).  Derivative Plaintiffs believe the proposed Derivative Settlement represents an excellent result for the Funds in light of the risks, costs, and duration of continued litigation, and falls well within a range of what is considered fair, reasonable, and adequate. The $15 million recovery compares favorably against other securities derivative settlements in recent years and is more than double the derivative settlement recently approved in the Closed-End Fund Litigation. *In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 2:07-cv-02830-SHM-dkv (slip op.) (W.D. Tenn. Jan. 4, 2014) (Order Preliminarily Approving Settlement and Providing for Notice of a $6 million derivative settlement) (ECF No. 276).

Continued litigation of this action would be subject to the many risks of complex shareholder derivative litigation. Defendants have raised a number of substantial defenses that they would continue to raise at summary judgment and trial.  In considering whether to enter into the proposed Derivative Settlement, Derivative Plaintiffs, represented by experienced counsel, took into particular account the risks inherent in derivative litigation, as well as the expense and likely duration of continued litigation. *See Southeastern Milk*, 2012 WL 2236692, at *4 (noting risk, expense, and delay of further litigation as factors supporting final approval of settlement).

Derivative Plaintiffs also agreed to settle this Lawsuit based on their careful investigation and evaluation of the facts and law relating to the allegations in the Complaint, and consideration of the issues noted and views expressed by Judge Phillips and Defendants during the mediation process. *See Sheick*, 2010 WL 300130, at* 13 ("Plaintiffs' Counsel's informed and reasoned judgment and their weighing of the relative risks and benefits of protracted litigation are entitled to deference.").

Derivative Plaintiffs and the Funds, having considered the myriad risks of continued litigation and benefits to the Funds, respectfully submit that if the Court preliminarily approves the Derivative Settlement, the Court ultimately will find that the Derivative Settlement is fair, reasonable, adequate, and will be deserving of final approval.  Nothing in the course of the settlement negotiations or the terms of the Derivative Settlement itself presents any grounds to doubt its fairness. Rather, the Derivative Plaintiffs' counsel's review and analysis of over seven million pages of documents and other data, Plaintiffs' counsel's extensive legal analysis of the claims, the substantial recovery to the Funds, the arm's-length nature of the negotiations, and the participation of sophisticated counsel and a well-respected mediator support a finding that the proposed Derivative Settlement is sufficiently fair, reasonable, and adequate to justify notice to

17

the shareholders and a hearing on final approval. This Court should preliminarily approve the Derivative Settlement and order that notice be disseminated to shareholders consistent with the terms of the Derivative Settlement Agreement and Rule 23.1(c).

## CONCLUSION

Based on the arguments presented herein, Derivative Plaintiffs and the Funds respectfully request that the Court grant this motion and issue the proposed Derivative Preliminary Approval Order submitted herewith to grant preliminary approval of the proposed Derivative Settlement, approve the proposed form and method of providing notice of the Derivative Settlement to the Fund Shareholders, schedule the Derivative Settlement Hearing, and grant such other and further relief that the Court may deem to be appropriate.

DATED:  January 22, 2015

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

*s/Richard A. Lockridge*
Richard A. Lockridge
Vernon J. Vander Weide
Gregg M. Fishbein
100 Washington Avenue South
Suite 2200
Minneapolis, MN  55401
Tel:  (612) 339-6900
Fax:  (612) 339-0981
gmfishbein@locklaw.com

**APPERSON CRUMP PLC**

s/Jerome A. Broadhurst
Jerome A. Broadhurst, TN BPR 12529
Charles D. Reaves, TN BPR 22550
6070 Poplar Avenue, Sixth Floor
Memphis, TN 38119-3954
Tel : 901-260-5133
Fax : 901-435-5133
jbroadhurst@appersoncrump.com

18

**ZIMMERMAN REED, P.L.L.P.**
Carolyn G. Anderson
Patricia A. Bloodgood
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone:  612-341-0400
Fax: 612-341-0844
Carolyn.Anderson@zimmreed.com

***Attorneys for Derivative Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this 22nd day of January, 2015, a true and correct copy of the forgoing document was served by electronic means via e-mail transmission (including the Court's ECF System) on the following:

Shepherd D. Tate, Esq.
Michael A. Brady, Esq.
**Bass, Berry, & Sims, PLC**
100 Peabody Place, Suite 900
Memphis, TN 38103-3672

Michael L. Dagley, Esq.
Britt K. Latham, Esq.
W. Brantley Phillips, Jr., Esq.
**Bass, Berry, & Sims, PLC**
150 Third Avenue South, Ste. 2800
Nashville, TN 37201

David B. Tulchin, Esq.
David E. Swarts, Esq.
**Sullivan & Cromwell, LLP**
125 Broad Street
New York, NY 10004

S. Lawrence Polk, Esq.
**Sutherland Asbill & Brennan LLP**
999 Peachtree Street, NE
Atlanta, GA 30309-3996

Jeffrey Maletta, Esq.
Nicole A. Baker, Esq.
**K & L Gates**
1601 K Street NW
Washington, DC 20006

Emily Nicklin, Esq.
Timothy A. Duffy, Esq.
Kristopher Ritter, Esq.
Devon M. Largio, Esq.
**Kirkland & Ellis**
200 East Randolph Dr., Ste. 5400
Chicago, IL 60601-6636

Leo Maurice Bearman, Jr., Esq.
Eugene J. Podesta, Jr., Esq.
**Baker Donelson Bearman Caldwell
& Berkowitz**
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Peter S. Fruin, Esq.
Scott S. Brown, Esq.
Luther M. Dorr, Jr., Esq.
Maibeth J. Porter, Esq.
**Maynard Cooper & Gale PC**
2400 Regions Harbert Plaza
1901 Sixth Avenue North
Birmingham, AL 35203

R. Hal Meeks, Jr., Esq.
Amanda N. Wilson, Esq.
**James Bates Brannan Grover LLP**
3339 Peachtree Street, NE
Suite 1700
Atlanta, GA 30326

s/ Jerome A. Broadhurst
Jerome A. Broadhurst

20