IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| IN RE: REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE, AND ERISA LITIGATION )<br><br>This Document Relates to:<br>IN RE: REGIONS MORGAN KEEGAN OPEN-END MUTUAL FUND LITIGATION<br><br>AND<br><br>LANDERS ET. AL. V. MORGAN ASSET MANAGEMENT, INC., ET AL. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 08-2260<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PRELIMINARY APPROVAL ORDER

Before the Court is the unopposed January 22, 2015 Motion for Preliminary Approval of Proposed Derivative Settlement (the "Motion"), brought by H. Austin Landers ("H. Landers"); Jeanette H. Landers ("J. Landers"); the Estates of Charles M. Crump and Diana W. Crump ("Estate of Crump"); James H. Frazier ("Frazier"); James P. Whitaker ("J. Whitaker"); and Peggy C. Whitaker ("P. Whitaker") (collectively, "Derivative Plaintiffs"). (Motion, ECF No. 174.) Also before the Court is the Motion for a Hearing on Preliminary Approval ("Motion for

Preliminary Hearing").[1]  (Motion for Preliminary Hearing, ECF No. 175.)

For the following reasons, the Motion is GRANTED and the Motion for Preliminary Hearing is DENIED as moot.

I.  **Background**

This shareholder derivative action (the "Derivative Action") arises from the 2007-2008 collapse of three open-end Regions Morgan Keegan mutual funds.  (Motion, ECF No. 174 at 6.) Those funds were the Regions Morgan Keegan Select Short Term Bond Fund ("STF"), the Regions Morgan Keegan Select Intermediate Bond Fund ("IBF"), and the Regions Morgan Keegan Select High Income Fund ("HIF") (collectively, "Open-End Funds").[2]  (Id. at 2 n.2.)  The litigation also relates to a class action, In Re Regions Morgan Keegan Open-End Mutual Fund Litigation, No. 2:07-cv-02784, brought by shareholders of the Open-End Funds seeking to recover damages suffered as a result of the Defendants' alleged mismanagement of the Open-End Funds.  (Motion, ECF No. 174 at 6.)  That is addressed in a separate motion.

This action was originally filed on March 28, 2008, in the Chancery Court for Shelby County, Tennessee.  Defendants removed it to this Court on April 29, 2008.  (Notice of Removal, ECF No.

_____

[1] For purposes of this Order, the Court adopts all defined terms as set forth in the Derivative Settlement Agreement unless otherwise defined in this Order.

[2] The three funds are now known as the Helios Select Short Term Bond Fund, the Helios Select Intermediate Bond Fund, and the Helios Select High Income Fund. (Motion, ECF No. 174 at 2 n.2.)

1.)   The First Amended Derivative Complaint ("FADC") was filed on October 13, 2009, without leave of Court.  (FADC, ECF No. 46.)   In the FADC, Derivative Plaintiffs assert claims against Defendants[3] for breach of contract, breach of fiduciary duties, negligence, negligent misrepresentation, contribution, ultra vires conduct, violations of the Investment Company Act of 1940, as amended, 15 U.S.C.A. §§ 80a, et seq. (the "ICA"), and violations of the Maryland Securities Act, Md. Code Ann., Corps. & Ass'ns §§ 11-101, et seq. (the "MSA").  (FADC, ECF No. 46 at ¶¶ 689-876.)   Derivative Plaintiffs allege that Defendants' mismanagement of the Open-End Funds resulted in "extraordinary losses" when compared with respective peer funds.  (Id. at ¶ 72.)

On December 15, 2009, all Defendants moved to dismiss the FADC.  (Motion to Dismiss, ECF No. 64.)  On September 24, 2010, the Court denied that motion and determined that the Derivative Plaintiffs had made a demand on the Open-End Funds' Board of Directors to pursue the Open-End Funds' claims.  (Order Denying Motion to Dismiss and Staying Case, ECF No. 92.)  On March 14, 2011, the Derivative Plaintiffs and the Open-End Funds moved the

---

[3]  The Defendants in this derivative action are the Open-End Funds; Morgan Asset Management, Inc., MK Holding, Inc., Morgan Keegan & Company, Inc. ("Morgan Keegan") (collectively, the "Morgan Keegan Defendants"); Regions Financial Corporation; PricewaterhouseCoopers LLP ("PwC"); Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michelle F. Wood, James C. Kelsoe, and David H. Tannehill (collectively, the "Officer Defendants"); and Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis III (collectively, the "Director Defendants").

Court to approve a Rule 23.1 Notice to shareholders and to approve a Memorandum of Understanding. (Joint Motion for Approval of Rule 23.1 Notice to Shareholders and for Final Approval of the MOU, ECF No. 103-1.) That motion is moot as a result of the proposed agreement (the "Derivative Settlement Agreement") now before the Court and has been withdrawn. (Motion, ECF No. 174 at 9.)

Since 2013, the Lead Plaintiffs in the Class Action and the Derivative Plaintiffs in this action, in consultation with the Open-End Funds, RMK Defendants and PwC, have engaged in negotiations conducted by mediator United States District Court Judge Layn Phillips (Ret.). (Id. at 9-10.) The result of those negotiations is the Derivative Settlement Agreement before the Court. (Id.)

The agreement reached in the class action (the "Class Settlement Agreement") provides that Released Defendant Parties will be released in exchange for the payment of $125 million by certain Defendants into an interest bearing escrow account. (Id. at 10.) Of the $125 million, $110 million will be allocated to a Class Settlement Fund. (Id. at 10-11.) The Derivative Settlement Agreement provides that the remaining $15 million will be allocated to the Funds Settlement Fund for the benefit of the Open-End Funds and will be paid to the record and beneficial owners of common stock in the Open-End Funds as of

May 29, 2009, subject to the exclusions listed in the Derivative Settlement Agreement ("Funds Shareholders"). (Id. at 11.) Any share of the Class Settlement Fund paid to Class members, as defined in the Class Settlement Agreement, who are also Funds Shareholders will be reduced by their share of the Funds Settlement Fund distribution. (Id.) All Funds Shareholders are also Class members. (Id.) It is estimated that all but approximately 11% of the $15 million will go to the benefit of the Class. (Id.)

## II. Jurisdiction

Derivative Plaintiffs' claims arise from alleged violations of the ICA. The Court has federal question jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Derivative Plaintiffs' related state-law claims.

## III. Standard of Review

The Parties seek preliminary approval of the Derivative Settlement Agreement. (Motion, ECF No. 174 at 12.) Under Federal Rule of Civil Procedure 23.1(c), a derivative action many be settled only with the Court's approval. The procedure for approving settlements in derivative actions is the same as class actions. 7C Fed. Prac. & Proc. Civ. § 1839 (3d ed.). To approve settlement of a derivative action, the Court first "reviews the proposal preliminarily to determine whether it is

sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing." Manual for Complex Litigation (4th) § 13.14.

"In evaluating derivative action settlements, courts have borrowed from the law governing class actions under Rule 23." City of Plantation Police Officers' Employees' Retirement System v. Jeffries, No. 2:14-cv-1380, 2014 WL 7404000 at *5 (S.D. Ohio Dec. 30, 2014). Fed. R. of Civ. P. 23(c) formerly governed both class action settlements and derivative settlements. 7C Fed. Prac. & Proc. Civ. § 1839 (3d ed.). Rule 23(e) now governs class action settlements. Id. Rule 23.1(c) governs derivative action settlements. The original notice requirement and pre-requisites for derivative settlements remain unchanged. Id. Case law on settlements under Rule 23(e) is relevant when analyzing derivative settlements. Id.

In class actions, "[t]he pertinent inquiry is whether the proposed settlement is 'fair, reasonable, and adequate.'" City of Plantation Police Officers' Employees' Retirement System, 2014 WL 7404000 at *5 (citing Fed. R. Civ. P. 23(e)(2)). Courts conduct the same inquiry for derivative suits. Id.; McDannold v. Star Bank, N.A., 261 F.3d 478, 488 (6th Cir. 2001).

Borrowing from the law governing class actions, "[a]t the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered, and the court is

required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . . and whether it appears to fall within the range of possible approval.'" In re National Football League Players' Concussion Injury Litigation, 961 F. Supp. 2d 708, 714 (E.D. Penn. 2014) (internal citations omitted); In re Vitamins Antitrust Litigation, Nos. MISC.99-197(TFH), MDL1285, 2001 WL 856292 at *4 (D.D.C. July 25, 2001); see also In re Shell Oil Refinery, 155 F.R.D. 552, 555 (E.D. La. 1993) (a court must determine only whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preliminary preferential treatment to class representatives or segments of the class, and falls within the range of possible [judicial] approval."). "[T]he District Court enjoys wide discretion in evaluating the settlement of derivative actions under Rule 23.1." McDannold, 261 F.3d at 488 (citing Granada Investments, Inc. v. DWG Corp., 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The Parties seek approval of the notice to the Funds Shareholders (the "Notice"). (Motion, ECF No. 174 at 4; Notice, ECF No. 174-1 at 59-93.) "Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The notice for derivative action settlements "need

only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Gen. Tire and Rubber Co. Sec. Litig., 726 F.2d 1075, 1086 (6th Cir. 1984)(internal citations omitted).

The Parties seek a hearing on the Motion pursuant to Fed. R. Civ. P. 16(a)(5). (Motion for Preliminary Hearing, ECF No. 175.) A court has discretion to order counsel to appear under Fed. R. Civ. P. 16(a)(5) for purposes of negotiating settlement. Cincinnati Gas & Elec. Co. v. Gen. Elec. Co., 117 F.R.D. 597, 599 (S.D. Ohio 1987); Fed. R. Civ. P. 16(a)(5).

The Parties seek a fairness hearing before the Court grants final settlement approval (the "Final Approval Hearing"). (Motion, ECF No. 174 at 5.) Fairness hearings are not required by Fed. R. Civ. P. 23.1 for derivative action settlements. Fairness hearings are generally held in derivative action settlements to protect the due process rights of absent parties precluded from further litigation by the proposed settlement. McDannold, 261 F.3d 478, 484-85. "A fairness hearing contains several procedural safeguards: Parties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement; [affected third parties] 'may object to [the] proposed settlement' on the record; and [affected third parties] have a right to participate

in the hearing." <u>UAW v. General Motors Corp.</u>, 497 F.3d at 635 (internal citations omitted). Courts have dispensed with the hearing if it is unnecessary and would cost more than it is worth to the shareholders. <u>Plaskow v. Peabody Intern. Corp.</u>, 95 F.R.D. 297, 299 (S.D.N.Y. 1982).

## IV. Analysis

### A. Preliminary Approval of Proposed Settlement

In preliminarily approving a derivative settlement, the Court decides whether notice of the proposed settlement would be appropriate, but makes no final determination about the settlement's fairness. "[T]he Settlement Agreement should be preliminarily approved if it (1) 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys,' and (2) 'appears to fall within the range of possible approval.'" <u>Sheick</u>, 2010 WL 3070130, at *11 (internal citations omitted) (discussing class actions).

The Derivative Settlement Agreement does not disclose grounds to doubt its fairness or other obvious deficiencies. It appears to have resulted from arm's-length negotiations between the Parties and their counsel. Beginning in 2013, the Parties worked with United States District Court Judge Layn Phillips (Ret.) to negotiate a resolution of Derivative Plaintiffs'

claims.   (Motion, ECF No. 174 at 9.)   Judge Phillips is an experienced mediator in complex class actions.   (Id.)   As a result of the negotiations, the Parties agreed on a Proposed Term Sheet that served as the basis for the Derivative Settlement Agreement.   (Id. at 10.)   The Defendants paying the $125 million did not participate in the negotiations between the Lead Plaintiffs in the Class Action, the Derivative Plaintiffs, Open-End Funds, and their respective counsel about the allocation of the $125 million between the members of the Class and the Funds Shareholders.   (Id.)   The Parties represent that the negotiations about allocation were also at arm's length and free from fraud or collusion.   (Id. at 15.)   The negotiations required exchanges of comprehensive statements, expert analysis, and documents containing pertinent information about the case. (Id. at 15.)   The motion to preliminarily approve the Derivative Settlement Agreement is unopposed.   (Id. at 2.)

There is no unduly preferential treatment of any member of the Funds Shareholders or excessive compensation for counsel. The $125 million will be placed into an interest bearing escrow account.   (Derivative Settlement Agreement, No. 174-1, at 25.) Part of the Funds Settlement Fund and earned interest will be used to pay Taxes, Notice and Administration expenses, costs, fees, and expenses awarded to attorneys, and any other fees and expenses awarded by the Court.   Attorneys' fees and expenses

will only be paid out of the Fund to the extent they are awarded by the Court. (Id.)  The amount taken from the Fund to cover that amount may not exceed 30% of the Fund.  (Id. at 27.) Thirty percent is slightly more than the average attorneys' fees awarded for a settlement of this size, but the Court will have discretion over the final amount. (Recent Trends in Securities Transactions, In Re Regions Morgan Keegan Open-End Mutual Fund Litigation, No. 2:07-cv-02784 (W.D. Tenn. Jan 22, 2015), ECF No. 415-2 at 41.)  Plaintiffs' counsel will apply to the Court for a Distribution Order.  (Derivative Settlement Agreement, ECF No. 174-1 at 29.)  Payments made to Funds Shareholders out of the Funds Settlement Fund will be set off against payments received by the Funds Shareholders who are also Class members receiving distributions from the Net Class Settlement Fund.  (Id. at 30.) The set off amount will not allow any Class member's pro rata share of the Net Class Settlement Fund to fall below zero. (Id.)

A court may finally approve a settlement only if the settlement is fair, reasonable, and adequate.  McDannold, 261 F.3d at 488.  The Derivative Settlement Agreement falls within the range of possible approval.  This Court approved a comparable settlement for the Closed-End Funds in this litigation.  (Order Preliminarily Approving Settlement and Providing for Notice, In Re Regions Morgan Keegan Closed-End

Fund Litigation, No. 2:07-cv-02830 (W.D. Tenn. Jan 14, 2014), ECF No. 276.) Given the duration of the action, Derivative Plaintiffs are especially concerned about resolving it in a timely matter and without jeopardizing the progress made during the negotiations conducted by Judge Phillips. (Motion, ECF No. 174 at 18.) Attempts to re-negotiate the Derivative Settlement Agreement or to continue with litigation would result in significantly higher attorneys' fees and other expenses. The Derivative Settlement Agreement offers an amount comparable to similar cases and resolves the action quickly and effectively in accordance with the Funds Shareholders' interests.

**B. Adequacy of Notice of Proposed Settlement**

The notice for derivative action settlements "need only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Gen. Tire and Rubber Co. Sec. Litig., 726 F.2d at 1086 (internal citations omitted). That is accomplished if the notice "describe[s] the terms of the settlement, the reasons for the independent directors' determination to seek dismissal of the suits, the legal effect of the settlement and the rights of the shareholders to voice their objections." Id.

The Notice is substantively adequate. It will be directly mailed. It clearly states what the action is about and its

procedural history. (Notice, ECF No. 174-1 at 64-68.) It summarizes the terms of the Derivative Settlement Agreement and its legal effects. (Id. at 60-92.) It provides the reasons for the settlement. (Id. at 68.) The beginning of the Notice states in bold type who is entitled to receive payment. (Id. at 59.) It includes a schedule of each step of the process to claim part of the Funds Settlement Fund and lists the Open-End Funds Shareholders' rights with respect to the Derivative Settlement Agreement. (Id. at 60-61.) It explains that exclusion is not an option for the Derivative Settlement Agreement. (Id. at 61.) It lists contact information for Funds Shareholders to obtain further information about the action. (Id. at 63.) It identifies when the hearing will be and how to attend or speak at the hearing. (Id. at 80-82.) It identifies the process for objecting to the Derivative or Class Settlement Agreements. (Id. at 81-82.) All information is presented in an easy-to-read manner with section headings such as "Why did I get this Notice," "How do I tell the Court that I do not like the Settlement," and "How do I know if I am part of the Settlement." (Id. at 64-78.)

The Open-End Funds will provide or cause to be provided to Plaintiffs' Counsel the names and addresses of the Funds Shareholders, the number of their shares, and the Fund in which

the shares were held on May 29, 2009. (Derivative Settlement Agreement, ECF No. 174-1 at 24.)

The Parties have agreed to supplement the direct mailing with the Summary Notice. (Id. at 21.) The Parties commit to publishing the Summary Notice in Investor's Business Daily and to transmitting it over PR Newswire. (Motion, ECF No. 174 at 5.) The Summary Notice describes the nature of the action; the persons affected by the Derivative Settlement Agreement; the amount to be distributed; how to object to the Derivative Settlement Agreement; and contact information for inquiries. (Summary Notice, ECF No. 174-1 at 105-07.) It provides information on receiving a copy of the Notice if a shareholder has not received one. (Id. at 106.)

The Notice and the Summary Notice adequately apprise the Funds Shareholders of the Derivative Settlement Agreement and afford them the opportunity to make informed decisions. The Notice must be sent by March 7, 2016 (the "Notice Date").

**C. Preliminary Hearing on the Motion**

The Parties request a hearing on the Motion pursuant to Fed. R. Civ. P. 16(a)(5). (Motion for Preliminary Hearing, ECF No. 175.) Because the applicable inquiry supports granting the Motion, the Motion for Preliminary Hearing is DENIED as moot.

14

### D. Final Approval Hearing

The Court will hold the Final Approval Hearing on <u>May 27, 2016</u>, at <u>9:00 a.m. (Central Time Zone)</u>, at <u>Clifford Davis / Odell Horton Federal Building, 167 N. Main Street, 11th Floor, Courtroom #2, Memphis, TN 38103</u>, in the manner set forth in the Notice.

## V.   Conclusion

For the foregoing reasons, the Motion is GRANTED.

1.    The Settlement is conditionally APPROVED as fair, reasonable, and adequate, subject to further consideration at the Final Approval Hearing.

2.    The Motion for Preliminary Hearing is DENIED as moot.

3.    The Court appoints The Garden City Group, Inc. ("Claims Administrator") to supervise and administer the notice procedure as well as the administration of the Derivative Settlement as set forth in the Derivative Settlement Agreement.

4.    The Parties are DIRECTED to provide notice of the proposed Derivative Settlement to the Funds Shareholders as provided in this Preliminary Approval Order and the Derivative Settlement Agreement.

5.    The Court APPROVES the Notice and Summary Notice in substantially the forms annexed as Exhibits A-1 and A-3 to the Derivative Settlement Agreement, and FINDS that the mailing and

distribution of the Notice and the publishing of the Summary Notice meet the requirements of Rule 23.1 and due process.

6.   No later than 120 days after the Notice Date, the Funds' counsel shall provide to Plaintiffs' Counsel the Funds' determination of the distributions to be paid to the Funds Shareholders pursuant to paragraph 20 of the Derivative Settlement Agreement.   Any information produced by the Funds pursuant to this Order or to paragraph 8 of the Class Settlement Agreement constitutes confidential and privacy protected business and personal information, and shall be treated as confidential by the Claims Administrator, Plaintiffs' Counsel, and Funds' Counsel.   The Claims Administrator, Plaintiffs' Counsel, and Funds' Counsel agree to use this information solely for the purposes of administering the proposed Derivative Settlement pursuant to the Derivative Settlement Agreement and the Orders of the Court, including the determination and making of the Funds' distribution, and further agree not to disclose this information to anyone (other than the Funds Shareholders whose information is at issue) absent express authorization from the Court.

7.   Any Funds Shareholder may enter an appearance in the Derivative Action Lawsuit, at his, her, or its expense, by appearing individually or through counsel of his, her or its choice.

8.   Any Funds Shareholder may appear at the Final Approval Hearing provided that he, she, or it was a shareholder of record or beneficial owner of shares in the Open-End Funds as of May 29, 2009, and show cause, as to any reason why: (i) the proposed settlement of this Derivative Action Lawsuit should or should not be approved as fair, reasonable, and adequate; (ii) a judgment should or should not be entered thereon; or (iii) Plaintiffs' Counsel's application for attorneys' fees and reimbursement of litigation expenses should not be approved; provided, however, that no Funds Shareholder or any other person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Derivative Settlement, or the judgment to be entered approving the same; or the attorneys' fees and reimbursement of litigation expenses to be awarded to Plaintiffs' Counsel, unless that person or entity has filed with the Clerk of the United States District Court for the Western District of Tennessee a written objection, papers, and briefs that comply with the requirements set forth in the Notice and has delivered by hand or sent by mail to the parties named below the written objection, papers, and briefs filed with the Court such that the papers are received by the Court and the parties on or before twenty-one (21) calendar days before the Final Approval Hearing:

**COURT:**

Clerk of the Court
United States District Court for the Western District of Tennessee
Clifford Davis/Odell Horton Federal Building
167 North Main Street, Room 242
Memphis, TN 38103

**DERIVATIVE PLAINTIFFS' COUNSEL:**

Richard A. Lockridge, Esq.
Vernon J. Vander Weide, Esq.
Gregg M. Fisbein, Esq.
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Minneapolis, MN 55401

**ATTORNEYS FOR REGIONS FINANCIAL CORPORATION, REGIONS BANK & MORGAN ASSET MANAGEMENT, INC.:**

Peter S. Fruin, Esq.
MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203

**ATTORNEYS FOR THE MORGAN KEEGAN DEFENDANTS:**

Britt K. Latham, Esq.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN  37201

**ATTORNEYS FOR JACK R. BLAIR, ALBERT C. JOHNSON, JAMES STILLMAN R. MCFADDEN, WILLIAM JEFFERIES MANN, W. RANDALL PITTMAN, MARY S. STONE, AND ARCHIE W. WILLIS, III:**

Jeffrey B. Maletta, Esq.
K&L GATES LLP
1601 K. Street NW
Washington, DC 20006

18

**ATTORNEYS FOR ALLEN B. MORGAN, JR., J. KENNETH ALDERMAN, BRIAN B. SULLIVAN, JOSEPH C. WELLER, JAMES C. KELSOE, JR., J. THOMPSON WELLER, MICHELLE F. WOOD, AND DAVID TANNEHILL:**

S. Lawrence Polk, Esq.
SUTHERLAND ASBILL & BRENNAN, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309

**ATTORNEYS FOR PRICEWATERHOUSECOOPERS LLP:**

Timothy A. Duffy, Esq.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

**ATTORNEYS FOR THE OPEN-END FUNDS:**

Kevin C. Logue, Esq.
PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022

Any Funds Shareholder who does not object in the manner provided in this Order and in the Notice shall be deemed to have waived objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed Derivative Settlement as set forth in the Derivative Settlement Agreement, or to the award of attorneys' fees and expenses to Plaintiffs' Counsel, unless otherwise ordered by the Court.

9.    Attendance at the Final Approval Hearing by Funds Shareholders is not necessary; however persons wishing to be heard orally in opposition to the approval of the Derivative Settlement, and/or the application for an award of attorneys' fees and other expenses to Plaintiffs' Counsel are required to

state in their written objection filed with the Court that they intend to appear at the Final Approval Hearing.  Persons who intend to object to the Derivative Settlement and/or the application for an award of attorneys' fees and other expenses to Plaintiffs' Counsel and desire to present evidence at the Final Approval Hearing must include in their written objections filed with the Court the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the Final Approval Hearing, and they must comply with the requirements in the Notice.  Funds Shareholders who approve of the Settlement do not need to appear at the hearing or take any other action to indicate their approval.

10.  The passage of title and ownership of the Funds Settlement Amount to the Escrow Agent in accordance with the terms and obligations of the Derivative Settlement Agreement is approved.  No person who is not a Funds Shareholder or Plaintiffs' Counsel shall have any right to any portion of, or to any distribution from, the Funds Settlement Fund unless otherwise ordered by the Court or otherwise provided in the Derivative Settlement Agreement.

11.  All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time

as such funds shall be distributed pursuant to the Derivative Settlement Agreement and/or further order of the Court.

12. The administration of the proposed Derivative Settlement and the determination of all disputed questions of law and fact as to the validity of any claim or right of any person or entity to participate in the distribution of the Net Funds Settlement Fund shall be under the authority of this Court.

13. At or after the Final Approval Hearing, the Court shall determine whether the Derivative Settlement and any application for attorneys' fees or reimbursement of expenses by Plaintiffs' Counsel shall be approved.

14. If the Settlement is terminated or fails to become effective for any reason, any portion of the Funds Settlement Amount previously paid on behalf of or by Defendants, together with any earnings thereon, less any taxes paid or due, less Notice and Administration Expenses actually incurred and paid or payable from the Settlement Amount shall be returned to the entities that made the payment(s) within ten (10) business days after written notification of that event.

15. This Preliminary Approval Order, the Derivative Settlement Agreement and its terms, the negotiations leading up to the Derivative Settlement Agreement, the fact of the Derivative Settlement and the proceedings taken pursuant to the

21

Derivative Settlement, shall not: (1) be construed as an admission of liability or an admission of any claim or defense on the part of any party, in any respect; (2) form the basis for any claim of estoppel by any third party against any of the Released Defendant Parties; or (3) be admissible in any pending or future civil, criminal, or administrative action, suit, proceeding, or investigation as evidence, or as an admission, of any wrongdoing or liability whatsoever by any of the Released Defendant Parties or as evidence of the truth of any of the claims or allegations contained in any complaint filed in the Derivative Action Lawsuit or deemed to be evidence of or an admission or concession that Plaintiffs, the Funds, or any Funds Shareholder has suffered any damages, harm, or loss.  Neither the Preliminary Approval Order, any Final Judgment, nor the Derivative Settlement Agreement, nor any of their terms and provisions, nor any of the negotiations or proceedings connected with them, nor any action taken to carry out this Preliminary Approval Order, any Final Judgment, or the Derivative Settlement Agreement by any of the Parties shall be offered into evidence, or received in evidence in any pending or future civil, criminal, or administrative action, suit, arbitration, proceeding, or investigation, except: in a proceeding to enforce this Preliminary Approval Order, any Final Judgment, or the Derivative Settlement Agreement, or to enforce any insurance

rights; to defend against the assertion of Released Claims (including to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction); or by Plaintiffs' Counsel to demonstrate its adequacy to serve as lead counsel in derivative actions; or as otherwise required by law.

16.   Pending final determination by the Court as to whether the Derivative Settlement, as set forth in the Derivative Settlement Agreement, is fair, reasonable, and adequate and should be finally approved and whether the Judgment dismissing the Derivative Action Lawsuit with prejudice should be approved, no Funds Shareholder, either directly, representatively, or in any other capacity, shall assert, commence or prosecute against any of the Defendants or Released Defendant Parties any of the Released Claims in this Derivative Action Lawsuit, or in any other proceeding or forum.  This injunction is necessary to protect and effectuate the Derivative Settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments.

17.   Pending the Final Approval Hearing, the Court stays all proceedings in the Derivative Action Lawsuit, other than the proceedings necessary to carry out or enforce the terms and conditions of the Derivative Settlement Agreement.

18.   If the Derivative Settlement does not become effective in accordance with the terms of the Derivative Settlement Agreement or the Effective Date does not occur, or in the event that the Fund Settlement Amount and/or the Class Settlement Amount, or any portion thereof, is returned to the Defendants or to the entities that made such payment(s), this Order shall be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection with this Order shall be null and void.

19.   The Court expressly reserves the right to adjourn the Final Approval Hearing, or any adjournment thereof, without further notice to the Funds Shareholders, and retains jurisdiction to consider all further applications arising out of or connected with the proposed Derivative Settlement.   The Court may approve the Derivative Settlement with such modifications as may be agreed by the Parties, if appropriate, without further notice to the Funds Shareholders.

20.   The Final Approval Hearing shall be held before the undersigned at 9:00 a.m. on Friday, May 27, 2016, in Courtroom 2, at the United States District Court for the Western District of Tennessee, 167 North Main Street, Memphis, Tennessee 38103, to consider whether:

(a) the proposed Derivative Settlement on the terms and conditions provided in the

24

Derivative    Settlement    Agreement    is    fair, reasonable    and    adequate,    and    should    be approved by the Court;

(b) the  Order  and  Final  Judgment  annexed  as Exhibit    B    to    the    Derivative    Settlement Agreement, should be entered;

(c) the  amount  of  attorneys'  fees  and  expenses that  should  be  awarded  to  Plaintiffs'  Counsel; and

(d) to  rule  on  such  other  matters  as  the  Court may deem appropriate.

21.   All papers  in  support  of  the  Derivative Settlement and the  award  of  attorneys'  fees  and  litigation  expenses,  shall  be filed  with  the  Court  and  served  not  later  than  thirty-five (35) calendar  days  before  the  Final  Approval  Hearing.   Any  reply papers  in  further  support  of  the  Derivative  Settlement  shall  be filed  and  served  not  later  than  ten  (10)  calendar  days  before the Final Approval Hearing.

So ordered this 30th day of November, 2015.

s/ Samuel H. Mays, Jr._____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE