**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE, AND ERISA LITIGATION** | ) | |
| **This Document Relates to:** | ) | **No. 08-2260** |
| **LANDERS ET AL. V. MORGAN ASSET MANAGEMENT, INC., ET AL.** | ) | |

**FINAL APPROVAL ORDER**

Before the Court are the April 22, 2016 Motion for Final Approval of the Derivative Settlement (the "Motion") submitted by H. Austin Landers ("H. Landers"); Jeanette H. Landers ("J. Landers"); the Estates of Charles M. Crump and Diana W. Crump ("Estate of Crump"); James H. Frazier ("Frazier"); James P. Whitaker ("J. Whitaker"); and Peggy C. Whitaker ("P. Whitaker") (collectively, "Derivative Plaintiffs") and the April 22, 2016 Motion for Attorney's Fees and Expenses (the "Motion for Attorney's Fees") submitted by Derivative Plaintiffs and by the Estate of Kathryn S. Cashdollar ("Cashdollar"); Dajalis Ltd. ("Dajalis"); J. Landers; H. Landers; and Frank D. Tutor ("Tutor")

(collectively, "Lead Plaintiffs").[1] (Motion, ECF No. 181; Motion for Attorney's Fees, ECF No. 182.)

Defendants do not oppose the Motion or the Motion for Attorney's Fees.[2] (Motion, ECF No. 181 at 2-3; Motion for Attorney's Fees, ECF No. 182 at 3.) The Open-End Funds' Board of Directors approved the Derivative Settlement and the attorney's fees and expenses to be paid from the Derivative Settlement. (Tyras Decl., ECF No. 182-9.) No objections have been filed to either motion.

For the following reasons, the Motion and the Motion for Attorney's are GRANTED.[3]

## I. Background

This litigation arose from the 2007-2008 collapse of the Open-End Funds. (Vander Weide Decl., ECF No. 181-2 at ¶ 14.) Plaintiffs allege that the Open-End Funds collapsed because of mismanagement and investment in risky securities when compared to respective peer bonds. (Id. at ¶¶ 14-16.) Plaintiffs allege

[1] For purposes of this Order, the Court adopts all defined terms as set forth in the Class Settlement Agreement unless otherwise defined in this Order.

[2] The Defendants in this derivative action are the Open-End Funds; Morgan Asset Management, Inc., MK Holding, Inc., and Morgan Keegan & Company, Inc. ("Morgan Keegan") (collectively, the "Morgan Keegan Defendants"); Regions Financial Corporation; Regions Bank; PricewaterhouseCoopers LLP ("PwC"); Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michelle F. Wood, James C. Kelsoe, and David H. Tannehill (collectively, the "Officer Defendants"); and Allen B. Morgan, Jr., J. Kenneth Alderman, Jack R. Blair, Albert C. Johnson, James Stillman R. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis III (collectively, the "Director Defendants").

[3] The Motion for Attorney's Fees is addressed in the Final Approval Order in In Re Regions Morgan Keegan Open-End Mutual Fund Litigation, No. 2:07-cv-02784 (ECF No. 435).

that Defendants misled investors about the degree of investment risk. (Id.) Plaintiffs allege that PwC failed to audit the Funds properly. (Id. at ¶ 17.) The litigation also relates to a class action, In Re Regions Morgan Keegan Open-End Mutual Fund Litigation, No. 2:07-cv-02784. The settlement of the class action is addressed in a separate order.

Since 2013, the Lead Plaintiffs and the Derivative Plaintiffs, in consultation with the defendants in both actions, have engaged in negotiations led by a mediator, United States District Court Judge Layn Phillips (Ret.). (Vander Weide Decl., ECF No. 181-2 at ¶ 33.) After the total settlement amount of $125 million was determined in consultation with Judge Phillips, the amount to be allocated to the Open-End Funds in the Derivative Settlement was negotiated separately and approved by the Open-End Funds' board of directors. (Id. at ¶¶ 40-42.) The result of those negotiations is the Derivative Settlement Agreement currently before the Court. (Derivative Settlement Agreement, ECF No. 174-1.)

The settlement agreements provide for the payment of $125 million for the benefit of the Class and the Open-End Funds. (Vander Weide Decl., ECF No. 181-2 at ¶ at 3.) Of the $125 million, $110 million will be allocated to a Class Settlement Fund. (Id.) The Derivative Settlement Agreement provides that the remaining $15 million will be allocated to the Funds

Settlement Fund for the benefit of the Open-End Funds and will be paid to the record and beneficial owners of common stock in the Open-End Funds as of May 29, 2009, subject to the exclusions listed in the Derivative Settlement Agreement (the "Open-End Funds Shareholders" or "Funds Shareholders"). (Derivative Settlement Agreement, ECF No. 174-1.) Any share of the Class Settlement Fund paid to Class Members, as defined in the Class Settlement Agreement, who are also Open-End Funds Shareholders will be reduced by their share of the Funds Settlement Fund distribution. (Id.)

On November 30, 2015, the Court granted Preliminary Settlement Approval. (Order, ECF No. 178.) On March 1, 2016, the Court extended the Notice Date to March 21, 2016. (Order, ECF No. 180.) On May 27, 2016, the Court held a Final Approval Hearing. The parties sought to extend the objection and opt out date for certain Shareholders to July 18, 2016. The Court granted the extensions and continued the Final Approval Hearing to August 1, 2016. (Order, ECF No. 186.)

On August 1, 2016, the Court held a Final Approval Hearing. The Derivative Plaintiffs, Lead Plaintiffs, and Defendants were represented. (Minutes, ECF No. 188.)

Based on its independent assessment of the record and the information presented by the parties, the Court makes the following findings and reaches the following conclusions.

**II. Standard of Review**

Under Federal Rule of Civil Procedure 23.1, settlement of a derivative action requires court approval. Fed. R. Civ. P. 23.1(c). Final approval of the proposed settlement is warranted if the Court finds the terms of the Settlement are "fair, reasonable, and adequate." Granada Inv., Inc. v. DWG Corp., 962 F.2d 1203, 1205–06 (6th Cir. 1992).

"In evaluating derivative action settlements, courts have borrowed from the law governing class actions under Rule 23." City of Plantation Police Officers' Employees' Retirement System v. Jeffries, No. 2:14-cv-1380, 2014 WL 7404000 at *5 (S.D. Ohio Dec. 30, 2014); Granada, 962 F.2d at 1205. To determine whether the settlement is fair, reasonable and adequate, the Court must consider: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of [] counsel and [shareholder] representatives; (6) the reaction of absent [shareholders]; and (7) the public interest. UAW v. Gen. Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007); Granada, 962 F.2d at 1205. "The Court enjoys wide discretion in assessing the weight and applicability of these factors." Granada, 962 F.2d at 1205. In shareholder derivative actions, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." Id.

(citing Priddy v. Edelman, 883 F.2d 438, 447 (6th Cir. 1989)). The court must also determine whether the settlement gives preferential treatment to the named plaintiffs. Vassalle v. Midland Funding LLC, 708 F.3d 747, 755 (6th Cir. 2013) (internal quotation marks and citations omitted).

## III. Analysis

### A. Settlement Approval

#### 1. The Risk of Fraud or Collusion

Courts presume the absence of fraud or collusion unless there is evidence to the contrary. See, e.g., Leonhardt v. ArvinMeritor, Inc., 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); In re Telectronics Pacing Sys., 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001).

There is no evidence of fraud or collusion. The record shows that the Derivative Settlement developed from vigorous, arm's length negotiations. Derivative Plaintiffs took part in extensive negotiations led by a distinguished and experienced mediator, Judge Layn R. Phillips (Ret.). (Vander Weide Decl., ECF No. 181-2 at ¶¶ 33,39-43.) Judge Phillips used a "double blind" process to make recommendations to exclude any risks of fraud or collusion. (Phillips Decl., ECF No. 181-8 at ¶ 8.) The allocation of the $125 million between the Class Settlement and Derivative Settlement was negotiated between the Derivative Plaintiffs and the Open-End Funds after all parties had reached

agreement at the mediation with Judge Phillips. (Id. at ¶ 14.) Judge Phillips met separately with the Open-End Funds' counsel. (Id. at ¶ 12.) Judge Phillips declares that the Derivative Settlement is "the product of vigorous and independent advocacy and arm's length negotiation conducted in good faith, with no collusion whatsoever." (Id. at ¶ 15.) Millions of pages of confidential information were exchanged. (Vander Weide Decl., ECF No. 181-2 at ¶ 34.) The parties discussed liability, factual allegations, causation, damages, and expert analyses. (Id. at ¶¶ 36-38.) The Derivative Settlement was developed after the parties had a thorough understanding of the merits of the claims and possible defenses. (Id. at ¶ 44.) The Open-End Funds' board of directors has approved the Derivative Settlement. (Id. at ¶ 42.) The board determined the allocation of the $15 million among the Open-End Funds. (Id.) Because there is no evidence of fraud or collusion, this factor weighs in favor of approving the Derivative Settlement.

**2. The Complexity, Expense, and Likely Duration of the Litigation**

In evaluating a proposed settlement, the court must weigh the risks, expense, and delay plaintiffs would face if they continued to prosecute the litigation through trial and appeal. UAW v. Gen. Motors, 497 F.3d at 631; Thacker v. Chesapeake Appalachia, L.L.C., 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010).

Settlement of complex actions "avoids the costs, delays, and multitude of other problems associated with them." In re Telectronics Pacing Sys., 137 F. Supp. 2d at 1013 (internal quotation marks omitted).

This litigation has been pending for almost nine years. (Vander Weide Decl., ECF No. 181-2 at ¶ 21.) Defendants have filed multiple motions to dismiss and a motion to strike. (Id.) Hundreds of exhibits have been submitted to support and oppose those motions. (Id.) Defendants continue to dispute the merits of Plaintiffs' claims. (Id. at ¶ 36.) PwC continues to defend its audits. (Id. at ¶ 37.) Judge Phillips declares that continued litigation would involve motions to dismiss, opposition to class certification, summary judgment motions, Daubert motions, a lengthy trial, and appeal. (Phillips Decl., ECF No. 181-8 at ¶ 11.) Continued litigation would be lengthy and complex. Including an auditor as a defendant adds complexity to the legal and factual issues. (Id. at ¶ 13.) Millions of documents were reviewed in negotiating the Derivative Settlement and continued litigation would require revisiting those documents. Some claims would be subject to a battle of experts. (Vander Weide Decl., ECF No. 181-2 at ¶¶ 36,38,54.)

The $15 million to be received by the Funds is more than twice the derivative settlement in the related litigation Cannaday et al. v. Morgan Asset Management, Inc. et al., No.

2:11-cv-02935. It is greater than the medial settlement for comparable derivative actions in 2015, which was $8.3 million. (Cornerstone Research, Securities Class Action Settlements (2015), ECF No. 181-4 at 21.) Even if a different settlement were reached after continued litigation, the parties anticipate that recovery would, "at best, be only incrementally greater than this Derivative Settlement." (Motion, ECF No. 181-1 at 13-14.)

Given the likelihood of lengthy, continuing litigation, the cost of that litigation, and the Derivative Settlement's expedient provision of monetary relief, this factor weighs heavily in favor of approving the Derivative Settlement.

**3. The Amount of Discovery Engaged in by the Parties**

In evaluating a proposed settlement, the court must consider the amount of discovery the parties have conducted. UAW v. Gen. Motors, 497 F.3d at 641. The parties' discovery must enable them to evaluate frankly the merits of the case and determine an appropriate settlement value. Discovery provides a level playing field for negotiations and ensures that the negotiations are informed rather than the product of uneducated guesswork. Olden v. Gardner, 294 F. App'x 210, 218 (6th Cir. 2008). The absence of expert opinions or formal discovery suggests that counsel might not have obtained the best agreement possible for the plaintiffs. Id.

The parties engaged in extensive discovery. Millions of pages of confidential information were exchanged. (Vander Weide Decl., ECF No. 181-2 at ¶ 34.) Derivative Plaintiffs offered Defendants hundreds of exhibits supporting their allegations and analyses they had conducted of damages and comparing the strength of their claims to other cases against Defendants. (Id. at ¶ 38.) Derivative Plaintiffs had read millions of pages of discovery while pursuing their claims. (Id. at ¶ 54.) Judge Phillips declares that the parties performed a thorough examination of the underlying facts with the aids of experts and used experienced attorneys to determine the merits of the claims. (Phillips Decl., ECF No. 181-8 at ¶ 7.) Judge Phillips met with the Open-End Funds' counsel before the amount to be received in the Derivative Settlement was negotiated. (Id. at ¶ 12.)

There is no evidence to suggest that the settlement negotiations were uninformed or the product of uneducated guesswork. The parties have engaged in aggressive fact discovery before and after settlement negotiations. This factor weighs in favor of approving the Derivative Settlement.

**4. The Likelihood of Success on the Merits**

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 245 (6th Cir. 2011). "The likelihood of success,

in turn, provides a gauge from which the benefits of the settlement must be measured." Id. A plaintiff's likelihood of success should be weighed against the amount and form of relief offered in the settlement. UAW v. Gen. Motors, 497 F.3d at 631 (internal quotation marks and citation omitted).

"Although this inquiry understandably does not require [the court] to decide the merits of the case or resolve unsettled legal questions, [the court] cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." Id. "[The court's] task is not to decide whether one side is right or even whether one side has the better of these arguments." Id. at 632. "Otherwise, [the court] would be compelled to defeat the purpose of a settlement in order to approve a settlement." Id. "The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." Id.

Defendants have raised many defenses to Plaintiffs' allegations. (Vander Weide Decl., ECF No. 181-2 at ¶ 36.) PwC "vigorously" defends its audits. (Id. at ¶ 37.) Derivative Plaintiffs have said that, although they are confident in the merits of their claims, Defendants have raised defenses to liability that make success at trial uncertain. (Motion, ECF No. 181-1 at 16.) The factual and legal issues are complex and would

be difficult to litigate. (Phillips Decl., ECF No. 181-8 at ¶¶ 12-13.)

The Court must weigh the likelihood of success on the merits against the amount and form of recovery. The Derivative Settlement guarantees the Open-End Funds Shareholders an expedient payment. The amount of recovery they would receive at trial is uncertain, especially given the hurdle they would face in proving loss causation. Defendants have argued that Derivative Plaintiffs could not show their losses were caused by mismanagement of the Open-End Funds and not by market decline. (Motion, ECF No. 181-1 at 16-17.) Proving loss causation in securities cases often involves a battle of experts. In re Global Crossing Securities & ERISA Litigation, 225 F.R.D. 436, 459 (S.D.N.Y. 2004) (collecting cases). It is not clear that a jury would award damages exceeding the amount the Open-End Funds Shareholders will receive from the Derivative Settlement.

The Derivative Settlement offers immediate recovery. The amount that each Shareholder will receive is fair, reasonable, and adequate given the legitimate factual and legal disputes that would arise during litigation. This factor weighs in favor of Derivative Settlement approval.

**5. The Opinions of Derivative Counsel and Derivative Plaintiffs**

In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference. See, e.g., Thacker, 695 F. Supp. 2d at 532-33; UAW v. Ford Motor Co., No. 07-CV-14845, 2008 WL 4104329 at *26 (E.D. Mich. Aug. 29, 2008) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."); Stewart v. Rubin, 948 F. Supp. 1077, 1087 (D.D.C. 1996) (the trial court "should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof").

Derivative Counsel are Lockridge Grindal Nauen P.L.L.P. ("Lockridge"), Apperson Crump PLC ("Apperson Crump"), and Zimmerman Reed LLP ("Zimmerman Reed"). Derivative Counsel and Derivative Plaintiffs have concluded that the Derivative Settlement is fair, adequate, and reasonable in light of the risks and costs of continued litigation. (Motion, ECF No. 181-1 at 20.)

Derivative Counsel and Derivative Plaintiffs are generally experienced and are familiar with this case. Their opinion is entitled to deference. Derivative Counsel have extensive experience in complex securities litigation. Derivative Counsel

assisted Plaintiffs in filing the original complaint. (Compl., ECF No. 1.) Judge Phillips declares that counsel thoroughly examined and analyzed all facts with the help of experts and that Derivative Counsel are "extremely qualified". (Phillips Decl., ECF No. 181-8 at ¶¶ 7,9,15.) Derivative Plaintiffs participated in settlement negotiations and agreed to the settlement after "careful investigation and evaluation of the facts and law relating to the allegations in the Complaint, the global resolution of the Lawsuits, and consideration of the facts noted and views expressed by Judge Phillips and Defendants during the mediation process." (Motion, ECF No. 181-1 at 20.)

Given their experience in other cases and intimate knowledge of the legal and factual issues in this case, Derivative Counsel and Derivative Plaintiffs' recommendation is entitled to deference. Given their endorsement, this factor weighs in favor of approving the Derivative Settlement.

**6. The Reaction of the Absent Shareholders**

An "overwhelming positive [] response highlights the fairness of the settlement[] and weighs heavily in favor of approval of the settlement[]." In re Southeastern Milk Antitrust Litig., No. 2:07-cv-208, 2012 WL 2236692 at *4, (E.D. Tenn. June 15, 2015); Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("[T]he Court considers the fact that not one

[shareholder] objected to the settlement agreement to be most persuasive.")

Garden City Group sent over 41,000 claim packets to potential Class Members and Open-End Funds Shareholders. (Fraga Decl., ECF No. 187-1 at 2.) All Shareholders are also members of the Class in the Class Settlement. No Shareholder has objected to the Class Settlement or the Derivative Settlement. This factor weighs strongly in favor of approval.

**7. The Public Interest**

The law favors settlement of shareholder derivative suits because of their complexity. Granada, 962 F.2d at 1205 (internal quotation marks omitted).

The resolution of this litigation will, among other things, (1) provide timely payment to the Open-End Funds Shareholders, (2) increase the certainty of those payments without more delay, (3) obviate the need for years of litigation, and (4) conclude a significant part of a multidistrict litigation that has continued for almost nine years. In re Cardizem CD Antitrust Litigation, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.") (internal quotation marks omitted).

Because the Derivative Settlement provides Shareholders with payments and increases the certainty of those payments without further delay, this factor weighs in favor of approving the Derivative Settlement.

**8. Derivative Plaintiffs' Relief Compared to Other Shareholders' Relief**

There is no evidence that Derivative Plaintiffs will receive payment not available to the rest of the Shareholders. The allocation of the $15 million was determined by the Open-End Funds' board of directors. Because the Derivative Settlement provides the same relief for Shareholders who are not named, this factor weighs in favor of approval.

For the foregoing reasons, the Derivative Settlement warrants final approval.

**B. Fees and Expenses**

The Motion for Attorney's Fees is GRANTED in accordance with the Final Approval Order in the Class Action (ECF No. 435.)

**IV. Conclusion**

For the foregoing reasons, the Motion and Motion for Attorney's Fees are GRANTED. The Court FINDS, CONCLUDES, and ORDERS that:

1. This Order incorporates the Derivative Settlement Agreement, including the Exhibits.
2. This Court has jurisdiction over the subject matter of the

Derivative Action Lawsuit, including all matters necessary to effectuate the Derivative Settlement, and over all Parties.

3. The record shows that Notice has been given to the Funds Shareholders in the manner approved by the Court in the November 30, 2015 Preliminary Approval Order (the "Derivative Preliminary Approval Order"). The Court finds that such Notice: (i) constitutes reasonable notice and the best notice practicable under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise all Open-End Funds Shareholders who could reasonably be identified of the pendency of the Derivative Action Lawsuit, the terms of the Derivative Settlement, and the Open-End Funds Shareholders' right to object to and to appear at the settlement fairness hearing; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice in accordance with Federal Rule of Civil Procedure 23.1(c); and (iv) meets the requirements of due process.

4. In light of the benefits to the Open-End Funds, the complexity, expense, and possible duration of further litigation against Defendants, the risks of establishing liability and damages, and the costs of continued litigation, the Court hereby fully and finally approves the

Derivative Settlement, pursuant to Federal Rule of Civil Procedure 23.1(c), as set forth in the Derivative Settlement Agreement in all respects, and finds that the Derivative Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of Plaintiffs, the Open-End Funds, and the Open-End Funds Shareholders. This Court finds the Derivative Settlement set forth in the Derivative Settlement Agreement is the result of arm's length negotiations between experienced counsel representing the interests of the Open-End Funds, the Open-End Funds Shareholders, and Defendants.

5. The Parties are directed to implement and consummate the Derivative Settlement according to the terms and provisions of the Derivative Settlement Agreement. The Parties are authorized to agree to and adopt such amendments and modifications to the Derivative Settlement Agreement, or any Exhibits attached thereto, and to effectuate the Derivative Settlement, as amended or modified, if such amendments and/or modifications (i) are consistent in all material respects with this Order, and (ii) do not limit the rights of the Open-End Funds Shareholders in connection with the Derivative Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Derivative Settlement

Agreement.

6. The Verified Shareholders' October 13, 2009 First Amended Derivative Complaint (ECF No. 46) is hereby dismissed in its entirety as to the Defendants, with prejudice, and without costs to any Party, except as otherwise provided in the Derivative Settlement Agreement. The Parties are to bear their own costs, except as otherwise provided in the Derivative Settlement Agreement.

7. The Court finds that during the course of the litigation of the Derivative Action Lawsuit, the Parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure, and in particular with Rule 11(b).

8. On the Effective Date of the Derivative Settlement (as defined in Paragraph 30 of the Derivative Settlement Agreement), the Plaintiffs and the Open-End Funds on behalf of themselves, and their heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have, and by operation of this Order shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims to the full extent set forth in the Derivative Settlement Agreement, including Unknown Claims, as against the Released Defendant Parties (as defined in Paragraph 1(ll) of the Derivative Settlement

Agreement).

9. On the Effective Date of the Derivative Settlement (as defined in Paragraph 30 of the Derivative Settlement Agreement), Defendants, on behalf of themselves, and their heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have, and by operation of this Order shall have, fully, finally, and forever released, relinquished and discharged the Released Plaintiff Parties (as defined in Paragraph 1(oo) of the Derivative Settlement Agreement) and the Open-End Funds from all claims related to the commencement, continuation, or prosecution of Released Defendants' Claims, as set forth in the Derivative Settlement Agreement.

10. On the Effective Date of the Derivative Settlement (as defined in Paragraph 30 of the Derivative Settlement Agreement), all Open-End Funds Shareholders are hereby permanently enjoined from commencing, continuing, or prosecuting against any or all Released Defendant Parties any action or proceeding in any court or tribunal asserting any of the Released Claims defined in the Derivative Settlement Agreement.

11. This Order, the Derivative Settlement Agreement and its terms, the negotiations leading up to the Derivative Settlement Agreement, the fact of the Derivative Settlement,

and the proceedings taken pursuant to the Derivative Settlement, shall not: (1) be construed as an admission of liability or an admission of any claim or defense on the part of any Party, in any respect; (2) form the basis for any claim of estoppel by any third party against any of the Released Defendant Parties; or (3) be admissible in any action, suit, proceeding, or investigation as evidence, or as an admission, of any wrongdoing or liability whatsoever by any of the Released Defendant Parties or as evidence of the truth of any of the claims or allegations contained in any complaint filed in the Action or deemed to be evidence of or an admission or concession that Plaintiffs or the Funds have suffered any damages, harm, or loss. Neither this Order, the Derivative Preliminary Approval Order, the Derivative Settlement Agreement, nor any of their terms and provisions, nor any of the negotiations or proceedings connected with them, nor any action taken to carry out this Order, the Derivative Preliminary Approval Order, or the Derivative Settlement Agreement by any of the Parties shall be offered into evidence, or received in evidence in any pending or future civil, criminal or administrative action, arbitration, or proceeding, except: in a proceeding to enforce this Order, the Derivative Preliminary Approval Order, the Derivative Settlement Agreement, or to enforce

any insurance rights; to defend against the assertion of Released Claims (including to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction); by Plaintiffs' Counsel to demonstrate its adequacy to serve as lead counsel in derivative actions; or as otherwise required by law.

12. Class and Derivative Counsel are hereby awarded attorney's fees in the amount of $37,500,000, which the Court finds to be fair and reasonable, and $792,560.50 in reimbursement of Class and Derivative Counsel's reasonable expenses incurred in prosecuting the Class Action and Derivative Lawsuits.

13. The attorney's fees and expenses so awarded, plus earnings thereon, shall be paid from the Qualified Settlement Fund pursuant to the terms of the Class and Derivative Settlement Agreements.

14. Without affecting the finality of this Order, the Court retains continuing and exclusive jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Derivative Settlement Agreement, the Derivative Settlement, and of this Order, to protect and effectuate this Order, and for any other necessary purpose. Defendants, Plaintiffs, the Open-End Funds, and all Open-End Funds Shareholders are deemed to

have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding, or dispute arising out of or relating to the Derivative Settlement or the Derivative Settlement Agreement, including the Exhibits thereto, and only for such purposes. Without limiting the generality of the foregoing, and without affecting the finality of this Order, the Court retains exclusive jurisdiction over any such suit, action, or proceeding. Solely for purposes of such suit, action, or proceeding, to the fullest extent they may effectively do so under applicable law, Defendants, Plaintiffs, the Open-End Funds, and all Open-End Funds Shareholders are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

15. In the event that the Derivative Settlement does not become effective in accordance with the terms of the Derivative Settlement Agreement or the Effective Date does not occur, or in the event that the Class Settlement Fund and/or the Funds Settlement Fund, or any portion thereof, is returned to the Defendants or to the entities that made such payment(s), this Order shall be rendered null and void to

the extent provided by and in accordance with the Derivative Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Derivative Settlement Agreement.

So ordered this 2nd day of August, 2016.

/s Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE